**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT : | |
| EMPLOYEES, AFL-CIO : | |
| 80 F Street, N.W. : | |
| Washington, DC  20001, : | |
| : | |
| and : | |
| : | **FIRST AMENDED** |
| : | **COMPLAINT FOR** |
| METAL TRADES DEPARTMENT, AFL-CIO : | **DECLARATORY AND** |
| 888 16th Street, N.W., Suite 690 : | **INJUNCTIVE RELIEF** |
| Washington, DC  20006, : | |
| : | |
| and : | Civil Action No.1:05CV02183 EGS |
| : | |
| NATIONAL FEDERATION OF FEDERAL : | |
| EMPLOYEES, FD-1, IAMAW, AFL-CIO : | |
| 1016 16th Street, N.W. : | |
| Washington, DC  20036, : | |
| : | |
| and : | |
| : | |
| ASSOCIATION OF CIVILIAN : | |
| TECHNICIANS, INC. : | |
| 12620 Lake Ridge Drive : | |
| Lake Ridge, VA  22192, : | |
| : | |
| and : | |
| : | |
| NATIONAL ASSOCIATION OF : | |
| GOVERNMENT EMPLOYEES, SEIU, AFL-CIO : | |
| 159 Burgin Parkway : | |
| Quincy, MA  02169 : | |
| : | |
| and : | |
| : | |
| UNITED POWER TRADES ORGANIZATION : | |
| 942 Prune Orchard Rd. : | |
| Colfax, WA  99111, : | |
| : | |
| and : | |

INTERNATIONAL FEDERATION OF                    :
PROFESSIONAL & TECHNICAL ENGINEERS             :
8630 Fenton Street, Suite 400                  :
Silver Spring, MD  20910,                       :
                                               :
    and                    :
                                               :
INTERNATIONAL BROTHERHOOD OF                   :
TEAMSTERS                                      :
25 Louisiana Avenue, N.W.                      :
Washington, DC 20001,                          :
                                               :
    and                    :
                                               :
LABORERS' INTERNATIONAL UNION OF               :
NORTH AMERICA                                  :
905 16th Street, N.W.                          :
Washington, DC  20006,                          :
                                               :
    and                    :
                                               :
INTERNATIONAL ASSOCIATION OF FIRE              :
FIGHTERS                                       :
1750 New York Avenue, N.W.                     :
Washington, DC  20006,                          :
                                               :
    and                    :
                                               :
OVERSEAS FEDERATION OF TEACHERS,               :
AFT, AFL-CIO                                    :
Unit 31303, Box 65                             :
APO AE  09613,                                  :
                                               :
    and                    :
                                               :
INTERNATIONAL ASSOCIATION OF                   :
MACHINISTS & AEROSPACE WORKERS                 :
9000 Machinists Place                          :
Upper Marlboro, MD  20772,                      :
                                               :
    and                    :

NATIONAL ASSOCIATION OF INDEPENDENT :
LABOR                                               :
4652-A Haygood Road                                :
Virginia Beach, VA 23455,                          :
                                                   :
                         Plaintiffs,               :
                                                   :
            v.                                     :
                                                   :
DONALD H. RUMSFELD, SECRETARY OF                   :
DEFENSE, in his official capacity                  :
1000 Defense Pentagon                              :
Washington, DC  20301-1000,                        :
                                                   :
            and                                    :
                                                   :
LINDA M. SPRINGER, DIRECTOR, in her                :
  official capacity                                :
United States Office of Personnel Management       :
1900 E Street, NW                                  :
Washington, DC 20415-1000                          :
                                                   :
                         Defendants.               :

## FIRST AMENDED COMPLAINT
## FOR DECLARATORY AND INJUNCTIVE RELIEF

1.  Plaintiffs, thirteen labor organizations that represent over 350,000 employees of the

United States Department of Defense, seek declaratory and injunctive relief addressing

defendants' (a) failure to abide by the requirements of 5 U.S.C. § 9902(m)(3) in developing a

labor relations system for the Department of Defense (DoD); (b) establishment of a DoD labor

relations system and employee appeals process that are contrary to law.

### JURISDICTION

2.  This Court has jurisdiction under 28 U.S.C. § 1331.

### VENUE

3.  Venue is proper in this Court under 28 U.S.C. § 1391(e).

## PARTIES

*Plaintiffs*

4. Plaintiff American Federation of Government Employees, AFL-CIO (AFGE), is an unincorporated association having its headquarters at 80 F Street, N.W., Washington, D.C. 20001. AFGE is an exclusive bargaining representative of federal employees, including DoD employees, totaling approximately 600,000 federal employees and 200,000 DoD employees respectively. AFGE represents the interests of its members and bargaining units by, *inter alia*, negotiating collective bargaining agreements, arbitrating grievances under such agreements, filing unfair labor practice charges, lobbying Congress for favorable working conditions, pay and benefits, and litigating employees' collective and individual rights in federal courts. AFGE brings this action on behalf of itself and its members.

5. Plaintiff Metal Trades Department, AFL-CIO (MTD) is an unincorporated association having its headquarters at 888 16th Street, N.W., Suite 690, Washington, D.C. 20006. The MTD is a department of the AFL-CIO with 17 national and international union affiliates whose combined membership total over 5,000,000. The MTD, and its affiliated Metal Trades councils, are the exclusive bargaining representative of over 40,000 employees at DoD and its various missions. In that capacity, the MTD and its Metal Trades councils represent the interests of their members and bargaining units by, *inter alia*, negotiating collective bargaining agreements, arbitrating grievances under such agreements, filing unfair labor practice charges, lobbying Congress for favorable working conditions, pay and benefits, and litigating employees' collective and individual rights in federal courts. The MTD brings this action on behalf of itself, its Metal Trades councils, affiliates and members.

6. Plaintiff National Federation of Federal Employees, FD-1, IAMAW, AFL-CIO (NFFE), is an unincorporated association having its headquarters at 1016 16th Street, N.W., Washington, D.C. 20036. NFFE is an exclusive bargaining representative of federal employees, including DoD employees, totaling approximately 65,000 federal employees and 37,000 DoD employees respectively. In that capacity, NFFE represents the interests of its members and bargaining units by, *inter alia*, negotiating collective bargaining agreements, arbitrating grievances under such agreements, filing unfair labor practice charges, lobbying Congress for favorable working conditions, pay and benefits, and litigating employees' collective and individual rights in federal courts. NFFE brings this action on behalf of itself and its members.

7. Plaintiff Association of Civilian Technicians, Inc. (ACT) is a non-profit corporation having its headquarters at 12620 Lake Ridge Drive, Lake Ridge, Virginia 22192. ACT and its councils and local chapters are the exclusive bargaining representatives of certified federal employee bargaining units in over forty jurisdictions. These units include a nationwide majority of DoD employees who are National Guard technicians employed under 32 U.S.C. § 709. In that capacity, ACT and its councils and local chapters represent the interests of their members and bargaining units by, *inter alia*, negotiating collective bargaining agreements, arbitrating grievances under such agreements, filing unfair labor practice charges, lobbying Congress for favorable working conditions, pay and benefits, and litigating employees' collective and individual rights in federal courts. ACT brings this action on behalf of itself and its councils, chapters, and members.

8. Plaintiff National Association of Government Employees, SEIU, AFL-CIO (NAGE) is a non-profit corporation incorporated in the State of Delaware and having its headquarters at 159 Burgin Parkway, Quincy, Massachusetts 02169. NAGE is the exclusive bargaining

representative of 65,000 federal employees, including about 35,000 DoD employees. In that capacity, NAGE represents the interests of its members and bargaining units by, *inter alia*, negotiating collective bargaining agreements, arbitrating grievances under such agreements, filing unfair labor practice charges, lobbying Congress for favorable working conditions, pay and benefits, and litigating employees' collective and individual rights in federal courts. NAGE brings this action on behalf of itself and its members.

9. Plaintiff United Power Trades Organization (UPTO) is an unincorporated association having its headquarters at 942 Prune Orchard Road, Colfax, Washington 99111. UPTO is the exclusive bargaining representative of approximately 620 federal employees of The US Army Corps of Engineers Northwestern Division Pacific Region, a component of DoD. In that capacity, UPTO represents the interests of its members and bargaining units by, *inter alia*, negotiating collective bargaining agreements, arbitrating grievances under such agreements, filing unfair labor practice charges, lobbying Congress for favorable working conditions, pay and benefits, and litigating employees' collective and individual rights in federal courts. UPTO brings this action on behalf of itself and its members.

10. Plaintiff International Federation of Professional and Technical Engineers (IFPTE) is an unincorporated association having its headquarters at 8630 Fenton Street, Suite 400, Silver Spring, MD 20910. IFPTE and its local affiliates are the exclusive bargaining representative of employees in certified federal bargaining units within the DoD and throughout the federal workforce. In that capacity, the IFPTE and its locals represent the interests of its members and bargaining units by, *inter alia*, negotiating collective agreements, arbitrating grievances under such agreements, filing unfair labor practice charges, lobbying Congress for favorable working

conditions, pay and benefits, and litigating employees' collective and individual rights in federal courts. IFPTE brings this action on behalf of itself, its locals and its members.

11.    Plaintiff International Brotherhood of Teamsters (IBT) is an unincorporated association having its headquarters at 25 Louisiana Avenue, N.W., Washington D.C. 20001. IBT local affiliates are the exclusive bargaining representative of employees in certified federal bargaining units within the DoD and throughout the federal workforce. In that capacity, the IBT and its locals represent the interests of its members and bargaining units by, *inter alia*, negotiating collective agreements, arbitrating grievances under such agreements, filing unfair labor practice charges, lobbying Congress for favorable working conditions, pay and benefits, and litigating employees' collective and individual rights in federal courts. IBT brings this action on behalf of itself, its locals and its members.

12.    Plaintiff Laborers' International Union of North America (LIUNA) is an unincorporated association having its headquarters at 905 16th St., NW, Washington, D.C. 20006. LIUNA represents employees in the private and public sectors with a membership of approximately 880,000. LIUNA represents approximately 20,000 Federal employees with 9,000 working within the Department of Defense. In that capacity, LIUNA represents the interests of their members and bargaining units by, *including but not limited to*, negotiating collective bargaining agreements, arbitrating grievances under such agreements, filing unfair labor practice charges, lobbying Congress for favorable working conditions, pay and benefits, and litigating employees' collective and individual rights in federal courts. LIUNA brings this action on behalf of itself, its affiliates and members.

13.    Plaintiff International Association of Fire Fighters (IAFF) is an unincorporated association representing approximately 260,000 fire fighters, paramedics/EMTs, and emergency

response personnel and has its headquarters at 1750 New York Avenue, N.W., Washington, DC 20006.  IAFF and its local affiliates are the exclusive bargaining representatives of approximately 3,500 employees in certified federal bargaining units within the Department of Defense and elsewhere in the federal workforce.  In that capacity, IAFF and its locals represent the interests of its members and bargaining units by, *inter alia*, negotiating collective bargaining agreements, arbitrating grievances under such agreements, filing unfair labor practice charges, lobbying Congress for favorable working conditions, pay and benefits, and litigating employees' collective and individual rights in federal courts.  IAFF brings this action on behalf of itself, its locals, and its members.

14.  Plaintiff Overseas Federation of Teachers, AFT, AFL-CIO (OFT) is an unincorporated association having its headquarters in Livorno, Italy at Unit 31303, Box 65, APO AE 09613.  OFT is the exclusive bargaining representative of approximately 500 teachers, counselors, education technologists and nurses who are employed by the Department of Defense Education Activity (DODEA) on U.S. military bases in Bahrain, Greece, Italy, Portugal, Spain and Turkey.  In that capacity, OFT represents the interests of its members and bargaining units by, *inter alia*, negotiating collective bargaining agreements, arbitrating grievances under such agreements, filing unfair labor practice charges, lobbying Congress for favorable working conditions, pay and benefits, and litigating employees' collective and individual rights in federal courts.  OFT brings this action on behalf of itself and its members.

15.  Plaintiff International Association of Machinists & Aerospace Workers (IAM) is an unincorporated association having its headquarters at 9000 Machinists Place, Upper Marlboro, Maryland 20772.  The IAM and its district and local affiliates (in addition to Plaintiff NFFE, FD-1, IAMAW) are the exclusive bargaining representatives of approximately 20,000 DoD

8

employees, as well as other federal employees. In that capacity, the IAM and its districts and locals represent the interests of their members and bargaining units by, *inter alia*, negotiating and administering collective bargaining agreements, arbitrating grievances under such agreements, filing unfair labor practice charges, lobbying Congress for favorable working conditions, pay and benefits, and litigating employees' collective and individual rights in federal courts. The IAM brings this action on behalf of itself, its districts and locals, and its members.

16. Plaintiff National Association of Independent Labor (NAIL) is an unincorporated association in the State of Virginia and having its headquarters at 4652-A Haygood Road, Virginia Beach, VA 23455. NAIL is the exclusive bargaining representative of approximately 2800 federal employees, including about 2500 DoD employees. In that capacity, NAIL represents the interests of its members and bargaining units by, inter alia, negotiating collective bargaining agreements, arbitrating grievances under such agreements, filing unfair labor practice charges, lobbying Congress for favorable working conditions, pay and benefits, and litigating employees' collective and individual rights in federal courts. NAIL brings this action on behalf of itself and its members

### Defendants

17. Defendant Donald Rumsfeld is the Secretary of Defense, and, as such, exercises authority, direction and control over the DoD, which is a cabinet level agency of the Executive branch of the United States Government. Defendant Rumsfeld is being sued solely in his official capacity.

18. Defendant Linda M. Springer is the Director of the United States Office of Personnel Management ("OPM"). Defendant Springer is being sued solely in her official capacity.

**FACTS**

*Failure to abide by § 9902(m) in developing labor relations system*

19.  The National Defense Authorization Act for Fiscal Year 2004, Pub. L. 108-136, 117 Stat. 139 (2003), which includes 5 U.S.C. § 9902, became law on November 24, 2003.  In § 9902(m)(1), Congress authorized "the Secretary, together with the Director," to "establish and from time to time adjust a labor relations system for the Department of Defense."

20.  In § 9902(m)(3), Congress directed that the Secretary and the Director "ensure that the authority of this section is exercised in collaboration with, and in a manner that ensures the participation of, employee representatives in the development and implementation of the labor management relations system. . . ."  Congress specified that the "process for collaborating with employee representatives . . . shall begin no later than 60 calendar days after the date of this subsection."  5 U.S.C. § 9902(m)(3)(D).  In § 9902(m)(3)(A), Congress specified additional requirements of the collaboration process:

> (A)     The Secretary and the Director shall, with respect to any proposed system or adjustment—
>
>> afford employee representatives and management the opportunity to have meaningful discussions concerning the development of the new system;
>>
>> give such representatives at least 30 calendar days (unless extraordinary circumstances require earlier action) to review the proposal for the system and make recommendations with respect to it; and
>>
>> give any recommendations received from such representatives under clause (ii) full and fair consideration.

21.  After enactment of the law, defendants over the course of more than a year developed their proposed labor relations system—to the point of publication in the Federal Register—using secret working groups.  During this time, despite plaintiffs' repeated requests, defendants denied plaintiffs and other employee representatives the opportunity to collaborate

with, participate in, or have discussions with the secret groups, and refused to reveal to plaintiffs any of defendants' instructions to the groups, or any of the groups' preliminary draft proposals or other work products.

22.    While the secret groups developed the labor relations system behind closed doors, defendants' representatives gave plaintiffs "concept" papers and engaged plaintiffs in meaningless discussions, in which defendants presented no proposals.  Defendants did not claim that these papers and discussions were the "meaningful discussions" required by § 9902(m)(3); rather, they expressly said that these papers were not proposals and that the discussions were "pre-statutory."

23.    Defendants announced that they would establish DoD's labor relations system through formal, notice-and-comment rulemaking.  Defendants then asserted that this formal rulemaking process prohibited DoD from revealing to or discussing with plaintiffs (or anyone else outside the agency) any preliminary or final draft of the proposed labor relations system regulation before publication of the proposed final regulation in the Federal Register.  Based on this assertion, defendants rejected plaintiffs' requests to collaborate with, participate in, or have discussions with defendants' secret working groups; and denied plaintiffs' requests to review defendants' instructions to the groups, the groups' preliminary draft proposals, and the final proposed regulation, before its publication in the Federal Register.

### *Establishment of unlawful labor relations system*

24.    In enacting P. L. 108-136, Congress granted defendants authority to establish a labor relations system departing in two respects from the provisions of chapter 71 of title 5.  First, Congress granted the Secretary "authority to bargain at a level above the level of exclusi[ve] recognition," commonly called national level bargaining.  5 U.S.C. § 9902(m)(5).  Second,

Congress required that the Department's labor relations system "provide for independent third party review of decisions, including defining what decisions are reviewable by the third party, what third party would conduct the review, and the standard or standards for that review." § 9902(m)(6).

25.  In enacting these two departures from chapter 71, Congress rejected the Secretary's request for authority to waive all provisions of the chapter.  § 9902(b)(3)(D) (Secretary may "not waive, modify, or otherwise affect . . . any . . . provision . . . described in subsection (d)"); § 9902(d)(2) (listing chapter 71 among provisions deemed "nonwaivable" except "to the extent . . . otherwise specified in" title 5).  §§ 9902(b)(3)(D) and (d).  In enacting §§ 9902(m)(5) and (6), Congress specified two departures from chapter 71 "[n]otwithstanding [the listing of chapter 71 among 'nonwaivable provisions' in] section 9902(d)(2)."  § 9902(m)(1).

26.  In addition to providing that the Secretary may "not waive, modify, or otherwise affect" chapter 71 except "to the extent . . . otherwise specified in" title 5, Congress expressly required that the Department's personnel system *"ensure* that employees may . . . bargain collectively . . . subject to . . . limitation on negotiability established pursuant to *law*." § 9902(b)(4) (emphasis added).

27.  These provisions of the law stemmed from the Conference Committee's rejection of a provision of the original House bill, H.R. 1836, that would have authorized the Secretary to waive chapter 71 in its entirety and the Committee's adoption of a provision in S. 1166 that listed chapter 71 among provisions that could not be waived.  S. 1166 at 4.  Although S. 1166 was not passed by the Senate, it was "approved by [the Senate Committee on Governmental Affairs] by a 10 to 1 vote" and the "provisions of S. 1166 were considered by the conferees."  149 CONG. REC.

S 14490 (Nov. 12, 2003) (statement of Senator Lieberman, Conference Committee Member and Ranking Member of the Senate Committee on Governmental Affairs).

28.  The Conference Committee's decision to reject the House bill's waiver provision and to adopt instead S. 1166's prohibition against waiver of chapter 71 followed a June 4, 2003, hearing held by the Senate Committee on Governmental Affairs at which Senators expressly discussed the issue and rejected the Defense Department's views.  At the hearing Secretary Rumsfeld testified:

> [T]he National Security Personnel System we are proposing . . . will not end collective bargaining. . . .  To the contrary, the right of defense employees to bargain collectively would be continued.  What it would do is bring collective bargaining to the national level so that the Department could negotiate with national unions instead of dealing with more than 1,300 different union locals, a process that is inefficient.

*Transforming the Department of Defense Personnel System: Finding the Right Approach*: Hearing Before the United States Senate Committee on Government Affairs, 108th Cong. 21 (2003) (statement of Donald Rumsfeld, Secretary of Defense).  Senator Levin, however, noted that the legislation sought by the Department and passed by the House went "way beyond" bargaining at the national level. *Id.* at 27 (statement of Senator Carl Levin, Member, Senate Comm. On Government Affairs).  He expressed concern that the bill desired by the Department would allow the Secretary to eliminate "bargaining rights in general" because it would authorize the Secretary to waive all of chapter 71. *Id.*  Under Secretary Chu then testified that the reason why the Department wanted authority to waive all of chapter 71 was "to get the bargaining [process] to come to a conclusion." *Id.* (statement of David Chu, Undersecretary of Defense). Senator Collins, chair of the committee, rejected Under Secretary Chu's reasoning, explaining, "I think there are other ways to ensure that bargaining comes to a conclusion than having the authority to waive the entire chapter governing collective bargaining." *Id.* at 28 (statement of

Senator Susan Collins, Chair, Senate comm. on Government Affairs).    Senator Voinovich

concurred, saying "Our bill [S. 1166] would provide that you would remain in Chapter 71, as

explained by our Chairman." *Id.* at 29 (statement of Senator George Voinovich, Member, Senate

Comm. On Governmental Affairs).

29.  On November 11, 2003, Senator Collins, a member of the Conference Committee,

noted the Conference Committee's rejection of the House bill's grant of authority to waive

chapter 71:

> Another very important provision in this bill has to do with the collective
> bargaining rights of the Department's employees. The Department of Defense
> has repeatedly claimed it has no desire to waive the collective bargaining rights
> of its employees. Indeed, the bill before the Senate specifically states the
> Department does not have the authority to waive the chapter of title 5 that
> governs labor-management relations. Thus, I fully expect the labor relations
> system developed by the Department will abide by the principles enumerated in
> chapter 71, such as the duty to bargain in good faith--a duty that applies to both
> labor and management, incidentally--and the prohibition against unfair labor
> practices.

149 CONG. REC. S 14428 (Nov. 11, 2003) (statement of Senator Susan Collins, Conference

Committee Member, Chair of the Senate Committee on Governmental Affairs).

30.    Senator Levin, also a member of the Conference Committee, echoed Senator

Collins's statement and described the Conference Committee bill in greater detail:

> Senator **COLLINS** and I worked together closely to fashion a bipartisan bill in
> the Governmental Affairs Committee that would provide the Department of
> Defense the new personnel flexibility that it needs, while preserving important
> protections for individual employees. Our bill was approved by the
> Governmental Affairs Committee in early June and became the basis for our
> negotiations in conference with the House.
>
> The bipartisan approach that Senator **COLLINS** and I took on this issue met
> with opposition from the administration at every turn. At times, it appeared that
> some of our opponents were less interested in enacting sound human capital
> provisions than they were in providing as much power as possible to the
> Secretary of Defense.

Nonetheless, we were able to build some important protections into the legislation that is included in this conference report. . . . [T]he collective bargaining provisions that Senator **COLLINS** and I were able to negotiate on this bill are substantially better from our perspective than comparable provisions included in the House bill and the Homeland Security Act.

The Homeland Security Act authorize[s] the Secretary of Homeland Security to waive any and all of the provisions of Chapter 71 of Title 5, which governs labor-management relations for Federal employees. This waiver authority gives the Secretary of Homeland Security complete authority to establish any new labor relations system he may choose, with virtually no statutory limitation. The House bill would have provided the same authority to the Secretary of Defense.

This conference report does not include any authority to waive the requirements of Chapter 71. On the contrary, as the Chairman of the House Government Reform Committee pointed out on the House floor last week, this bill specifically lists the provisions of Chapter 71 as being non-waivable. The bill before us states, and I quote, "Any system established [under this provision] shall . . . not waive, modify, or otherwise affect" Chapter 71. This means that the Department of Defense, unlike the Department of Homeland Security, remains subject to the collective bargaining requirements of Chapter 71.

The conference report also states that, notwithstanding the provision preserving the full force and effect of Chapter 71, the Secretary "may establish and from time to time adjust a labor relations system for the Department of Defense to address the unique role that the Department's civilian workforce plays in supporting the Department's national security mission."

These two provisions must be read together and both must be given meaning. The first provision states that Chapter 71 may not be waived or modified. The second provision states that the Secretary may establish a unique labor relations system. For both provisions to have meaning, the unique labor relations system established by the Secretary must be consistent with the requirements of Chapter 71. For example: . . . Section 7114 . . . requires an agency to bargain in good faith with . . . a labor organization [that has been accorded exclusive recognition]. The unique labor relations system established by the Secretary must preserve this right.

Section 7116 provides that it shall be an unfair labor practice for an agency to interfere with, restrain or coerce employees or to refuse to consult or negotiate in good faith with a labor organization. Nothing in the conference report gives the Secretary of Defense any authority to waive or modify this requirement.

Section 7118 authorizes the General Counsel of the FLRA to investigate allegations that any person has engaged in unfair labor practice. Nothing in the

conference report gives the Secretary of Defense any authority to waive or modify this requirement applicable to an independent federal agency.

Unfortunately, the conference report does provide for exceptions to the applicability of Chapter 71. In this regard, the conference report specifically provides that the labor relations system established by the Secretary "shall provide for independent third party review of decisions, including defining what decisions are reviewable by the third party, what third party would conduct the review, and the standard or standards for that review." It also states that national level collective bargaining shall "be subject to review by an independent third party only to the extent provided" under this process. This language appears to preclude the appeal of such issues to the Federal Service Impasses Panel under section 7119 of Title 5.

While I was disappointed by the decision to include language limiting the review of collective bargaining decisions, the preservation of other rights under Chapter 71 makes this provision far preferable to the personnel provisions in the House bill or the Homeland Security Act.

149 CONG. REC. 14439 (Nov. 11, 2003) (statement of Senator Carl Levin, Member, Conference

Committee and Ranking Member of the Senate Armed Services Committee).

31. Speaking on the Senate floor November 12, 2003, Senator Lieberman, also a member

of the Conference Committee, also noted that the bill drafted by the Conference Committee

"included the provision of S. 1166 stating that the Secretary of Defense has no authority to waive

chapter 71." He said the bill "overrides chapter 71 only where" the bill "and chapter 71 are

directly inconsistent with each other" and "that the Secretary of Defense has no authority" to

depart from chapter 71 in any other area:

[I]n the area of collective bargaining, the conference agreement included the provision of S. 1166 stating that the Secretary of Defense has no authority to waive chapter 71 of civil service law, which governs labor-management relations. . . . However, the conferees also agreed to a new provision authorizing the Secretary . . . to establish a "labor relations system" for . . . the Department's civilian workforce. As the conference report makes chapter 71 non-waivable, this new provision overrides chapter 71 only where the new provision and chapter 71 are directly inconsistent with each other.

149 CONG. REC. S 14490 (Nov. 12, 2003) (statement of Senator Joseph Lieberman, Member,

Conference Committee and Ranking Member of the Senate Committee on Government Affairs).

Senator Lieberman explained:

> The new provision . . . does not conflict with the statutory rights duties, and protections of employees, agencies, and labor organizations set forth in chapter 71, including . . . the duty to bargain in good faith . . . and others and such rights, duties, and protections will remain fully applicable at the department. The conference agreement provides . . . "for independent third party review of decisions." . . . The Secretary may use this provision to expedite the review of decisions, but not to alter the statutory rights, duties, and protections established in chapter 71 or to compromise the right of parties to obtain fair and impartial review.

*Id.*

32.  Despite 5 U.S.C. §§ 9902(b)(3)(D), (b)(4) and (d), and the legislative history quoted

above, defendants' final regulation, 70 FR 66116 *et seq*. (November 1, 2005), asserts authority to

waive chapter 71 in its entirety, totally eliminates any statutory right to collective bargaining by

allowing the Department to ban bargaining by regulation, and otherwise departs from chapter 71

in ways not authorized by the national level bargaining and independent third party review

provisions of 5 U.S.C. §§ 9902(m)(5) and (m)(6).

33.  Section 9901.104 of the regulation states, "The provisions in the following chapters

of title 5, U.S. Code, and any related regulations, may be waived or modified in exercising the

authority in 5 U.S.C. 9902: . . . (f) Chapter 71, dealing with labor relations (as authorized by 5

U.S.C. 9902(m))." As the basis for its assertion that the prohibition against waiver of chapter 71

contained in § 9902(b)(3)(D) and (d) is inapplicable to the labor system authorized by

§ 9902(m), the regulation erroneously states, in § 9901.103 (definition of "National Security

Personnel System (NSPS)"), that "the human resources management system established under 5

U.S.C. § 9902(a) . . . does not include the labor relations system established under 5 U.S.C.

17

§ 9902(m)." This erroneous statement is contrary to § 9902(b)(4) of the statute, which says that the "system *established under subsection (a)* shall . . . ensure that employees may organize, bargain collectively . . . and participate through labor organizations of their own choosing, subject to the provisions of this chapter and any exclusion from coverage or limitation on negotiability established pursuant to law." (Emphasis added.) Because § 9902(b)(4) requires that the human resources management "system established under subsection (a)" include provisions addressing labor relations, the human resources management system includes the subsection (m) labor relations system. The title of § 9902, "[e]stablishment of human resources management system," also indicates that the subsection (m) labor system is a subpart of the "human resources management system established under authority of this section." § 9902(a). The legislative history (quoted above) expressly states that the prohibition against waiver of chapter 71 applies to the subsection (m) labor relations system. The regulation's contrary assertion renders the waiver prohibition meaningless and without purpose, in violation of rules of statutory construction.

34. Section 9901.103 of the regulation defines "implementing issuance(s)" to mean "documents issued by the Secretary, Deputy Secretary, Principal Staff Assistants (as authorized by the Secretary), or Secretaries of the Military Departments to carry out a policy or procedure implementing" the regulation. Section 9901.903 defines an "issuance" to mean a document, other than an implementing issuance, that is issued by one of these same persons "to carry out a policy or procedure of the Department." Section 9901.905(a) states: "Any provision of a collective bargaining agreement that is inconsistent with this part and/or implementing issuances is unenforceable." Section 9901.917(d)(1) states: "Management may not bargain over any matters that are inconsistent with . . . regulations in this part, . . . issuances and implementing

issuances." Under chapter 71, however, an agency rule or regulation does not limit bargaining unless the Federal Labor Relations Authority determines that a "compelling need" exists for that rule or regulation; and even this restriction is inapplicable to a union that represents a majority of the employees to whom the rule or regulation applies. 5 U.S.C. §§ 7117(a)(2) and (3). By making bargaining subject to restriction by any "issuance," defendants' regulation totally eliminates the statutory right to bargaining, leaving only bargaining at the sufferance of the Secretary.

35. Chapter 71 lists specific management rights that are nonnegotiable but states that exercise of most of these rights must be "in accordance with applicable laws." 5 U.S.C. § 7106(a)(2). As to all management rights, chapter 71 states that unions may negotiate (normally before management acts) "procedures which management officials . . . will observe in exercising" these rights, as well as "appropriate arrangements for employees adversely affected by the exercise" of these rights. §§ 7106 (b)(2) and (b)(3). Departing from these chapter 71 provisions, defendant's regulation

    a. expands management rights to include an unlimited right "to take whatever other actions may be necessary to carry out the Department's mission," § 9901.910(a)(2);

    b. eliminates the requirement that management rights be exercised in accordance with applicable laws, *id.*;

    c. allows management in all instances to act immediately, before negotiations begin, regardless of need for expedition, § 9901.910(i);

    d. expressly bans negotiation of procedures except those for hiring, layoff, or discipline, unless the Secretary determines otherwise, §§ 9901.910(b) and (c);

e.  bans, unless the Secretary determines otherwise, even negotiation of procedures for hiring, layoff, or discipline if the management action "*may* be necessary to carry out the Department's mission" (thereby implicitly banning, unless the Secretary determines otherwise, all negotiation of procedures—there being no instance in which hiring, layoff, or discipline could not successfully be claimed to be at least *possibly* necessary),  §§ 9901.910(g) and (a)(2) (emphasis added);

f. bans negotiation of appropriate arrangements for those adversely affected by "routine assignment to specific duties, shifts, or work on a regular or overtime basis," § 9901.910(f)(2), unless the Secretary says otherwise; and

g. eliminates any right to have an appropriate arrangement negotiated during the term of a contract apply to anyone, ever, by granting the Department "sole, exclusive, and unreviewable discretion" to determine whether a negotiated arrangement will be "binding on subsequent acts, or retroactively applied, § 9901.910(h)."

The combined effect of these regulatory provisions totally eliminates any right to negotiate § 7106(b)(2) procedures or to negotiate, mid-term, enforceable (b)(3) arrangements, even where negotiation of these matters has not already been eliminated under § 9901.917(d)(1) by "issuances."

36.  Under chapter 71, an employee may not be excluded from a bargaining unit on the ground that the employee is a "supervisor" unless the employee supervises other employees.  5 U.S.C. § 7103(a)(10).  Departing from this provision, the regulation asserts that an employee may be deemed to be a supervisor if the employee "exercises supervisory authority over military members of the armed forces." § 9901. 903 (definition of "Supervisor").

37.    Under chapter 71, grievances subject to resolution by a negotiated grievance procedure include "any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment." 5 U.S.C. § 7103(a)(9)(C)(ii).    Departing from this standard, § 9901.903 of defendants' regulation eliminates grievances claiming a violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment" unless the grievant can prove that the law, rule, or regulation in question was "*issued for the purpose of* affecting conditions of employment."  (Emphasis added.)

38.    Under chapter 71, unions must be afforded opportunity to attend "any formal discussion between one or more representatives of the agency and one or more employees in the unit or their representatives concerning any grievance or any personnel policy or practices or other general conditions of employment." 5 U.S.C. § 7114(a)(2)(A).    Departing from this requirement, § 9901.914(a)(2) of defendants' regulation limits a union's right to attend formal discussions to those with "management official(s)," rather than other agency representatives, such as supervisors.   The regulation eliminates a union's chapter 71 right to attend formal discussions concerning grievances that have not yet been "filed."   Departing again from chapter 71, § 9901.914(a)(2) excludes unions from discussions held "for the purpose of discussing operational matters where any discussion of personnel policies, practices or working conditions "[c]onstitutes a reiteration or application of existing personnel policies, practices or working conditions"; is "incidental or otherwise peripheral to the announced purpose of the meeting"; or "[d]oes not result in an announcement of a change to, or a promise to change, an existing personnel policy(s), practice(s), or working condition(s)."  Section 9901.914(a)(2) also eliminates the right of the union to be represented at formal meetings that occur in connection with discrimination complaints.

39. Under § 7114(b)(4) of chapter 71, unions have a right to obtain "upon request and, to the extent not prohibited by law, data (A) which is normally maintained by the agency in the regular course of business; (b) which is reasonably available and necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining; and (C) which does not constitute guidance . . . for management . . . relating to collective bargaining." Departing from this requirement, defendants' regulation authorizes the Department to ban all disclosure of information to unions simply by issuing a policy, regulation, or other "issuance" doing so, § 9901.914(c)(1); bars disclosure of data "if adequate alternative means exist for obtaining the requested information, or if proper discussion, understanding, or negotiation . . . is *possible* without . . . the information," § 9901.914(c)(2) (emphasis added); and states that any "authorized official" may block any disclosure of information if the official "has determined"—unreasonably or otherwise—that the disclosure "would compromise the Department's mission, security, or employee safety." § 9901.914(c)(4).

40. Under chapter 71 an employee has a right "to act for a labor organization in the capacity of a representative and the right, in that capacity, to present the views of the labor organization to heads of agencies and other officials of the executive branch of the Government, the Congress, or other appropriate authorities." 5 U.S.C. § 7102(1). This chapter 71 right authorizes employees who are representatives to speak at times, at places, on subjects, and in a manner that other employees may not. Departing from chapter 71, § 9901.914(a)(4) of defendants' regulation states: "Employee representatives employed by the Department are subject to the same expectations regarding conduct as any other employee, whether they are serving in their representative capacity or not." The "Response to Specific Comments and Detailed Explanation of Regulations" states, "The only conduct the revised standard is intended

to stop is the rare, but utterly unacceptable use of vulgar or sexually explicit language, as well as physical intimidation by union officials." 70 FR at 66182. This statement, however, has no basis in the text of the regulation and does not make the regulation valid.

41. Under chapter 71, it is an unfair labor practice for an agency "to enforce any rule or regulation (other than a rule or regulation implementing section 2302 of this title) which is in conflict with any applicable collective bargaining agreement if the agreement was in effect before the date the rule or regulation was prescribed." 5 U.S.C. § 7116(a)(7). Departing from chapter 71, defendants' regulation eliminates this provision as to "implementing issuances." § 9901.916(a)(7).

42. Under 5 U.S.C. § 9902(m)(6) the Department's labor relations system must provide for "independent third party review of decisions." Sections 9901.907 and .908 of defendants' regulation vest authority to review and resolve negotiability disputes, unfair labor practice complaints, exceptions to arbitration awards, information request disputes, and negotiation impasses in a board whose members are selected by the Secretary. Because the Secretary determines the board's membership, the board is not independent. Because the board is part of DoD, it is not a third party.

43. *Inter alia*, AFGE, NFFE, NAGE and NAIL represent certain employees of Non-Appropriated Fund Instrumentalities (NAFIs). NAFI employees are entitled to negotiate pay, benefits, and other working conditions, to the extent the negotiation of them is not precluded by Chapter 71. For over 15 years, these unions have represented employees employed by NAFIs in negotiating pay, benefits, and other working conditions that, as to them, are not specifically provided for by statute. Contrary to NAFI employees' right to negotiate pay, defendants' regulation eliminates all negotiation of pay by excluding "[t]he pay of any employee for any

position" from the definition of "conditions of employment," § 9901.903, and by otherwise expressly prohibiting negotiation of pay. §§ 9901.305. The sole basis for defendants' assertion of authority to make all pay non-negotiable is their assertion, 70 FR at 66138, that "pay matters are not subject to collective bargaining" because of the 5 U.S.C. § 9902(m)(7) "statutory prohibition against expanding the scope of bargaining under NSPS to those matters not subject to bargaining today." Defendants' assertion is inapplicable to NAFI employees, because they have the right to negotiate pay today. Upon information and belief, defendants' regulation unlawfully reduces or eliminates NAFI employees' chapter 71 rights to negotiate other benefits and working conditions that are specifically provided for by law as to other employees, but are discretionary as to NAFI employees.

### *Establishment of unlawful employee appeals process*

44.    In enacting P. L. 108-136, Congress granted defendant Secretary authority to "establish an appeals process that provides employees of the Department of Defense . . . fair treatment in any appeals that they bring in decisions relating to their employment and . . . ensure[s] that employees . . . are afforded the protections of due process." 5 U.S.C. § 9902(h)(1). Non-probationary employees who are subjected to major "performance-based or adverse actions" (such as removal or lengthy suspension, see 5 U.S.C. § 9902(h)(4)) "have the right to petition the full Merit Systems Protection Board for review." § 9902(h)(4). The Board may order that the "personnel action shall be stayed [or that] other interim relief shall be granted during the pendency of the Board's review." *Id.* "The Board may order such corrective action as the Board considers appropriate . . . if the Board determines that the decision was . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law [or] procedures required by law, rule, or regulation; . . . or unsupported by substantial evidence."

§ 9902(h)(5).   Board decisions are subject to judicial review "as provided in [5 U.S.C.] section 7703."  § 9902(h)(6).   The Department's § 9902(h) authority to establish an appeals process does not "authorize the waiver of any provision of law." § 9902(h)(7).

45.   Contrary to employees' § 9902(h)(1) right to "an appeals process that provides employees . . . fair treatment in any appeals that they bring," defendants' regulation states that, where an employee is found to have committed a so-called "mandatory removal offense," only the Secretary and the full Board have authority to mitigate the penalty.  §§ 9901.712(c).  In other cases, the regulation requires initial reviewers and hearing officers to give "great deference" to the Department's choice of penalty, to uphold that choice unless it is "totally unwarranted," and to always impose the "maximum justifiable penalty." § 9901.807(f)(2).  The regulation imposes these same requirements on arbitrators.   § 9901.922(f)(2).   These provisions are not fair. Employees have a right to fair treatment, including fair penalty determination, at all stages of the appeals process, not just when they appeal to the full Board.

46.   These regulatory provisions restricting penalty mitigation authority to the Secretary and the full Board in so-called "mandatory removal" cases, and restricting an arbitrator's authority to mitigate penalties in other cases, also are contrary to 5 U.S.C. § 7121(e) and (f). These statutes state that performance-based or adverse action "matters which arise . . . may be raised either under the appellate procedures, if any, applicable to those matters, or under the negotiated grievance procedure," § 7121(e), followed by arbitration and immediate judicial review, which "shall apply to the award of an arbitrator in the same manner and under the same conditions as if the matter had been decided by the Board." § 7121(f).  Under these provisions, the arbitrator has the same authority as the Board, including authority to determine whether the penalty in a particular case is arbitrary, capricious, or an abuse of discretion.   Defendants'

regulation violates §§ 7121(e) and (f) by failing to give arbitrators the same authority as the Board. It also violates these statutes by totally excluding "mandatory removal" cases from the grievance and arbitration process. § 9901.922(c)(4).

47. Under chapter 71, employees subjected to serious discipline for alleged misconduct or action for unsatisfactory work performance may seek review through the negotiated grievance-arbitration procedure, followed immediately by judicial review. 5 U.S.C. § 7121(f). Departing from this provision—and 5 U.S.C. § 9902(h)(7), which denies defendants authority to waive any chapter 71 provision when establishing appellate procedures—§ 9901.923(a) of defendants' regulation delays judicial review in these cases by subjecting arbitration decisions to two intermediate layers of review. The first layer allows DoD to overrule the arbitrator. § 9901.807(g)(2)(ii)(A) and (B). During the second layer, review by the Board, the authority of the Board to overrule DoD is restricted. §§ 9901.807(f)(5)(i) (allowing DoD to disregard order for interim relief), and 9901.807(f)(3) and (4) (barring remedies for errors in charge notices and performance requirements).

48. Defendants' regulation authorizes the Department to modify or reverse an administrative judge's or an arbitrator's decision in a performance-based or adverse action matter if the Department determines that the judge or arbitrator made "a material error of fact" or that the "decision has a direct and substantial adverse impact on the Department's national security mission, or is based on an erroneous [legal] interpretation." § 9901.807(g)(2)(ii)(A) and (B). These provisions allowing one party to the proceeding unilaterally to modify or reverse the decision of the independent hearing officer violate the § 9902(h)(1) requirement that "an appeals process . . . provide[] employees . . . fair treatment in any appeals that they bring."

49. Defendants' regulation authorizes the Department in a performance-based or adverse action matter to refuse to obey a Merit Systems Protection Board order for interim relief. § 9901.807(f)(5)(i). This is contrary to the Board's § 9902(h)(4) authority to order that a "personnel action shall be stayed [or that] other interim relief shall be granted during the pendency of the Board's review," and contrary to the § 9902(h)(1) requirement that "an appeals process . . . provide[] employees . . . fair treatment in any appeals that they bring."

50. Defendants' regulation prohibits appellate reversal of an adverse action "based on the way in which the charge is labeled or the conduct characterized, provided the employee is on notice of the facts sufficient to respond to the factual allegations of the charge." § 9901.807(f)(3). This provision violates the § 9902(h)(1) requirement that "an appeals process . . . provide[] employees . . . fair treatment in any appeals that they bring" and is contrary to the § 9902(h)(5) authority of the Merit System Protection Board to "order such corrective action as the Board considers appropriate . . . if the Board determines that the decision was . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law [or] procedures required by law, rule, or regulation."

51. Defendants' regulation prohibits appellate reversal of a performance-based action "based on the way a performance expectation is expressed, provided that the expectation would be clear to a reasonable person." § 9901.807(f)(4). This provision violates the § 9902(h)(1) requirement that "an appeals process . . . provide[] employees . . . fair treatment in any appeals that they bring" and is contrary to the § 9902(h)(5) authority of the Merit System Protection Board to "order such corrective action as the Board considers appropriate . . . if the Board determines that the decision was . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law [or] procedures required by law, rule, or regulation."

## CLAIMS

### *Failure to abide by § 9902(m) in developing labor relations system*

52. Defendants Secretary and Director have failed to ensure that the authority of § 9902(m) was exercised in collaboration with, and in a manner that ensured the participation of, employee representatives in the development of the labor management relations system for the DoD, in violation of 5 U.S.C. § 9902(m)(3). In particular, defendants have breached their § 9902(m)(3) duty not to develop a "labor relations system" without "afford[ing] employee representatives . . . the opportunity to have meaningful discussions concerning [its] development." Congress required that "collaboration with, and . . . participation of, employee representatives in the development . . . of the labor management relations system," including "meaningful discussions," start "no later than 60 calendar days after the date of enactment." In imposing this requirement, Congress required collaboration with, participation of, and meaningful discussions with employee representatives in the *early* development of the system. Defendants' use of secret working groups over the course of more than a year to develop to the point of publication in the Federal Register DoD's proposed labor relations system; defendants' denial of the opportunity for plaintiffs and other employee representatives to collaborate with, participate in, or have discussions with the secret groups; and defendants' refusal to reveal to plaintiffs and other employee representatives any of defendants' instructions to the groups, any of the groups' preliminary draft proposals or other work products, or the final proposed regulation, before publication in the Federal Register violated plaintiffs' rights under § 9902(m)(3). Defendants' conduct also was agency action "not in accordance with law" and "without observance of procedure required by law," in violation of 5 U.S.C. § 706(2)(A) and (D).

*Establishment of unlawful labor relations system*

53.  For the reasons stated in ¶¶ 24 through 43, defendants' issuance of each of the following sections of their regulation was agency action "not in accordance with law," in violation of 5 U.S.C. § 706(2)(A):

    a.  § 9901.104(f) (unlimited authority to waive chapter 71);

    b.  § 9901.103 (defining National Security Personnel System to exclude labor relations system from human resources management system)

    c.  § 9901.106 (implementing issuances not subject to bargaining);

    d.  § 9901.905(a) (collective bargaining agreements unenforceable if contrary to implementing issuances);

    e.  § 9901.917(d)(1) (prohibition of bargaining inconsistent with "issuances and implementing issuances");

    f.  § 9901.910 (expanding nonnegotiable management rights to "whatever . . . actions may be necessary"; eliminating any requirement that management rights be exercised in accordance with applicable laws; allowing management in all instances to act immediately, before negotiations begin, regardless of need for expedition; expressly banning, unless the Secretary determines otherwise, negotiation of procedures, except those for hiring, layoff, or discipline; banning, unless the Secretary determines otherwise, even negotiation of procedures for hiring, layoff, or discipline if the management action "*may* be necessary to carry out the Department's mission," thereby implicitly banning, unless the Secretary determines otherwise, all negotiation of procedures; banning, unless the Secretary determines otherwise, negotiation of appropriate arrangements for those adversely affected by "routine assignment to specific duties, shifts, or work on a regular or overtime basis"; eliminating any right to have any appropriate

arrangement negotiated during the term of a contract apply to anyone, ever, by granting the Secretary "sole, exclusive, and unreviewable discretion" to determine whether a negotiated arrangement will be "binding on subsequent acts, or retroactively applied");

g. § 9901.903 (the phrase "issued for the purpose" in the definition of "grievance"; portion of definition of "conditions of employment" excluding "pay of any employee"; last sentence of definition of "supervisor");

h. § 9901.914(a)(2) (limiting unions' right to attend formal discussions);

i. §§ 9901.914(c)(1), (2), and (4) (restricting unions' access to information);

j. § 9901.914(a)(4) (subjecting employee representatives to same standards of conduct as other employees);

k. § 9901.916(a)(7), (restricting unfair labor practices to allow implementing issuances to invalidate preceding collective bargaining agreements);

l. §§ 9901.907 and .908 (vesting review and resolution authority in a non-independent board selected by the Secretary); and

m. § 9901.305 and any other provision of the regulation that precludes plaintiffs from negotiating, to the extent allowed by chapter 71, NAFI employees' pay or other benefits or working conditions that are specifically provided by law as to other employees, but discretionary as to NAFI employees.

### *Establishment of unlawful employee appeals process*

54. For the reasons stated in ¶¶ 44 through 51, defendants' issuance of each of the following sections of their regulation was agency action "not in accordance with law," in violation of 5 U.S.C. § 706(2)(A):

a. §§ 9901.712(c), .807(f)(v), .808(b) and (c), and .922(f)(2) (precluding anyone but the Secretary and the Board from determining the penalty for a so-called "mandatory removal offense");

b. § 9901.922(c)(4) (excluding "mandatory removal" cases from grievance and arbitration proceedings);

c. § 9901.923(a) (subjecting arbitration decisions in performance-based or adverse actions to administrative review prior to judicial review);

d. §§9901.807(f)(2) and .922(f)(2) (requiring initial reviewers, hearing officers, and arbitrators to give "great deference" to the Department's choice of penalty, to uphold that choice unless it is "totally unwarranted," and to always impose the "maximum justifiable penalty");

e. § 9901.807(g)(2)(ii)(A) and (B) (authorizing the Department to modify or reverse an administrative judge's or arbitrator's decision in a performance-based or adverse action matter if the Department determines that the judge or arbitrator made "a material error of fact" or that the "decision has a direct and substantial adverse impact on the Department's national security mission, or is based on an erroneous [legal] interpretation");

f. § 9901.807(f)(5)(i) (authorizing the Department in a performance-based or adverse action matter to refuse to obey a Merit Systems Protection Board order for interim relief);

g. § 9901.807(f)(3) (prohibiting appellate reversal of an adverse action "based on the way in which the charge is labeled or the conduct characterized, provided the employee is on notice of the facts sufficient to respond to the factual allegations of the charge"); and

h. § 9901.807(f)(4) (prohibiting appellate reversal of a performance-based action "based on the way a performance expectation is expressed, provided that the expectation would be clear to a reasonable person").

## RELIEF

55. Plaintiffs ask the Court to

a. enter judgment declaring that in violation of 5 U.S.C. § 9902(m)(3) defendants have developed a labor relations system without affording plaintiffs and other employee representatives the opportunity to have meaningful discussions concerning its development.

b. issue a permanent injunction requiring defendants to

i. disclose to plaintiffs and other employee representatives defendants' instructions to the secret working groups, the secret groups' preliminary draft proposals, and other group work products that would have been shared with plaintiffs contemporaneously if defendants had not violated § 9902(m)(3); and

ii. afford plaintiffs and other employee representatives the opportunity to engage in meaningful discussions concerning the development of the new labor relations system with the members of the secret working groups or other appropriate group that is tasked with developing the new system;

c. issue preliminary and permanent injunctions requiring defendants to refrain from implementing any new labor relations system until they have complied with ¶¶ b(i) and b(ii) and all other § 9902(m)(3) requirements;

d. enter judgment declaring each of the portions of defendants' regulation listed in either ¶ 53 or 54 to be not in accordance with law, and holding them unlawful and setting them aside;

e.  issue preliminary and permanent injunctions prohibiting defendants from implementing or enforcing Subpart I of defendants' regulation (the subpart establishing the labor relations system), in its entirety, because no portion of that subpart is severable from the portions listed in ¶ 53 that are not in accordance with law;

f.  in the alternative to ¶ e, issue preliminary and permanent injunctions prohibiting defendants from implementing or enforcing any of the portions of defendants' regulation listed in ¶ 53;

g.  issue preliminary and permanent injunctions prohibiting defendants from implementing or enforcing any of the portions of defendants' regulation listed in ¶ 54;

h.  award plaintiffs their costs and reasonable attorneys' fees;

i.  award plaintiffs such additional or alternative relief as the Court deems just.

Respectfully submitted,

Dated: November 14, 2005

By:  _Joseph Goldberg /SMT_

JOSEPH GOLDBERG, Bar # 291096
Assistant General Counsel
MARK D. ROTH, Bar # 235473
General Counsel
AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, AFL-CIO
80 F Street, N.W.
Washington, DC  20001
(202) 639-6426


By:  _Sally M Tedrow_

SALLY M. TEDROW, Bar #938803
ROBERT MATISOFF, Bar #210294A
KEITH R. BOLEK, Bar #463129
O'DONOGHUE & O'DONOGHUE LLP
4748 Wisconsin Avenue, N.W.
Washington, DC  20016
(202) 362-0041

By: _Susan Tsui Grundmann/smt_
SUSAN TSUI GRUNDMANN, Bar #433437
General Counsel
NATIONAL FEDERATION OF FEDERAL
EMPLOYEES, FD-1, IAMAW, AFL-CIO
1016 16th Street, N.W.
Washington, DC  20036
(202) 862-4400


By: _Daniel M. Schember/smt_
DANIEL M. SCHEMBER, Bar #237180
GAFFNEY & SCHEMBER, P.C.
1666 Connecticut Avenue, N.W.
Suite 225
Washington, DC  20009
(202) 328-2244

Attorneys for Plaintiffs

Of Counsel:

JEAN E. ZEILER
Senior Counsel
NATIONAL ASSOCIATION OF
GOVERNMENT EMPLOYEES, SEIU,
AFL-CIO
159 Burgin Parkway
Quincy, MA  02169
(617) 376-0220

JULIA AKINS CLARK, Bar #337493
General Counsel
INTERNATIONAL FEDERATION OF
PROFESSIONAL AND TECHNICAL
ENGINEERS, AFL-CIO
8630 Fenton Street, Suite 400
Silver Spring, MD  20910
(301) 565-9016

PATRICK J. SZYMANSKI, Bar #269654
General Counsel
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS
25 Louisiana Avenue, N.W.
Washington, DC  20001
(202) 624-6945

135602_1