**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, *et. al.*, | : : : | |
| Plaintiffs, | : : | No. 1:05cv02183 (EGS) |
| v. | : : | |
| DONALD H. RUMSFELD, SECRETARY OF DEFENSE, *et. al.*, | : : : | |
| Defendants. | : | |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56(a), Plaintiffs respectfully move the Court for summary judgment. In support of this motion, the Plaintiffs rely on their simultaneously submitted supporting memorandum, appendix containing declarations and exhibits in support of summary judgment, and statement of undisputed material facts. As explained in their moving papers, Plaintiffs ask the Court to:

1.      enter judgment declaring that, in violation of 5 U.S.C. § 9902(m)(3), Defendants have developed a labor relations system without affording Plaintiffs and other employee representatives the opportunity to have meaningful discussions concerning its development;

2.      issue a permanent injunction requiring Defendants to refrain from developing or implementing a labor relations system under 5 U.S.C. § 9902, unless and until they

        a.      disclose to Plaintiffs and other employee representatives Defendants' instructions to the secret working groups, the secret groups' preliminary draft proposals, and other group work products that would have been shared with Plaintiffs contemporaneously if Defendants had not violated § 9902(m)(3); and

        b.      afford Plaintiffs and other employee representatives the opportunity to engage in meaningful discussions concerning the development of the new labor relations system

with the members of the secret working groups or other appropriate group that is tasked with developing the new system;

      3.     issue a permanent injunction requiring Defendants to refrain from implementing any new labor relations system until they have complied with the requirements of 5 U.S.C. § 9902(m)(3);

      4.     enter judgment declaring each of the following portions of Defendants' regulation, 70 Fed. Reg. 66116, *et seq.* (Nov. 1, 2005) to be not in accordance with law, and holding them unlawful and setting them aside:

      a.     § 9901.104(f) (unlimited authority to waive chapter 71);

      b.     § 9901.103 (defining National Security Personnel System to exclude labor relations system from human resources management system);

      c.     § 9901.106 (implementing issuances not subject to bargaining);

      d.     § 9901.905(a) (collective bargaining agreements unenforceable if contrary to implementing issuances);

      e.     § 9901.917(d)(1) (prohibition of bargaining inconsistent with "issuances and implementing issuances");

      f.     § 9901.910 (expanding nonnegotiable management rights to "whatever . . . actions may be necessary"; eliminating any requirement that management rights be exercised in accordance with applicable laws; allowing management in all instances to act immediately, before negotiations begin, regardless of need for expedition; expressly banning, unless the Secretary determines otherwise, negotiation of procedures, except those for hiring, layoff, or discipline; banning, unless the Secretary determines otherwise, even negotiation of procedures for hiring, layoff, or discipline if the management action "*may* be necessary to carry out the Department's mission," thereby implicitly banning, unless the Secretary determines otherwise,

all negotiation of procedures; banning, unless the Secretary determines otherwise, negotiation of appropriate arrangements for those adversely affected by "routine assignment to specific duties, shifts, or work on a regular or overtime basis"; eliminating any right to have any appropriate arrangement negotiated during the term of a contract apply to anyone, ever, by granting the Secretary "sole, exclusive, and unreviewable discretion" to determine whether a negotiated arrangement will be "binding on subsequent acts, or retroactively applied");

g.   § 9901.903 (the phrase "issued for the purpose" in the definition of "grievance"; portion of definition of "conditions of employment" excluding "pay of any employee"; last sentence of definition of "supervisor");

h.   § 9901.914(a)(2) (limiting unions' right to attend formal discussions);

i.   §§ 9901.914(c)(1), (2), and (4) (restricting unions' access to information);

j.   § 9901.914(a)(4) (subjecting employee representatives to same standards of conduct as other employees);

k.   § 9901.916(a)(7), (restricting unfair labor practices to allow implementing issuances to invalidate preceding collective bargaining agreements);

l.   §§ 9901.907 and .908 (vesting review and resolution authority in a non-independent board selected by the Secretary); and

m.   § 9901.305 and any other provision of the regulation that precludes Plaintiffs from negotiating, to the extent allowed by chapter 71, NAFI employees' pay or other benefits or working conditions that are specifically provided by law as to other employees, but discretionary as to NAFI employees;

5.   issue a permanent injunction prohibiting Defendants from implementing or enforcing Subpart I of Defendants' regulation (the subpart establishing the labor relations

system), in its entirety, on the ground that no portion of that subpart is severable from the portions listed in ¶ 4 that are not in accordance with law;

6.      in the alternative to ¶ 5, issue a permanent injunction prohibiting Defendants from implementing or enforcing any of the portions of Defendants' regulation listed in ¶ 4;

7.      enter judgment declaring each of the following portions of Defendants' regulation to be not in accordance with law, and holding them unlawful and setting them aside:

a.      §§ 9901.712(c), .807(f)(v), .808(b) and (c), and .922(f)(2) (precluding anyone but the Secretary and the Board from determining the penalty for a so-called "mandatory removal offense");

b.      § 9901.922(c)(4) (excluding "mandatory removal" cases from grievance and arbitration proceedings);

c.      § 9901.923(a) (subjecting arbitration decisions in performance-based or adverse actions to administrative review prior to judicial review);

d.      §§ 9901.807(f)(2) and .922(f)(2) (requiring initial reviewers, hearing officers, and arbitrators to give "great deference" to the Department's choice of penalty, to uphold that choice unless it is "totally unwarranted," and to always impose the "maximum justifiable penalty");

e.      §§ 9901.807(g)(2)(ii)(A) and (B) (authorizing the Department to modify or reverse an administrative judge's or arbitrator's decision in a performance-based or adverse action matter if the Department determines that the judge or arbitrator made "a material error of fact" or that the "decision has a direct and substantial adverse impact on the Department's national security mission, or is based on an erroneous [legal] interpretation");

4

    f.  § 9901.807(f)(5)(i) (authorizing the Department in a performance-based or adverse action matter to refuse to obey a Merit Systems Protection Board order for interim relief);

    g.  § 9901.807(f)(3) (prohibiting appellate reversal of an adverse action "based on the way in which the charge is labeled or the conduct characterized, provided the employee is on notice of the facts sufficient to respond to the factual allegations of the charge"); and

    h.  § 9901.807(f)(4) (prohibiting appellate reversal of a performance-based action "based on the way a performance expectation is expressed, provided that the expectation would be clear to a reasonable person"); and

  8.  issue a permanent injunction prohibiting Defendants from implementing or enforcing any of the portions of Defendants' regulation listed in ¶ 7.

  WHEREFORE, the Plaintiffs respectfully request that the Court grant the Plaintiffs' Motion for Summary Judgment and enter the relief set forth in their proposed order.

            Respectfully submitted,

Dated:  November 23, 2005    By: /s/ Joseph Goldberg_____
               JOSEPH GOLDBERG, Bar # 291096
               Assistant General Counsel
               MARK D. ROTH, Bar # 235473
               General Counsel
               AMERICAN FEDERATION OF
               GOVERNMENT EMPLOYEES, AFL-CIO
               80 F Street, N.W.
               Washington, DC  20001
               (202) 639-6426

By:   /s/ Sally M. Tedrow_____
SALLY M. TEDROW, Bar #938803
ROBERT MATISOFF, Bar #210294A
KEITH R. BOLEK, Bar #463129
O'DONOGHUE & O'DONOGHUE LLP
4748 Wisconsin Avenue, N.W.
Washington, DC  20016
(202) 362-0041


By:   /s/ Susan Tsui Grundmann_____
SUSAN TSUI GRUNDMANN, Bar #433437
General Counsel
NATIONAL FEDERATION OF FEDERAL
EMPLOYEES, FD-1, IAMAW, AFL-CIO
1016 16th Street, N.W.
Washington, DC  20036
(202) 862-4400


By:   /s/ Daniel M. Schember_____
DANIEL M. SCHEMBER, Bar #237180
GAFFNEY & SCHEMBER, P.C.
1666 Connecticut Avenue, N.W.
Suite 225
Washington, DC  20009
(202) 328-2244


Attorneys for Plaintiffs


Of Counsel:

JEAN E. ZEILER
Senior Counsel
NATIONAL ASSOCIATION OF
GOVERNMENT EMPLOYEES, SEIU,
AFL-CIO
159 Burgin Parkway
Quincy, MA  02169
(617) 376-0220

JULIA AKINS CLARK, Bar #337493
General Counsel
INTERNATIONAL FEDERATION OF
PROFESSIONAL AND TECHNICAL
ENGINEERS, AFL-CIO
8630 Fenton Street, Suite 400
Silver Spring, MD  20910
(301) 565-9016

PATRICK J. SZYMANSKI, Bar #269654
General Counsel
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS
25 Louisiana Avenue, N.W.
Washington, DC  20001
(202) 624-6945

135988_1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

AMERICAN FEDERATION OF GOVERNMENT :
EMPLOYEES, AFL-CIO, *et al*.,                      :
                                                                        :
                        Plaintiffs,                        :
                                                                        :
            v.                                                     :        Case No. 1:05CV02183 EGS
                                                                        :
DONALD H. RUMSFELD, SECRETARY,          :
UNITED STATES DEPARTMENT OF               :
DEFENSE, *et al*.,                                         :
                                                                        :
                        Defendants.                       :

# MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

JOSEPH GOLDBERG, Bar # 291096
Assistant General Counsel
MARK D. ROTH, Bar # 235473
General Counsel
AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, AFL-CIO
80 F Street, N.W.
Washington, DC  20001
(202) 639-6426

SALLY M. TEDROW, Bar #938803
ROBERT MATISOFF, Bar #210294A
KEITH R. BOLEK, Bar #463129
O'DONOGHUE & O'DONOGHUE LLP
4748 Wisconsin Avenue, N.W.
Washington, DC  20016
(202) 362-0041

SUSAN TSUI GRUNDMANN, Bar #433437
General Counsel
NATIONAL FEDERATION OF FEDERAL
EMPLOYEES, FD-1, IAMAW, AFL-CIO
1016 16th Street, N.W.
Washington, DC  20036
(202) 862-4400

DANIEL M. SCHEMBER, Bar #237180
GAFFNEY & SCHEMBER, P.C.
1666 Connecticut Avenue, N.W.
Suite 225
Washington, DC  20009
(202) 328-2244

Attorneys for Plaintiffs

Of Counsel:

JEAN E. ZEILER
Senior Counsel
NATIONAL ASSOCIATION OF
GOVERNMENT EMPLOYEES, SEIU,
AFL-CIO
159 Burgin Parkway
Quincy, MA  02169
(617) 376-0220

JULIA AKINS CLARK, Bar #337493
General Counsel
INTERNATIONAL FEDERATION OF
PROFESSIONAL AND TECHNICAL
ENGINEERS, AFL-CIO
8630 Fenton Street, Suite 400
Silver Spring, MD  20910
(301) 565-9016

PATRICK J. SZYMANSKI, Bar #269654
General Counsel
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS
25 Louisiana Avenue, N.W.
Washington, DC  20001
(202) 624-6945

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................... iv

I.      INTRODUCTION ...................................................................1

II.     STATEMENT OF THE CASE......................................................1

        A.      The National Defense Authorization Act For Fiscal Year 2004.............................1

        B.      The Labor-Management Regime Under The Regulations......................................4

        C.      The Collaboration/Meet And Confer Process...........................................6

        D.      Adverse Appeals Procedures Under The Regulations ...........................................6

III.    THE SUMMARY JUDGMENT STANDARD...................................................8

IV.     STANDARD OF REVIEW ........................................................8

V.      ARGUMENT .............................................................10

        A.      The Challenged Regulations Are Contrary To The NDAA, Contrary To
                Law, And Arbitrary And Capricious. ..................................................10

        B.      The Regulation's Labor Relations System Is Contrary To Law..........................10

                1.      *The Law Congress Enacted Allows Only Two Departures From
                        5 U.S.C. Chapter 71 And Expressly Prohibits Any Other Waiver
                        Or Modification Of Chapter 71* ...............................................10

                2.      *Contrary To The Law Congress Passed, The DoD Regulation
                        Asserts Authority To Waive Every Provision Of Chapter 71* ...................16

                3.      *Contrary To Law, The DoD Regulation Totally Eliminates
                        The Statutory Right To Collective Bargaining*...........................................18

                4.      *The Regulation Unlawfully Expands Management Rights And
                        Nearly Eliminates Negotiation Of Procedures And Appropriate
                        Arrangements* .................................................................20

                5.      *Contrary To Law, The Board Established By The Regulation
                        Is Not An Independent Third Party*...........................................................22

                6.      *The Regulation Unlawfully Expands The Definition Of "Supervisor"* .....23

7.  The Regulation Unlawfully Limits Grievances Alleging Violations Of Laws And Rules ....................................................................24

8.  The Regulation Unlawfully Restricts Unions' Rights To Attend Formal Meetings ...................................................................24

9.  The Regulation Unlawfully Restricts Unions' Right To Information ........25

10.  The Regulation Unlawfully Restricts Speech And Expressive Conduct Of Union Representatives..........................................26

11.  The Regulation Unlawfully Limits Unfair Labor Practice Charges..........29

12.  The Final Regulations Unlawfully Violate The Enabling Statute By Improperly Eliminating All Bargaining Over Pay For Employees Of Non-Appropriated Fund Instrumentalities ........................30

13.  The Regulations At Issue Are Not Severable From The Remainder Of Subpart I Of The Regulations; Thus, The Entire Subpart Must Be Enjoined ..................................................................34

C.  The Agencies Violated The Requirement That They Collaborate With The Unions On The Development Of A New Labor-Management Relations System And That They Meet And Confer Regarding Provisions On Which There Is Disagreement ..........................................37

D.  The NSPS Places Unlawful Restrictions On Employee Appeal Rights ................44

1.  The Appeals Process And How It Works ...................................44

2.  The Sections Of The Regulations Requiring Arbitrators And MSPB Administrative Judges To Uphold An Adverse Action Unless It Is "Totally Unwarranted" And To Always Impose The Maximum Justifiable Penalty—5 C.F.R. §§ 9901.807(f)(2) And 9901.922(f)(2)—Are Invalid ..........................................46

3.  The Sections Of The Regulations Which Allow The DoD To Modify Or Reverse An Arbitrator Or Administrative Judge's Decision—5 C.F.R. §§ 9901.807(G)(2)(Ii)(A) And (B)—Violate Chapter 71 (In The Case Of Arbitrator Decisions) And NDAA's Fairness Provisions (In The Case Of Arbitrator And Administrative Judge Decisions)..................................................49

a.  Arbitrator Decisions......................................................49

b.  Decisions of Administrative Judges ...............................51

4.  *The Sections Of The Regulations Restricting The Authority Of The Full MSPB—5 C.F.R. §§ 9901.807(f)(3), (f)(4) And (f)(5)(i)—Violate The NDAA* ..............................................................51

5.  *The Sections Of The Regulations Precluding Administrative Judges From Determining The Penalty For "Mandatory Removal Offenses"—5 C.F.R. §§ 9901.712(c), 9901.807(f)(1)(v), 9901.808(b) And (c) And 9901.922(f)(2)—And The Sections Excluding "Mandatory Removal" Cases From The Grievance And Arbitration Procedure Altogether—5 C.F.R. § 9901.922(c)(4)— Are Unlawful And Should Be Enjoined* ......................................................53

VI.  CONCLUSION ...............................................................................................56

## TABLE OF AUTHORITIES

**CASES**

*AFGE, AFL-CIO, Local 1786 and Morale, Welfare and Recreation Fund Activity,*
    *Quantico, Va.,*
    49 F.L.R.A. 534 (1994)........................................................................................18, 32

*AFGE, Local 2670 and AAFES,*
    10 F.L.R.A. 71 (1982)..................................................................................................32

*AFL-CIO v. Chao,*
    409 F.3d 377 (D.C. Cir. 2005) ....................................................................................17

*AFL-CIO v. FEC,*
    333 F.3d 168 (D.C. Cir. 2003) ......................................................................................9

*Air Force Flight Test Ctr., Edwards Air Force Base, Cal.,*
    53 F.L.R.A. 1455 (1998)........................................................................................27, 29

*America Hospital Association v. Bowen,*
    834 F.2d 1037 (D.C. Cir. 1987) ..................................................................................44

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)......................................................................................................8

*Association of Civilian Techs., Mont. Air Chapter No. 29 v. FLRA,*
    22 F.3d 1150 (D.C. Cir. 1994) ....................................................................................17

*Atlantic Hilton & Tower,*
    271 N.L.R.B. 1600 (1984) ..........................................................................................42

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)......................................................................................................8

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
    467 U.S. 837 (1984)............................................................................................8, 9, 10

*Davis County Solid Waste Management v. EPA,*
    108 F.3d 1454 (D.C. Cir. 1997) .............................................................................36. 37

*Department of Army v. FLRA,*
    914 F.2d 1291 (9th Cir. 1990) ....................................................................................32

*Department of Health and Human Services, SSA,*
    33 F.L.R.A. 454 (1988)................................................................................................20

*Department of Justice, Immigration and Naturalization Serv. and AFGE, National Border Patrol Council,*
    31 F.L.R.A. 145 (1988) ........................................................................ 20, 21

*Department of the Air Force, Eglin Air Force Base,*
    24 F.L.R.A. 377 (1986) .............................................................................32

*Department of the Air Force, Grissom Air Force Base, Ind.,*
    51 F.L.R.A. 7 (1995) .................................................................................26

*Department of the Navy, Puget Sound Naval Shipyard, Bremerton, Washington,*
    2 F.L.R.A. 54 (1979) ...........................................................................27, 29

*Department of Treasury, IRS, Memphis Service Center,*
    16 F.L.R.A. 687 (1984) ............................................................................27

*Devine v. Pastore,*
    732 F.2d 213 (D.C. Cir. 1984) ..................................................................50

*Fort Stewart Schools v. FLRA,*
    495 U.S. 641 (1990) .................................................................................32

*Lujan v. National Wildlife Federation,*
    497 U.S. 871 (1990) ...................................................................................8

*MCI Telecomm. Corp. v. AT&T Co.,*
    512 U.S. 218 (1994) .................................................................................41

*MD/DC/DE Broadcasters Association v. FCC,*
    253 F.3d 732 (D.C. Cir. 2001) .................................................................34

*Motor Vehicle Manufacturers of the U.S., Inc. v. State Farm Mutual Automobile Insurance Co.,*
    463 U.S. 29 (1983) .....................................................................................9

*NLRB v. Herman Sausage Co.,*
    275 F.2d 229 (5th Cir. 1960) ...................................................................42

*\*National Treasury Employees Union v. Chertoff,*
    385 F. Supp. 2d 1 (D.D.C. 2005) ..................................................... passim

*\*National Treasury Employees Union v. Chertoff,*
    2005 U.S. Dist. LEXIS 22802 (Oct. 7, 2005) ..............................10, 34, 35, 36

---

\* Authorities upon which we chiefly rely are marked with asterisks.

*National Association of Regulatory Utility Comm'rs v. ICC*,
     41 F.3d 721 (D.C. Cir. 1994) ........................................................................9

*National Family Planning & Reproduction Health Association v. Sullivan*,
     979 F.2d 227 (D.C. Cir. 1992) ....................................................................28

*Naval Resale Activity Naval Station*,
     49 F.L.R.A. 994 (1994)................................................................................31

*Old Dominion Branch No. 496 v. Austin*,
     418 U.S. 264 (1974)......................................................................................26

*Pioneer Investment Services Co. v. Brunswick Associates*,
     507 U.S. 380 (1993)......................................................................................40

*Quill Corp. v. North Dakota*,
     504 U.S. 298 (1992)......................................................................................48

*Smith v. Brown & Williamson Tobacco Corp.*,
     108 F. Supp. 2d 12 (D.D.C. 2000) ................................................................8

*United States Department of the Treasury, Bureau of Engraving and Printing v. FLRA*,
     995 F.2d 301 (D.C. Cir. 1993) ....................................................................32

*Va. R. Co. v. System Federation No. 40*,
     300 U.S. 515 (1937)......................................................................................42

*W. Va. University Hospitals, Inc. v. Casey*,
     499 U.S. 83 (1991)........................................................................................22

*White v. Fraternal Order of Police*,
     909 F.2d 512 (D.C. Cir. 1990) ......................................................................8

*Whitman v. America Trucking Associations*,
     531 U.S. 457 (2001)................................................................................17, 18

## STATUTES

5 U.S.C. § 553(a)(2)...........................................................................................43

5 U.S.C. §§ 553(b)-(d) .......................................................................................30

5 U.S.C. § 706(2) .................................................................................................9

5 U.S.C. § 1204...................................................................................................52

**5 U.S.C. § 7101 *et seq.*................................................................................... *passim*

5 U.S.C. § 7512 .......................................................................................................56

5 U.S.C. § 7703(b) ..................................................................................................50

***5 U.S.C. § 9902 *et seq.*.............................................................................. *passim*

29 U.S.C. § 157 .......................................................................................................27

29 U.S.C. § 158(a) ..................................................................................................27

29 U.S.C. § 158(d) ..................................................................................................41

5 C.F.R. § 9901 *et seq.*................................................................................. *passim*

## OTHER AUTHORITIES

*70 Fed. Reg. 66116 *et seq.* (Nov. 1, 2005) ................................................ *passim*

70 Fed. Reg. 7552 *et seq.* (Feb. 14, 2005) ...........................................................39

*149 Cong. Rec. S14417-02 (Nov. 11, 2003).......................................................38

*149 Cong. Rec. S14439 (Nov. 11, 2003) ............................................................15

*149 Cong. Rec. S14428 (Nov. 11, 2003) ............................................................13

*149 Cong. Rec. S14490 (Nov. 12, 2003) ..................................................12, 15, 16

Fed. R. Civ. P. 56 ......................................................................................................8

Fed. R. Civ. P. 56(c) .................................................................................................8

*Transforming the Department of Defense Personnel System: Finding the Right
    Approach*: Hearing Before the United States Senate Committee on Government
    Affairs, 108th Cong. 21 (2003) (statement of Donald Rumsfeld, Secretary of
    Defense) ....................................................................................................12, 13, 30

---

** Plaintiffs rely upon the Federal Service Labor-Management Relations Statute, 5 U.S.C.
§ 7101 *et seq.* in its entirety.

*** Plaintiffs rely upon Section 9902 of the National Defense Authorization Act for Fiscal Year
2004 ("NDAA") in its entirety.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## I.  INTRODUCTION

The Plaintiffs, thirteen labor organizations that represent some 350,000 employees of the Department of Defense (the "Unions"), have filed this action to challenge final regulations promulgated by the Defendants pursuant to the National Defense Authorization Act for Fiscal Year 2004 ("NDAA"), Pub. L. No. 108-136, Nov. 24, 2003, 117 Stat. 1633. The regulations establish a new human resources management system, including, but not limited to, a new labor relations systems, at the Department of Defense ("DoD"). The system, which has now been embodied in final regulations published at 70 Fed. Reg. 66116 (Nov. 1, 2005), is known as the National Security Personnel System or "NSPS."

Plaintiffs now move for summary judgment on all counts of their complaint, as amended.

## II.  STATEMENT OF THE CASE

### A.  The National Defense Authorization Act For Fiscal Year 2004

In the NDAA, Congress authorized the Secretary of Defense ("Secretary"), together with the Director of the Office of Personnel Management ("Director" of "OPM"), to establish a human resources management system for organizational units of the DoD. 5 U.S.C. § 9902(a). Three aspects of the statute are particularly critical to the Unions' claims.

First, Defendants (which will also be referred to as the "Agencies") were authorized "to establish and from time to time adjust a labor relations system for the Department of Defense." 5 U.S.C. § 9902(m)(1). However, the statute expressly circumscribes the Secretary's and Director's discretion in a number of respects. First, it specifically directs that any such system "*shall* . . . ensure that employees may organize, bargain collectively, and participate through labor organizations of their own choosing in decisions which affect them, subject to the

provisions of this chapter and any exclusion from coverage or limitation on negotiability pursuant to law. . . ."   5 U.S.C. § 9902(b)(4) (2005) (emphasis added).   Congress further provided that the Agencies could not waive, modify or otherwise affect chapter 71 of title 5 (5 U.S.C. §§ 7101 *et. seq.*), which governs labor-management relations in the federal sector, "to the extent not otherwise specified in this title. . . ."   5 U.S.C. §§ 9902(b)(3) & (d)(2) (2005).   Finally, Congress "otherwise specified" two modifications to chapter 71 in the Act.   First, the NDAA grants the Secretary "authority to bargain at a level above the level of exclusi[ve] recognition," commonly called national level bargaining. 5 U.S.C. § 9902(m)(5).   Second, Congress directed the Secretary to provide for "independent third party review" of decisions, including what decisions are reviewable by the third party, who would conduct the review and what standards would be used in such a review.   5 U.S.C. § 9902(m)(6).   As for the rest of chapter 71, Congress preserved those statutory provisions to insure employees' rights to organize, collectively bargain and have a voice in matters affecting their employment.

Second, undoubtedly to further assure preservation of employees' collective bargaining rights, the NDAA requires the Secretary and Director "to ensure that the authority [to establish a human resources management system] is exercised in collaboration with, and in a manner that insures the participation of, employee representatives in the development and implementation of the labor management relations system. . . ."   5 U.S.C. § 9902(m)(3).   Congress specified additional requirements of the collaboration process as follows:

(A)     The Secretary and the Director shall, with respect to any proposed system or adjustment—

(i)     afford employee representatives and management the opportunity to have meaningful discussions concerning the development of the new system;

(ii)    give such representatives at least 30 calendar days (unless extraordinary circumstances require earlier action) to review the proposal for the system and make recommendations with respect to it; and

(iii)    give any recommendations received from such representatives under clause (ii) full and fair consideration.

(B)    Following receipt of recommendations . . . the Secretary and the Director shall accept such modifications to the proposal in response to the recommendations as are determined advisable and shall, with respect to any parts of the proposal as to which they have not accepted the recommendations—

(i)    meet and confer for not less than 30 calendar days with the employee representatives, in order to attempt to reach agreement on whether or how to proceed with those parts of the proposal . . .

5 U.S.C. §§ 9902(m)(3)(A) and (B).

Finally, the NDAA mandates that employees be afforded the protections of due process and fundamental fairness in appealing any adverse employment actions taken by DoD.  The statute directs the Secretary to "establish an appeals process that provides employees of the Department of Defense…fair treatment in any appeals that they bring in decisions relating to their employment and . . . ensure that employees . . . are afforded the protections of due process." 5 U.S.C. § 9902(h)(1).  More specifically, the statute requires that employees have access to the Merit Systems Protections Board ("MSPB"), an independent agency charged with adjudicating adverse actions for most federal employees.  The NDAA explicitly provides that the MSPB may order interim relief, including a stay of adverse actions during the pendency of the MSPB's review, and may ultimately mitigate the agency-imposed penalty if it determines DoD's decision was arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence.  5 U.S.C. §§ 9902(h)(4), (5).

## B.  The Labor-Management Regime Under The Regulations

As described above, Congress required that the Secretary and the Director ensure that employees retain the right to "organize, bargain collectively, and participate through labor organizations of their own choosing in decisions which affect them."  5 U.S.C. § 9902(b)(4). Congress further provided that, save the two exceptions outlined *supra*, the new labor management relations system preserve the rights guaranteed in chapter 71 of U.S.C. title 5. Despite those statutory requirements, the Secretary and the Director have issued final regulations that:

(1)    permit DoD to waive or modify any provision of chapter 71 which is inconsistent with DoD's new labor relations system,  5 C.F.R. § 9901.104;

(2)    permit DoD to promulgate "issuances," documents to carry out a policy or procedure of the Department, at any time; any collective bargaining provisions inconsistent with an "implementing issuance" would become unenforceable; any proposal inconsistent with an "issuance" (whether "implementing" or otherwise) would become nonnegotiable, §§ 9901.103; 9901.105(a); 9901.916(a)(7); 9901.917(d)(1);

(3)    expand nonnegotiable management rights to include "whatever other actions may be necessary to carry out the Department's mission,"  § 9901.910(a)(2);

(4)    eliminate nearly all bargaining of "procedures" and "appropriate arrangements" (collectively known as impact and implementation bargaining), §§ 9901.910(b), (f), (g), (h);

(5)    establish, in response to the statutory requirement that there be an "independent third party review of [labor-management] decisions," an internal DoD Board ("NSLRB") whose members are selected by the Secretary, and that has authority to review and resolve negotiability

4

disputes, bargaining impasses, unfair labor practice complaints and exceptions to arbitration awards, §§ 9901.907; 9901.908;

(6)    restrict eligibility for union representation by expanding the definition of "supervisor," § 9901.903;

(7)    restrict the negotiated grievance procedure by eliminating any grievance based on a law, rule, or regulation affecting working conditions unless the grievant can prove the provision was "issued *for the purpose* of affecting conditions of employment," § 9901.903 (emphasis added);

(8)    curtail sharply the rights of union representatives to engage in their traditional functions in representing employees in the workplace, by:

(a)    limiting union representatives' rights to attend discussions with management officials regarding grievances or personnel policies/practices, § 9901.914(a)(2);

(b)    effectively ending a union's right to request information relevant to the scope of a union's duties to negotiate collective bargaining agreements and represent employees in grievances, § 9901.914(c); and

(c)    abolishing employees' rights to freely present the views of the labor organization to management in the context of his/her role as a union representative without being subject to discipline for insubordination,  § 9901.914(a)(4);

(9)    reduce the scope of unfair labor practices by allowing "implementing issuances" to override existing collective bargaining agreements, § 9901.916(a)(7); and

(10)    eliminate negotiations over pay and other working conditions of employees of Non-Appropriated Fund Instrumentalities (NAFI), §§ 9901.903; 9901.305.

These regulations, *inter alia*, violate the express requirements of the NDAA by illegally waiving/modifying substantial portions of chapter 71. The regulatory provisions on "issuances"—which totally eliminate any statutory right to collective bargaining by allowing the Secretary to eliminate bargaining of any or all subjects by unilateral directive—also violate § 9902(b)(4) of the NDAA, which requires that DoD "ensure" employees' right to collective bargaining. These and related fatal defects in the labor relations aspects of the regulations will be discussed in detail in the argument section below. As Plaintiffs will show, implementation of these unlawful regulations should be permanently enjoined.

### C. <u>The Collaboration/Meet And Confer Process</u>

As will also be discussed below, the labor relations system was not developed in collaboration with employee representatives, as required by the NDAA. The Agencies failed to afford the opportunity for meaningful discussions, failed to disclose critical instructions, draft proposals and other information that would have allowed such meaningful discussions to take place, and failed to engage in the statutorily mandated meet-and-confer process. Accordingly, Plaintiffs will request the Court to permanently enjoin Defendants from developing or implementing any labor relations system unless and until they have fulfilled their obligation, as set forth above, to collaborate with Plaintiffs and other employee representatives in the development and implementation of that system.

### D. <u>Adverse Appeals Procedures Under The Regulations</u>

As described above, Congress authorized DoD to establish a process by which employees may appeal adverse actions against them. Congress required, however, that the appeals process be fair, comport with due process, and be subject to meaningful review by the MSPB. 5 U.S.C.

§ 9902(h). Purporting to rely upon this authority, the regulations in fact impose a variety of unlawful strictures on employees, arbitrators, and the MSPB.

Initially, the regulations require employees subject to an adverse action (*i.e.* discipline) to go through several *layers* of review, each with different *standards* of review. First, the grievant succumbs to the negotiated grievance-arbitration, (or grievance-MSPB administrative judge) procedure. However, the arbitrator/administrative judge ("AJ") has almost no reviewing authority and may not mitigate a disciplinary penalty unless DoD's initial decision to impose the adverse action was "totally unwarranted in light of all pertinent circumstances." 5 C.F.R. § 9901.807(f)(2)(iv). In the unlikely event that the arbitrator/AJ does mitigate a penalty, the grievant becomes subject to DoD's right to unilaterally overrule the arbitrator or administrative judge. DoD may modify or reverse the decision if it determines the arbitrator/AJ made a material error of fact or the decision has an adverse impact on the Department's national security mission. 5 C.F.R. § 9901.807(g)(2)(ii)(A) & B. Only after DoD completes its internal review may the grievant appeal to the MSPB. However, the regulations then improperly curtail the MSPB's authority. For example, in direct contravention of the NDAA, the regulations provide that the MSPB may not order interim relief. 5 C.F.R. § 9901.807(f)(5)(i). Further, while the MSPB purportedly may mitigate an adverse action if it was "arbitrary and capricious," it may not reverse an adverse action based on the way the charge was labeled or the conduct characterized, or based on the way a performance expectation was expressed. 5 C.F.R. § 9901.807(f)(3) & (4).

Finally, the regulations identify a series of "mandatory removal offenses" ("MROs"). 5 C.F.R. § 9901.103. While employees who are charged with these offenses must follow all the stages of review outlined above, only the Secretary or the full MSPB have the authority to mitigate the penalty. 5 C.F.R. § 9901.712(c). Thus, the hearing before an AJ (arbitrators may

not hear MROs under the new regulations) and the subsequent review before the Department are utterly meaningless, as these bodies have no authority to do anything but uphold the penalty, which is inevitably termination.

## III.  THE SUMMARY JUDGMENT STANDARD

The standard on a motion for summary judgment is well established.  *White v. Fraternal Order of Police*, 909 F.2d 512, 516 (D.C. Cir. 1990).  A court should grant summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c).  Mere allegations are not sufficient to defeat a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Thus, if the Plaintiffs show that there is an absence of evidence to support Defendants' case, the Agencies must come forward with specific facts showing that there is a genuine issue for trial. *Smith v. Brown & Williamson Tobacco Corp.*, 108 F. Supp. 2d 12 (D.D.C. 2000).  Federal Rule of Civil Procedure 56 and Local Rule 7.1(h) each place the burden upon Defendants to designate specific facts showing that there is a genuine issue of fact for resolution at a trial. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990); *Celotex*, 477 U.S. at 324.

## IV.  STANDARD OF REVIEW

The validity of the Agencies' regulations is analyzed under two standards of review: *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and the Administrative Procedures Act.  Because the regulations at issue interpret a statute the DoD administers, they are  reviewed using the two-step analysis set forth in *Chevron*.  At step one, the court determines "whether Congress has spoken directly . . . to the precise question at issue."

*AFL-CIO v. FEC*, 333 F.3d 168, 172-73 (D.C. Cir. 2003) (internal citations omitted).  If so, "that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  *Chevron*, 467 U.S. at 842-43.  If the statute is silent or ambiguous, however, the Court must undertake step two of the analysis and determine whether the agency's interpretation is "reasonable."  *Id.*  At the same time, because the regulations reflect final agency action under the APA, the Court is to ask whether they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  The D.C. Circuit has recognized that "the inquiry at the second step of Chevron overlaps analytically with a court's task under the Administrative Procedure Act."  *Nat'l Ass'n of Regulatory Util. Comm'rs v. ICC*, 41 F.3d 721, 726 (D.C. Cir. 1994).  The APA requires that agencies "articulate a satisfactory explanation for [their] action including a rational connection between the facts found and the choice made;" in the absence of such an explanation, agency action will be deemed arbitrary and capricious.  *Motor Vehicle Mfrs. of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal citations omitted).

## V.  ARGUMENT[1]

### A.  The Challenged Regulations Are Contrary To The NDAA, Contrary To Law, And Arbitrary And Capricious.

As will be discussed below, in every instance, the regulations challenged in this proceeding fail the tests of *Chevron* and the APA.  They violate the unambiguous language of the NDAA, and by extension chapter 71, and are contrary to law.  Moreover, any of the justifications articulated or conceivably offered for the adoption of this array of regulations fails to past muster under the "arbitrary and capricious" standard.  Finally, the Agencies clearly failed in their statutory obligation to consult with the Unions in developing the labor relations system.  For all of these reasons, the challenged regulations should be invalidated, and their implementation enjoined.

### B.  The Regulation's Labor Relations System Is Contrary To Law

#### 1.  The Law Congress Enacted Allows Only Two Departures From 5 U.S.C. Chapter 71 And Expressly Prohibits Any Other Waiver Or Modification Of Chapter 71

In enacting 5 U.S.C. § 9902, Congress granted the Secretary of Defense and the Office of Personnel Management authority to establish a labor relations system departing in two respects from chapter 71 of title 5.  First, Congress granted the Secretary "authority to bargain at a level

---

[1] As a preliminary matter, Plaintiffs anticipate that the Agencies will argue the Unions lack standing to bring this action now.  This court has extensively analyzed the standing issue in a substantially identical case:  *Nat'l Treasury Employees Union v. Chertoff*, 385 F. Supp. 2d 1 (D.D.C. 2005) ("*Chertoff I*").  In that case, a group of unions challenged regulations (regulations quite similar to those at issue in this case) promulgated by the Department of Homeland Security.  As in this case, the *Chertoff* plaintiffs sought to enjoin the regulations before they were implemented.  The Court specifically found the Plaintiffs had standing to sue, holding the harm Plaintiffs would suffer when the regulations were implemented was sufficiently concrete, particularized and imminent to find standing under Article III—"plaintiffs clearly have standing . . . without waiting for the other shoe to drop."  385 F. Supp. 2d. at 20.  For all of the reasons set forth in the *Chertoff* court's carefully reasoned decision, the Court may readily find that the Plaintiffs herein have standing to bring this action.

above the level of exclusi[ve] recognition," commonly called national level bargaining.  5 U.S.C. § 9902(m)(5).  Second, Congress required that the Department's labor relations system "provide for independent third party review of decisions, including defining what decisions are reviewable by the third party, what third party would conduct the review, and the standard or standards for that review."  § 9902(m)(6).

In enacting these two departures from chapter 71, Congress rejected the Secretary's request for authority to waive all provisions of the chapter.  § 9902(b)(3)(D) (Secretary may "not waive, modify, or otherwise affect . . . any . . . provision . . . described in subsection (d)"); § 9902(d)(2) (listing chapter 71 among provisions deemed "nonwaivable" except "to the extent . . . otherwise specified in" title 5).  §§ 9902(b)(3)(D) and (d).  In enacting §§ 9902(m)(5) and (6), Congress specified two departures from chapter 71 "[n]otwithstanding [the listing of chapter 71 among "nonwaivable provisions" in] section 9902(d)(2)."  § 9902(m)(1).

In addition to providing that the Secretary may "not waive, modify, or otherwise affect" chapter 71 except "to the extent . . . otherwise specified in" title 5, Congress expressly required that the Department's personnel system "*ensure* that employees may . . . bargain collectively . . . subject to any . . . limitation on negotiability established pursuant to *law*."  § 9902(b)(4) (emphasis added).

These provisions of the law stemmed from the Conference Committee's rejection of a provision of the original House bill, H.R. 1836, that would have authorized the Secretary to waive chapter 71 in its entirety.  The Committee adopted instead a provision in S. 1166 that listed chapter 71 among provisions that could not be waived.  S. 1166 at 4.  Although S. 1166 was not passed by the Senate, it was "approved by [the Senate Committee on Governmental Affairs] by a 10 to 1 vote" and the "provisions of S. 1166 were considered by the conferees."

11

149 Cong. Rec. S14490 (Nov. 12, 2003) (statement of Senator Lieberman, Conference Committee Member and Ranking Member of the Senate Committee on Governmental Affairs).

The Conference Committee's rejection of the House bill's waiver provision and its adoption instead of S. 1166's prohibition against waiver of chapter 71 followed a June 4, 2003, hearing held by the Senate Committee on Governmental Affairs.  At this hearing Senators expressly discussed the issue and rejected the Defense Department's position.  At the hearing Secretary Rumsfeld testified:

> [T]he National Security Personnel System we are proposing . . . will not end collective bargaining. . . .  To the contrary, the right of defense employees to bargain collectively would be continued.  What it would do is bring collective bargaining to the national level so that the Department could negotiate with national unions instead of dealing with more than 1,300 different union locals, a process that is inefficient.

*Transforming the Department of Defense Personnel System: Finding the Right Approach*: Hearing Before the United States Senate Committee on Government Affairs, 108th Cong. 21 (2003) (statement of Donald Rumsfeld, Secretary of Defense).  Senator Levin, however, noted that the legislation sought by the Department and passed by the House went "way beyond" bargaining at the national level.  *Id.* at 27 (statement of Senator Carl Levin, Member, Senate Comm. On Government Affairs).  He expressed concern that the bill desired by the Department would allow the Secretary to eliminate "bargaining rights in general" because it would authorize the Secretary to waive all of chapter 71.  *Id.*  Under Secretary Chu then testified that the reason why the Department wanted authority to waive all of chapter 71 was "to get the bargaining [process] to come to a conclusion."  *Id.* (statement of David Chu, Undersecretary of Defense). Senator Collins, chair of the committee, rejected Under Secretary Chu's reasoning, explaining, "I think there are other ways to ensure that bargaining comes to a conclusion than having the authority to waive the entire chapter governing collective bargaining."  *Id.* at 28 (statement of

Senator Susan Collins, Chair, Senate Comm. on Governmental Affairs).  Senator Voinovich

concurred, saying "Our bill [S. 1166] would provide that you would remain in chapter 71, as

explained by our Chairman."  *Id*. at 29 (statement of Senator George Voinovich, Member, Senate

Comm. on Governmental Affairs).

On November 11, 2003, Senator Collins noted the Conference Committee's rejection of

the House bill's grant of authority to waive chapter 71:

> Another very important provision in this bill has to do with the collective
> bargaining rights of the Department's employees. The Department of Defense has
> repeatedly claimed it has no desire to waive the collective bargaining rights of its
> employees. Indeed, the bill before the Senate specifically states the Department
> does not have the authority to waive the chapter of title 5 that governs labor-
> management relations. Thus, I fully expect the labor relations system developed
> by the Department will abide by the principles enumerated in chapter 71, such as
> the duty to bargain in good faith—a duty that applies to both labor and
> management, incidentally—and the prohibition against unfair labor practices.

149 CONG. REC. S14428 (Nov. 11, 2003) (statement of Senator Susan Collins, Conference

Committee Member, Chair, Senate Comm. on Governmental Affairs).

Senator Levin echoed Senator Collins's statement and described the Conference

Committee bill in greater detail:

> Senator **COLLINS** and I worked together closely to fashion a bipartisan bill in
> the Governmental Affairs Committee that would provide the Department of
> Defense the new personnel flexibility that it needs, while preserving important
> protections for individual employees. Our bill was approved by the
> Governmental Affairs Committee in early June and became the basis for our
> negotiations in conference with the House.
>
> The bipartisan approach that Senator **COLLINS** and I took on this issue met
> with opposition from the administration at every turn. At times, it appeared that
> some of our opponents were less interested in enacting sound human capital
> provisions than they were in providing as much power as possible to the
> Secretary of Defense.
>
> Nonetheless, we were able to build some important protections into the
> legislation that is included in this conference report.  . . . [T]he collective
> bargaining provisions that Senator **COLLINS** and I were able to negotiate on

this bill are substantially better from our perspective than comparable provisions included in the House bill and the Homeland Security Act.

The Homeland Security Act authorize[s] the Secretary of Homeland Security to waive any and all of the provisions of Chapter 71 of Title 5, which governs labor-management relations for Federal employees. This waiver authority gives the Secretary of Homeland Security complete authority to establish any new labor relations system he may choose, with virtually no statutory limitation. The House bill would have provided the same authority to the Secretary of Defense.

This conference report does not include any authority to waive the requirements of Chapter 71. On the contrary, as the Chairman of the House Government Reform Committee pointed out on the House floor last week, this bill specifically lists the provisions of Chapter 71 as being non-waivable. The bill before us states, and I quote, "Any system established [under this provision] shall . . . not waive, modify, or otherwise affect" Chapter 71. This means that the Department of Defense, unlike the Department of Homeland Security, remains subject to the collective bargaining requirements of Chapter 71.

The conference report also states that, notwithstanding the provision preserving the full force and effect of Chapter 71, the Secretary "may establish and from time to time adjust a labor relations system for the Department of Defense to address the unique role that the Department's civilian workforce plays in supporting the Department's national security mission."

These two provisions must be read together and both must be given meaning. The first provision states that Chapter 71 may not be waived or modified. The second provision states that the Secretary may establish a unique labor relations system. For both provisions to have meaning, the unique labor relations system established by the Secretary must be consistent with the requirements of Chapter 71. For example: . . . Section 7114 . . . requires an agency to bargain in good faith with . . . a labor organization [that has been accorded exclusive recognition]. The unique labor relations system established by the Secretary must preserve this right.

Section 7116 provides that it shall be an unfair labor practice for an agency to interfere with, restrain or coerce employees or to refuse to consult or negotiate in good faith with a labor organization. Nothing in the conference report gives the Secretary of Defense any authority to waive or modify this requirement.

Section 7118 authorizes the General Counsel of the FLRA to investigate allegations that any person has engaged in unfair labor practice. Nothing in the conference report gives the Secretary of Defense any authority to waive or modify this requirement applicable to an independent federal agency.

14

> Unfortunately, the conference report does provide for exceptions to the applicability of Chapter 71. In this regard, the conference report specifically provides that the labor relations system established by the Secretary "shall provide for independent third party review of decisions, including defining what decisions are reviewable by the third party, what third party would conduct the review, and the standard or standards for that review." It also states that national level collective bargaining shall "be subject to review by an independent third party only to the extent provided" under this process. This language appears to preclude the appeal of such issues to the Federal Service Impasses Panel under section 7119 of Title 5.
>
> While I was disappointed by the decision to include language limiting the review of collective bargaining decisions, the preservation of other rights under Chapter 71 makes this provision far preferable to the personnel provisions in the House bill or the Homeland Security Act.

149 CONG. REC. S14439 (Nov. 11, 2003) (statement of Senator Carl Levin, Member, Conference Committee and Ranking Member of the Senate Armed Services Committee).

Speaking on the Senate floor on November 12, 2003, Senator Lieberman, a member of the Conference Committee, also noted that the bill drafted by the Conference Committee "included the provision of S. 1166 stating that the Secretary of Defense has no authority to waive chapter 71." He said the bill "overrides chapter 71 only where" the bill "and chapter 71 are directly inconsistent with each other" and "that the Secretary of Defense has no authority" to depart from chapter 71 in any other area:

> [I]n the area of collective bargaining, the conference agreement included the provision of S. 1166 stating that the Secretary of Defense has no authority to waive chapter 71 of civil service law, which governs labor-management relations. . . . However, the conferees also agreed to a new provision authorizing the Secretary . . . to establish a "labor relations system" for . . . the Department's civilian workforce. As the conference report makes chapter 71 non-waivable, this new provision overrides chapter 71 only where the new provision and chapter 71 are directly inconsistent with each other.

149 CONG. REC. S14490 (Nov. 12, 2003) (statement of Senator Joseph Lieberman, Member, Conference Committee and Ranking Member of the Senate Committee on Government Affairs).

Senator Lieberman explained:

The new provision . . . does not conflict with the statutory rights duties, and protections of employees, agencies, and labor organizations set forth in chapter 71, including . . . the duty to bargain in good faith . . . and others and such rights, duties, and protections will remain fully applicable at the department.   The conference agreement provides . . . "for independent third party review of decisions." . . .   The Secretary may use this provision to expedite the review of decisions, but not to alter the statutory rights, duties, and protections established in chapter 71 or to compromise the right of parties to obtain fair and impartial review.

*Id.*

## 2.  Contrary To The Law Congress Passed, The DoD Regulation Asserts Authority To Waive Every Provision Of Chapter 71

Despite 5 U.S.C. §§ 9902(b)(3)(D), (b)(4) and (d), and the legislative history quoted above, the Department of Defense regulation asserts authority to waive chapter 71 in its entirety. Section 9901.104 of the regulation states:  "The provisions in the following chapters of title 5, U.S. Code, and any related regulations, may be waived or modified in exercising the authority in 5 U.S.C. 9902: . . . (f) Chapter 71, dealing with labor relations (as authorized by 5 U.S.C. 9902(m))."

As the basis for its assertion that the prohibition against waiver of chapter 71 contained in § 9902(b)(3)(D) and (d) is inapplicable to the labor system authorized by § 9902(m), the regulation erroneously states, in § 9901.103 (definition of "National Security Personnel System (NSPS)"), that "the human resources management system established under 5 U.S.C. § 9902(a) . . . does not include the labor relations system established under 5 U.S.C. § 9902(m)."  This erroneous statement is contrary to § 9902(b)(4) of the statute, which says that the "system *established under subsection (a)* shall . . . ensure that employees may organize, bargain collectively . . . and participate through labor organizations of their own choosing, subject to the provisions of this chapter and any exclusion from coverage or limitation on negotiability established pursuant to law."  (Emphasis added.)  Because § 9902(b)(4) requires that the human

resources management "system established under subsection (a)" include provisions addressing labor relations, the human resources management system includes the subsection (m) labor relations system.

Three other points support this conclusion.  First, the title of § 9902, "[e]stablishment of human resources management system," indicates that the subsection (m) labor system is a subpart of the "human resources management system established under authority of this section." § 9902(a).  Second, the legislative history quoted above expressly states that the prohibition against waiver of chapter 71 applies to the subsection (m) labor relations system.

Third, acceptance of Defendants' view would render the prohibition against waiver of chapter 71 meaningless, in violation of rules of statutory construction.  *See Whitman v. Am. Trucking Ass'ns,* 531 U.S. 457, 477-85 (2001) (agency statutory interpretation unreasonable because it completely nullified another applicable provision of the Act; two provisions must be read together); *AFL-CIO v. Chao,* 409 F.3d 377, 384 (D.C. Cir. 2005) ("even when Congress has stated that the agency may do what is 'necessary' whatever ambiguity may exist cannot render nugatory restrictions that Congress imposed"); *Ass'n of Civilian Techs., Mont. Air Chapter No. 29 v. FLRA,* 22 F.3d 1150, 1152 (D.C. Cir. 1994) ("*ACT Chapter 29*") (FLRA interpretation of 5 U.S.C. § 7106 invalid because FLRA ignored relationship between subsections (a) and (b) and "would render parts—if not all—of subsection (b)(1) nugatory").  DoD's regulation asserts that the prohibition against waiver of chapter 71—a chapter that concerns only labor relations— applies only to a personnel system that does not address labor relations.  This is absurd.  By asserting that the waiver prohibition applies only where it is irrelevant, the regulation gives the prohibition no operative effect whatsoever.

17

The Court must reject Defendants' interpretation.  Under the holdings in *Whitman*, *AFL-CIO*, and *ACT Chapter 29*, the Court must read § 9902(m) together with §§ 9902(b)(3)(D) and (d), in a manner that does not render any of the provisions  nugatory.  This is easily done.  As the legislative history and § 9902(b)(4) clearly indicate, the § 9902(m) labor relations system is a part of the § 9902(a) human resources management system.   The labor relations system, therefore, may not waive or modify chapter 71 except to the extent "otherwise specified in" title 5.  §§ 9902(b)(3)(D) and (d).  Section 9902(m) specifies only two departures from chapter 71— national level bargaining, § 9902(m)(5), and independent third party review, § 9902(m)(6).  Any other waiver or modification of chapter 71 is prohibited.  This interpretation of the statute gives operative effect to all of its provisions, implements the plain language of § 9902(b)(4), and tracks the contemporaneously expressed statements of the conference committee members who wrote the law.

### 3.  Contrary To Law, The DoD Regulation
### *Totally Eliminates The Statutory Right To Collective Bargaining*

In the statute, Congress specifically provided that any personnel system established for DoD "ensure that employees may organize, bargain collectively as provided for in this chapter, and participate through labor organizations of their own choosing in decisions which affect them, subject to the provisions of this chapter and any exclusion from coverage or limitation on negotiability established pursuant to law."   5 U.S.C. § 9902(b)(4).   Despite Congress's prohibition of any departure from chapter 71 other than to implement national level bargaining and new independent third party review, and despite the express requirement of § 9902(b)(4) that DoD's new personnel system "ensure" employees' right to collective bargaining, the DoD regulation totally eliminates the statutory right to collective bargaining.  It allows the Secretary to ban bargaining merely by writing a document, called an "issuance."

Section 9901.103 of the regulation defines "implementing issuance(s)" to mean "documents issued by the Secretary, Deputy Secretary, Principal Staff Assistants (as authorized by the Secretary), or Secretaries of the Military Departments to carry out a policy or procedure implementing this part." Section 9901.903 of the regulation defines an "issuance" to mean a document, other than an implementing issuance, that is issued by one of these same persons "to carry out a policy or procedure of the Department." Section 9901.905(a) states: "Any provision of a collective bargaining agreement that is inconsistent with this part and/or implementing issuances is unenforceable." Section 9901.917(d)(1) states: "Management may not bargain over any matters that are inconsistent with . . . regulations in this part, . . . issuances and implementing issuances." Under chapter 71, however, an agency rule or regulation does not limit bargaining unless the Federal Labor Relations Authority determines that a "compelling need" exists for that rule or regulation; and even this restriction is inapplicable to a union that represents a majority of the employees to whom the rule or regulation applies. 5 U.S.C. §§ 7117(a)(2) and (3).

By making bargaining subject to restriction by Secretarial "issuance," the regulation totally eliminates the statutory right to bargaining, leaving only bargaining at the sufferance of the Secretary. This is contrary to law, for two reasons. First, it violates 5 U.S.C. §§ 9902(b)(3)(D) and (d), which state that DoD's regulation may not "waive, modify, or otherwise affect" chapter 71 in ways "not otherwise specified in" title 5. Nothing in § 9902(m) specifies any modification of the chapter 71 limits on DoD's authority to preclude bargaining by rule or regulation. DoD is bound by the limits set by §§ 7117(a)(2) and (3). Because the regulation exceeds those limits, it is contrary to law.

Second, the regulation's total elimination of the statutory right to collective bargaining violates 5 U.S.C. § 9902(b)(4). It violates that section's requirement that "[a]ny system

established under subsection (a) [of § 9902] shall . . . *ensure* that employees may . . . bargain collectively." (Emphasis added.) A system that provides no guarantee that *any* subject may be bargained is not a system that ensures that employees may bargain. *See Nat'l Treasury Employees Union v. Chertoff*, 385 F. Supp. 2d 1, 25 (D.D.C. 2005) ("*Chertoff I*").[2]

### 4. The Regulation Unlawfully Expands Management Rights And Nearly Eliminates Negotiation Of Procedures And Appropriate Arrangements

Chapter 71 lists specific management rights that are nonnegotiable but states that exercise of most of these rights must be "in accordance with applicable laws." 5 U.S.C. § 7106(a)(2). As to all management rights, chapter 71 states that unions may negotiate "procedures which management officials . . . will observe in exercising" these rights, as well as "appropriate arrangements for employees adversely affected by the exercise" of these rights. §§ 7106 (b)(2) and (b)(3). Under chapter 71, collective bargaining normally must be completed before management acts to change working conditions. *See Dep't of Health and Human Servs., SSA*, 33 F.L.R.A. 454, 458 (1988); *Dep't of Justice, Immigration and Naturalization Serv. and AFGE, Nat'l Border Patrol Council*, 31 F.L.R.A. 145 (1988). Departing from these chapter 71 provisions, defendant's regulation:

---

[2] In *Chertoff I*, the court invalidated regulatory provisions that allowed the Department of Homeland Security to remove subjects from collective bargaining by agency directive. 385 F. Supp. 2d at 25. The court based its holding on a statutory provision identical to 5 U.S.C. § 9902(b)(4). 385 F. Supp. 2d at 8-9, 23. The court said the regulatory provisions violated the Department's obligation to "ensure" employees' right to collective bargaining. *Id*. at 25. The court so held though the statute in that case, unlike the statute here, expressly allowed the Department of Homeland Security to waive chapter 71 in its entirety. *Id*. at 9, 22. Here, Plaintiffs stand on stronger ground than the plaintiffs in *Chertoff I*. The statute here not only obligates DoD to "ensure" employees' right to collective bargaining, in terms identical to those on which the court based its holding in *Chertoff I*, but also prohibits any waiver or modification of chapter 71 except as otherwise specified by law, and specifies only two departures from chapter 71, neither of which alters the scope of bargaining prescribed by chapter 71.

(a)     expands management rights to include an unlimited right "to take whatever other actions may be necessary to carry out the Department's mission," § 9901.910(a)(2);

(b)     eliminates the requirement that management rights be exercised in accordance with applicable laws, *id*.;

(c)     allows management in all instances to act immediately, before negotiations begin, regardless of need for expedition, § 9901.910(i);

(d)     expressly bans negotiation of procedures except those for hiring, layoff, or discipline, unless the Secretary determines otherwise, §§ 9901.910(b) and (c);

(e)     bans, unless the Secretary determines otherwise, even negotiation of procedures for hiring, layoff, or discipline if the management action "*may* be necessary to carry out the Department's mission" (thereby implicitly banning, unless the Secretary determines otherwise, all negotiation of procedures—there being no instance in which hiring, layoff, or discipline could not successfully be claimed to be at least *possibly* necessary), §§ 9901.910(g) and (a)(2) (emphasis added);

(f)     bans negotiation of appropriate arrangements for those adversely affected by "routine assignment to specific duties, shifts, or work on a regular or overtime basis," § 9901.910(f)(2), unless the Secretary says otherwise; and

(g)     eliminates any right to have an appropriate arrangement negotiated during the term of a contract apply to anyone, ever, by granting the Department "sole, exclusive, and unreviewable discretion" to determine whether a negotiated arrangement will be "binding on subsequent acts, or retroactively applied," § 9901.910(h).

The combined effect of these regulatory provisions totally eliminates any right to negotiate § 7106(b)(2) procedures or to negotiate, mid-term, enforceable (b)(3) arrangements—

even where negotiation of these matters has not already been eliminated by "issuance."  As a practical matter, these provisions of the regulation will eliminate most of the subjects over which Plaintiffs have historically bargained.  *See* Statement of Material Facts ¶¶ 11-20.  The regulation's expansion of management rights beyond those provided by chapter 71, and its restriction of the negotiation of procedures and appropriate arrangements allowed by chapter 71, are contrary to law.  They violate §§ 9902(b)(3)(D) and (d), which state that DoD may not "waive, modify, or otherwise affect" chapter 71 in ways "not otherwise specified in" title 5. Nothing in § 9902(m) specifies any alteration of the subjects that DoD employees may negotiate under chapter 71.  In particular, nothing specifies any expansion of § 7106(a) management rights, and nothing specifies any restriction of the § 7106(b)(2) and (3) rights to negotiate procedures and appropriate arrangements.  The regulation's expansion of management rights and its restriction of § 7106(b)(2) and (3) rights therefore are contrary to law.

### 5.  *Contrary To Law, The Board Established By The Regulation Is Not An Independent Third Party*

Under 5 U.S.C. § 9902(m)(6) the Department's labor relations system must provide for "independent third party review of decisions."  Sections 9901.907 and .908 of the regulation vest authority to review and resolve negotiability disputes, unfair labor practice complaints, exceptions to arbitration awards, information request disputes, and negotiation impasses in a DoD board whose members are selected by the Secretary.  Because the board is part of DoD, it is not a third party.  Because the Secretary determines the board's membership, it is not independent.

The meaning of "independent third party review" must be determined by reference to similar provisions in other collective bargaining laws that Congress has passed.  *See Chertoff I*, 385 F. Supp. 2d at 24 n.16 (citing, *inter alia*, *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83,

100 (1991) ("The general rule is perfectly well settled that, where a statute is of doubtful meaning . . . the court may look into prior and contemporaneous acts . . . to determine its proper construction")). "[W]hen Congress passed the Labor-Management Relations Act in 1947," it determined that "a collective bargaining system has more credibility when truly neutral outsiders adjudicate disputes." *Chertoff I*, 385 F. Supp. 2d at 20 n.13, 29 (discussing legislative history of the 1947 Act). All adjudicators under chapter 71 are "truly neutral outsiders" as well. *See* 5 U.S.C. §§ 7104, 7105, and 7122 (Federal Labor Relations Authority); § 7119 (Federal Service Impasses Panel); § 7121 (arbitrators); § 7123 (courts). An agency board, appointed by the head of the agency, and empowered by agency regulation to adjudicate agency labor disputes, is incompatible with the concept of "independent third party review" reflected in other collective bargaining laws that Congress has enacted. In requiring an "independent third party," Congress required the kind of "truly neutral outsiders" that are provided by other collective bargaining laws. The DoD regulation's creation of an in-house board appointed by the Secretary violates this requirement.

### 6. *The Regulation Unlawfully Expands The Definition Of "Supervisor"*

Under chapter 71, an employee may not be excluded from a bargaining unit on the ground that the employee is a "supervisor" unless the employee supervises other employees. 5 U.S.C. § 7103(a)(10). Departing from this provision, the regulation asserts that an employee may be deemed to be a supervisor if the employee "exercises supervisory authority over military members of the armed forces." § 9901.903 (definition of "Supervisor"). This departure from chapter 71 is contrary to law. It violates §§ 9902(b)(3)(D) and (d), which state that DoD may not "waive, modify, or otherwise affect" chapter 71 in ways "not otherwise specified in" title 5. Nothing in § 9902(m) specifies any alteration of the chapter 71 definition of "supervisor."

### 7. *The Regulation Unlawfully Limits Grievances Alleging Violations Of Laws And Rules*

Under chapter 71, grievances subject to resolution by a negotiated grievance procedure are defined to include "any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment." 5 U.S.C. § 7103(a)(9)(C)(ii).  Departing from this standard, § 9901.903 of the regulation eliminates grievances claiming a violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment" unless the grievant can prove that the law, rule, or regulation in question was "*issued for the purpose of* affecting conditions of employment."  (Emphasis added.)  This departure from chapter 71 is contrary to law, because it violates §§ 9902(b)(3)(D) and (d). Nothing in § 9902(m) specifies any alteration of the chapter 71 definition of "grievance."

### 8. *The Regulation Unlawfully Restricts Unions' Rights To Attend Formal Meetings*

Under chapter 71, unions must be afforded the opportunity to attend "any formal discussion between one or more representatives of the agency and one or more employees in the unit or their representatives concerning any grievance or any personnel policy or practices or other general conditions of employment."  5 U.S.C. § 7114(a)(2)(A).  Departing from this requirement, § 9901.914(a)(2) of the regulation limits a union's right to attend formal discussions to those with "management official(s)," rather than other agency representatives, such as supervisors.  The regulation also eliminates a union's chapter 71 right to attend formal discussions concerning grievances, unless those grievances have been "filed."

Departing again from chapter 71, § 9901.914(a)(2) of the regulation excludes unions from discussions held "for the purpose of discussing operational matters where any discussion of personnel policies, practices or working conditions "[c]onstitutes a reiteration or application of

existing personnel policies, practices or working conditions"; is "incidental or otherwise peripheral to the announced purpose of the meeting"; or "[d]oes not result in an announcement of a change to, or a promise to change, an existing personnel policy(s), practice(s), or working condition(s)." Section 9901.914(a)(2) also eliminates the right of the union to be represented at formal meetings that occur in connection with discrimination complaints.

All of these departures from chapter 71 violate §§ 9902(b)(3)(D) and (d), and are therefore contrary to law. Nothing in § 9902(m) specifies any alteration of a union's § 7114(a)(2)(A) right to attend formal meetings.

### 9. *The Regulation Unlawfully Restricts Unions' Right To Information*

Under § 7114(b)(4) of chapter 71, unions have a right to obtain "upon request and, to the extent not prohibited by law, data (A) which is normally maintained by the agency in the regular course of business; (B) which is reasonably available and necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining; and (C) which does not constitute guidance . . . for management . . . relating to collective bargaining." Departing from this requirement, the regulation authorizes the Department to ban all disclosure of information to unions simply by issuing a policy, regulation, or other "issuance" doing so. § 9901.914(c)(1).

The regulation also bars disclosure of data "if adequate alternative means exist for obtaining the requested information, or if proper discussion, understanding, or negotiation . . . is *possible* without . . . the information." § 9901.914(c)(2) (emphasis added). It also states that any "authorized official" may block any disclosure of information if the official "has determined"— unreasonably or otherwise—that the disclosure "would compromise the Department's mission, security, or employee safety." § 9901.914(c)(4).

All of these departures from chapter 71 are contrary to law because they violate §§ 9902(b)(3)(D) and (d).  Nothing in § 9902(m) specifies any alteration of a union's § 7114(b)(4) right to information.

### 10.  The Regulation Unlawfully Restricts Speech And Expressive Conduct Of Union Representatives

Under chapter 71, an employee has the right "to act for a labor organization in the capacity of a representative and the right, in that capacity, to present the views of the labor organization to heads of agencies and other officials of the executive branch of the Government, the Congress, or other appropriate authorities."  5 U.S.C. § 7102(1).  This right is expressly delineated in the statute as a subset of the bedrock right of employees to organize: "each employee shall have the right to form, join, or assist any labor organization, or to refrain from any such activity, *freely and without fear of penalty or reprisal,* and each employee shall be protected in the exercise of such right."  5 U.S.C. § 7102 (emphasis added).  The Supreme Court has held that "[v]igorous exercise of this right must not be stifled by the threat of liability for the overenthusiastic use of rhetoric or the innocent mistake of fact . . . federal policies favoring uninhibited, robust and wide-open debates in labor disputes are applicable [to federal sector employees]."  *Old Dominion Branch No. 496 v. Austin*, 418 U.S. 264, 273, 277 (1974).

Accordingly, the Federal Labor Relations Authority ("FLRA"), the quasi-judicial body that adjudicates disputes under chapter 71, has consistently held that, under section 7102, a union representative who is also an employee of an Agency has the right to use "intemperate, abusive, or insulting language without fear of restraint or penalty" if he or she believes such rhetoric to be an effective means to make the union's point, even where such language, in other contexts, would result in discipline. *Dep't of the Air Force, Grissom Air Force Base, Ind.,* 51 F.L.R.A. 7, 11 (1995).  Thus, for example, in *Grissom Air Force Base*, a union representative's remarks to a

management representative that she was "f***ing stupid," made several times, was not deemed to be a flagrant misconduct.  *See also Dep't of the Navy, Puget Sound Naval Shipyard, Bremerton, Wash.*, 2 F.L.R.A. 54 (1979), (union chief steward shook fist in the face of foreman and said "I am going to get your a**"); *Dep't of Treasury, IRS, Memphis Serv. Ctr.*, 16 F.L.R.A. 687 (1984) (steward called supervisor a "fool" while representing an employee the supervisor had placed on AWOL); *Air Force Flight Test Ctr., Edwards Air Force Base, Cal.*, 53 F.L.R.A. 1455, 1456 (1998) (union representative leaning over a supervisor's desk and pointing finger at supervisor while engaged in protected activity was not the type of unprovoked physical response in a labor-management dispute which the Authority has found "beyond the limits of acceptable behavior").

Contrary to this bedrock principle preserving the right of employee representatives vigorously to represent employees in the bargaining unit, § 9901.914(a)(4) of Defendants' regulations states that "[e]mployee representatives employed by the Department are subject to the same expectations regarding conduct as any other employee, whether they are serving in their representative capacity or not."  This restriction violates section 7102 on its face, and accordingly constitutes an unlawful "waiver" of chapter 71.  At the core of an employee's right to "form, join or assist" any labor organization is the ability to do so *without fear of penalty or reprisal.*  5 U.S.C. § 7102.  *See also* National Labor Relations Act,. 29 U.S.C. §§ 157-158(a).  A union representative charged with representing the interests of bargaining unit employees in meetings and in communications with management has a right and a duty vigorously to promote those interests in an atmosphere which by its very nature can become highly charged.  Stripped of the right to "take the gloves off" when necessary, union representatives would clearly be

hindered in their ability to represent employees and to "assist" their labor organization because of the very "fear of penalty or reprisal" that § 7102 forbids.

Section 9901.914(a)(4) also violates the requirement of the NDAA that the labor relations system "ensure that employees may organize, bargain collectively as provided for in this chapter, and participate through labor organizations of their own choosing in decisions which affect them. . . ."  5 U.S.C. § 9902(b)(4).  Clearly, putting a rhetorical muzzle on union representatives at the bargaining table and in other representative roles will—contrary to the statute—disable those representatives in efforts vigorously to promote and present the positions and interests of DoD employees.  A system of "collective bargaining" which places one side at an immediate disadvantage in pressing its position is not collective bargaining at all.  *Cf. Chertoff I,* 385 F. Supp. 2d at 28.

Obviously mindful that § 9901.914(a)(4) is vulnerable to this challenge, Defendants have attempted to argue that the regulation does not say what it clearly says.  In the "Response to Specific Comments and Detailed Explanation of Regulations" section of the final rule, Defendants baldly assert that "the only conduct the revised standard is intended to stop is the rare, but utterly unacceptable use of vulgar or sexually explicit language, as well as physical intimidation by union officials."  70 Fed. Reg. at 66182.  Clearly, this "explanation" does nothing to cure the problem with the regulation.

First, it is black letter law that the interpretation or enforcement of a regulation starts (and often ends) with the plain meaning of the regulation.  "In reviewing the validity of agency interpretations, a court should be guided by an administrative construction of a regulation *only if the meaning of the words used is in doubt.*  Deference to agency interpretations is not in order if the rule's meaning is clear on its face." *Nat'l Family Planning & Reprod. Health Ass'n v.*

*Sullivan*, 979 F.2d 227, 235 (D.C. Cir. 1992) (internal citations omitted).  The language of the regulation at issue is clear on its face.  Defendants' attempt, outside the text of the regulation, to give the regulation a narrowing construction is not acceptable, because the narrowing construction they offer has no basis in the text of the provision.  The regulation on its face is contrary to chapter 71.  It is therefore contrary to law.

Second, even if Defendants' proposed narrowing construction had a basis in the text of the regulation (though it does not), the narrowing construction itself is contrary to chapter 71 and therefore invalid.  As the cases reviewed above show, mere "use of vulgar or sexually explicit language" is not a permissible basis for discipline of a union official.  Nor is all conduct that might be deemed to be "physical intimidation."  *Air Force Flight Test Ctr.*, 53 F.L.R.A. at 1456 (leaning over desk and pointing finger not a basis for discipline).  *Dep't of the Navy*, 2 F.L.R.A. 54 (shaking fist in face not a basis for discipline).

The text of the regulation is contrary to chapter 71 and Defendants' proposed narrowing construction is both impermissible and also contrary to chapter 71.  The regulation therefore is contrary to law.  It violates §§ 9902(b)(3)(D) and (d).  Nothing in § 9902(m) specifies any alteration of the permissible speech and expressive conduct of union officials.

### 11.  *__The Regulation Unlawfully Limits Unfair Labor Practice Charges__*

Under chapter 71, it is an unfair labor practice for an agency "to enforce any rule or regulation (other than a rule or regulation implementing section 2302 of this title) which is in conflict with any applicable collective bargaining agreement if the agreement was in effect before the date the rule or regulation was prescribed."  5 U.S.C. § 7116(a)(7).  Departing from chapter 71, the regulation eliminates this provision, with respect to "implementing issuances."  *See* § 9901.916(a)(7).

29

This departure from chapter 71 is contrary to law.  It violates §§ 9902(b)(3)(D) and (d).

Nothing in § 9902(m) specifies any alteration of the unfair labor practices proscribed by § 7116.[3]

### 12. The Final Regulations Unlawfully Violate The Enabling Statute By Improperly Eliminating All Bargaining Over Pay For Employees Of Non-Appropriated Fund Instrumentalities

As has been discussed above, the Defendants ignored Congress's direction to ensure the statutory right to collective bargaining by, *inter alia*, substantially limiting the ability of unions to negotiate over matters such as negotiated procedures and arrangements.  The Defendants have also banned all negotiation over compensation, in a regulation aptly entitled "Bar on Collective Bargaining."  5 C.F.R. § 9901.305.[4]  This regulation provides:

> Pursuant to 5 U.S.C. 9902(f)(4) and (m)(7), any pay program established under authority of this subpart is not subject to collective bargaining.  This bar on collective bargaining applies to all aspects of the pay program, including but not limited to coverage decisions, the design of pay structures, the settling and adjustment of pay levels, pay administration rules and policies, and administrative procedures and arrangements.

*Id.*[5]  To underscore the point, Defendants have also defined the phrase "condition of employment" in the labor-management section of the final regulations (Subpart I) to exclude,

---

[3] This unauthorized departure from chapter 71, moreover, contradicts DoD's explicit representation during the Senate committee hearing that it did not intend to change the law concerning unfair labor practices.  Senator Levin asked Under Secretary Chu, "[D]o you intend to modify the provisions of chapter 71 of title 5 relative to unfair labor practices?"  Under Secretary Chu replied, "We don't have such an intent, sir."  *Transforming the Department of Defense Personnel System: Finding the Right Approach*: Hearing Before the United States Senate Committee on Government Affairs, 108th Cong. 27 (2003).

[4] This section was not included in the proposed regulations issued in February 2005, and therefore was not properly promulgated for notice and comment rulemaking under the Administrative Procedure Act.  *See* 5 U.S.C. §§ 553(b)-(d).  Furthermore, there was no "collaboration" of any kind over this proposal in direct violation of 5 U.S.C. § 9902(f).

[5] The two statutory references in Section 9901.305 of the final regulations are to the provisions of the enabling statute.  The first reference provides that the procedures relating to collaboration with employee representatives are the "exclusive procedures" for developing,

"[t]he pay of any employee or for any position, including any determinations regarding pay or adjustments thereto."  5 C.F.R. § 9901.903.  These provisions eliminate any and all bargaining over compensation or aspects relating to compensation.

In the final regulation, Defendants assert that 5 C.F.R. § 9901.305 was intended to avoid "expanding the scope of bargaining under NSPS to those matters not subject to bargaining today because they are governed by law or Government-wide regulations."  70 Fed. Reg. at 66138. The regulations do more than that, however.  While the compensation of the majority of DOD employees is established either in the General Schedules, as provided in chapter 51, or by Wage Grades, as in chapter 53, there remain a significant number of DoD employees whose wages are not specifically provided by statute.

These employees include those who work for so-called "Non-Appropriated Fund Instrumentalities" ("NAFIs"), which provide a wide range of services including childcare facilities, food service facilities, post exchanges and other activities.  NAFIs get their name because they generate revenue from these services, which is used to provide compensation for the employees, instead of receiving funds from Congress.  *See generally Naval Resale Activity Naval Station*, 49 F.L.R.A. 994, 995 (1994) (describing NAFI as entity whose objective is to be "self-supporting" by generating revenue through provision of services).  Several of the Plaintiff Unions represent NAFI employees and have historically negotiated their pay and related matters described below.  Gibson Decl. [6] ¶ 15 (UA 4); Zeiler Decl. ¶ 11 (UA 335).

---

implementing or adjusting the NSPS.  5 U.S.C. § 9902(f)(4).  The second reference provides that nothing in the labor-management section of the enabling statute "is to be construed to expand the scope of bargaining under chapter 71 or this subsection with respect to any provision that may be waived, modified or otherwise affected under this section"  5 U.S.C. § 9902(m)(7).

[6] All declarations contained in the Exhibits to the Plaintiffs' Motion for Summary Judgment ("UA") are referred to as "_____ Decl."  "UA ___" will refer to the page number of the exhibit appendix at which the declaration reference can be found.

When matters of compensation are not specifically provided by statute, as is the case for NAFI employees, it is established that labor organizations may bargain over such matters under title 5, chapter 71. *Fort Stewart Schs. v. FLRA*, 495 U.S. 641, 644-50 (1990). In *Fort Stewart Schools*, the Supreme Court determined that the compensation of teachers was left to the agency's discretion and thus was not specifically provided by statute. 495 U.S. at 646-47. The Court held that, in those circumstances, a labor organization could bargain over compensation. *Id. See also United States Dep't of the Treasury, Bureau of Engraving and Printing v. FLRA*, 995 F.2d 301, 304 (D.C. Cir. 1993) (affirming that "when a law confers relatively broad discretion on an agency to determine some aspect of employee pay, that aspect is not 'specifically provided for' by statute" and is thus negotiable).

Since the Supreme Court's decision, federal courts have extended this principle, *viz.*, the ability to negotiate over matters not specifically provided by statute, not only to compensation as such, but to other aspects of compensation. *See Dep't of Army v. FLRA*, 914 F.2d 1291 (9th Cir. 1990) (finding that paid holidays were a negotiable condition of employment of NAFI employees); *AFGE, AFL-CIO, Local 1786 and Morale, Welfare and Recreation Fund Activity, Quantico, Va.,* 49 F.L.R.A. 534 (1994) (finding that shopping privileges at the base exchange were a negotiable condition of employment for NAFI employees); *AFGE, Local 2670 and AAFES,* 10 F.L.R.A. 71 (1982) (finding that meal allowances were a negotiable condition of employment for NAFI employees). The ability to negotiate over matters relating to NAFI employees extends to other conditions of employment, such as fringe benefits, which are also not specifically provided by statute. *Dep't of the Air Force, Eglin Air Force Base*, 24 F.L.R.A. 377, 384 (1986) (noting employees not subject to regulations relating to OPM health and welfare plans, thereby leaving issue of premiums to agency discretion and rendering it negotiable).

The final regulation eliminates the established practice of negotiating over matters such as pay, holiday pay, meal allowances and other compensation-related matters for NAFI employees without any discussion of the rationale for such a striking elimination of their rights. By abolishing the right to bargain over such matters, Defendants have violated the enabling statute's directive that the system ensure "that employees may . . . bargain collectively as provided for in this chapter, and participate through labor organizations of their own choosing in decisions which affect them" subject to the enabling statute and any limitation on negotiability established by law.  5 U.S.C. § 9902(b)(3).  Defendants have also violated the previously discussed statutory prohibition against waiver of chapter 71 except in certain limited circumstances inapplicable here.  Sections 9901.103 (to the extent it defines collective bargaining to exclude pay) & 9901.305 are accordingly contrary to law.

DoD's assertion in the Federal Register that § 9901.305 was intended to avoid "expanding the scope of bargaining under NSPS to those matters not subject to bargaining today" is clearly incorrect insofar as NAFI employees are concerned.  The regulation would wholly overturn *Fort Stewart Schools* and its progeny without a shred of legislative authority or even legislative history directing or permitting it to do so.  If enforced as written, the regulation would wreak havoc on the pay, benefits, and orderly payroll administration of hundreds, and possibly thousands, of DoD employees, in a range of agencies in which pay and benefits have been established via collective bargaining and are written into annual and multi-year collective bargaining agreements. The regulation seemingly, at a stroke, could eliminate all such bargained-for pay and benefits, with no apparent substitute in place.  Such a result is clearly contrary to law, arbitrary and capricious, and cannot be sustained.

### 13. The Regulations At Issue Are Not Severable
### From The Remainder Of Subpart I Of The Regulations;
### <u>Thus, The Entire Subpart Must Be Enjoined</u>

Plaintiffs request that the Court enjoin the entire Subpart of the regulations (5 C.F.R.

9901, Subpart I) covering labor relations, rather than severing the portions at issue.

In *Nat'l Treasury Employees Union v. Chertoff*, 2005 U.S. Dist. LEXIS 22802 (Oct. 7,

2005) ("*Chertoff II*"), a case substantially similar to this one in many respects, the Court stated as

follows the standards for determining whether valid portions of a regulation can be severed from

invalid portions and separately affirmed:

> Whether the offending portion of a regulation is severable depends upon the intent
> of the Agency *and* whether the remainder of the regulation could function
> sensibly without the stricken provision." *MD/DC/DE Broadcasters Ass'n v. FCC*,
> 253 F.3d 732 (D.C. Cir. 2001).  In evaluating agency intent, "severance and
> affirmation of a portion of an administrative regulation is improper if there is
> 'substantial doubt' that the agency would have adopted the severed portion on its
> own."  *Davis County Solid Waste Mgmt. v. EPA,* 108 F.3d 1454, 1459 (D.C. Cir.
> 1997) (internal citations omitted).  In evaluating whether the remainder of the
> regulation could function sensibly, the Court considers whether severance would
> "impair the function" of the remaining regulations, *id.* at 1460, or "sensibly serve
> the goals for which [the regulation] was designed."  253 F.3d at 734.

2005 U.S. Dist. LEXIS 22802, *5-6 (some internal citations omitted).  In *Chertoff II*, after

invalidating substantial portions of Department of Homeland Security ("DHS") regulations

pertaining to its labor-management relations system on the grounds that they vitiated employees'

rights to collectively bargain, the Court analyzed whether the remainder of DHS's subpart on

labor relations could be severed and determined they could not.  The Court first found that DHS

would not have passed the reminder of the regulations without the invalidated provisions:

> The Agencies have consistently relied on flexibility as a prime inspiration for the
> Regulations, and have explicitly stated that the ability to disavow previously
> existing agreements is "imperative" to attaining their goal . . . Because the
> Agencies clearly viewed this ability as essential to the Regulations' central
> purpose, the Court is persuaded that the remainder of the regulations would not
> have been passed but for the inclusion of the offending provisions.

34

*Chertoff II,* 2005 U.S. Dist. LEXIS 22802, at *18. The Court further found that the remainder of the labor relations regulations could not function 'sensibly' without the stricken provisions, holding that the offending regulations were conceptually intertwined with the remaining regulations, and that the invalidation of the regulations at issue would have a significant effect on the balance of the Subpart. *Id.*, at *18-19.

The regulations at issue in this case cannot be severed for precisely the same reasons. Like DHS, DoD has consistently touted flexibility as the driving force behind the regulations. *See, e.g.,* 70 Fed. Reg. 66118 ("[F]lexibility is not a policy preference. It is nothing less than an absolute requirement, and it must become the foundation of DoD civilian human resources management"), 66119 ("to ensure the Department has the flexibility necessary to carry out its vital mission . . . the regulations . . . revise management's rights and its duties to bargain to ensure the Department can act as and when necessary"), 66128 (necessity of establishing new labor relations system "that would provide the flexibility necessary to respond to a variety of vital operational challenges and carry out its national security mission"). And like the offending DHS regulations, DoD's labor relations system rests on the ability to unilaterally disavow existing collective bargaining agreements, both agreements that are in effect at this time and agreements that the parties may enter into in the future. *E.g.,* 5 C.F.R. §§ 9901.905(a); .917(d)(1); .910(a)(2); .910(b), (c), (f), (g), (h), (i). While somewhat more canny than DHS about broadcasting its intentions—undoubtedly in light of *Chertoff I*—DoD has repeatedly stated that the Department "must" be able to renounce these agreements in order to perform its mission. *See, e.g.,* 70 Fed. Reg. 66128, 66129.

The only valid provisions of the labor relations portion of Defendants' regulation are those that repeat provisions of chapter 71 or implement the section of the statute that authorizes

national level bargaining.  These regulatory provisions are not severable, however, and cannot be affirmed by themselves, because "there is 'substantial doubt' that the agency would have adopted [them] on [their] own."  *Davis County Solid Waste Mgmt. v. EPA*, 108 F. 3d 1454, 1459 (D.C. Cir. 1997).  The agency has no need to issue, by themselves, regulatory provisions that repeat the texts of chapter 71 provisions, and there is no reason to believe the agency would have taken this superfluous action.  The Defendants wrote the regulatory provisions that mirror chapter 71 only for convenience, so that all parts of DoD's labor relations system would appear in one document.  Defendants would not have written these provisions by themselves.

Nor would Defendants have issued, by themselves, the regulatory provisions (§§ 9901.918 and .919) that implement the national level bargaining statute, §§ 9902(m)(5) and (g). The statute expressly allows DoD to implement national level bargaining before the agency establishes the rest of its labor relations system by regulation.  5 U.S.C. § 9902(m)(5) (last sentence).  DoD, however, has chosen not to do this.  Instead, DoD has chosen to implement national level bargaining only in conjunction with the parts of its labor relations system that are invalid.  For this reason, "there is 'substantial doubt' that the agency would have adopted" the implementing regulatory provisions by themselves, and "[s]everance and affirmance" of these provisions "is improper."  *Davis County Solid Waste Mgmt.*, 108 F. 3d at 1459.  The Court therefore should enjoin implementation of the entire labor relations portion of the regulation (Subpart I).

Additionally, like the DHS regulations at issue in *Chertoff II,* the labor relations regulations here are central to the remainder of the Subpart:  once the invalidated regulations are removed from the rule, the balance of the regulations cannot function independently.  As described in detail above, the offending regulations pervade labor management relations as a

whole.  They have enormous impact on, *inter alia,* contract negotiations, grievance and arbitration procedures, and unfair labor practices—the central tenets of collective bargaining relationships.  Because the invalidation of the offending provisions would have far more than a "nominal effect" on the balance of Subpart I, the entire Subpart should be enjoined.  *Davis County,* 108 F.3d at 1459.

### C.  The Agencies Violated The Requirement That They Collaborate With The Unions On The Development Of A New Labor-Management Relations System And That They Meet And Confer <u>Regarding Provisions On Which There Is Disagreement</u>

While the NDAA permitted changes to established labor-management relations in DoD, the statute expressly prohibited the Agencies from acting unilaterally in formulating and adopting such changes.  The NDAA required the Defendants to act "in collaboration with, and in a manner that ensures the participation of, employee representatives in the development and implementation of [a] labor management relations system." 5 U.S.C. § 9902(m)(3).  Under the statute, Plaintiffs and other employee representatives had the right to participate in "meaningful discussions" with the Defendants concerning development of the system starting within 60 days of the statute's enactment, 5 U.S.C. §§ 9902(m)(3)(A)(i), (D); Defendants were required to give any recommendations received from Plaintiffs "full and fair consideration," 5 U.S.C. § 9902(m)(3)(A)(iii); and Defendants had to "meet and confer" with Plaintiffs about those areas in which Defendants did not accept the Unions' recommendations, 5 U.S.C. § 9902(m)(3)(B)(i).

5 U.S.C. § 9902(m) was designed to protect Plaintiffs' interest in safeguarding and improving working conditions for federal sector employees.  Prior to the enactment of the NDAA, Senator Collins remarked: "[w]e put in specific language to require collaboration with the representatives of employees to make sure this is a collaborative, rather than a

confrontational, process." 149 CONG. REC. S14417-02 (daily ed. Nov. 11, 2003) (statement of Sen. Collins). Clearly, the Unions were meant to play an active, participatory and substantive role in the development of the new DoD labor management system.

Defendants have violated that statutory mandate. Initially, they were required to begin the collaborative process "no later than 60 calendar days" after the law was enacted. 5 U.S.C. § 9902(m)(3)(D). Defendants waited until the 60th day to begin the process, and even then failed to include all of the employee representatives at the statutorily prescribed meeting. Roth Decl. ¶¶ 4-6 (UA 338-39) (first meeting held on 60th day); Zeiler Decl. (UA 333-35) (despite repeated requests to be included in the meeting, DoD refused to tell National Association of Government Employees, a Union representing approximately 35,000 DoD employees, the date or whereabouts of the meeting; Union did not get notice of meeting until after it had occurred). Additionally, despite the statute's express requirement that the collaborative process include both the Secretary (of Defense) *and* the Director (of OPM), OPM had no presence at the meeting. *See* Roth Decl. ¶ 6 (UA 339); Brown Decl. #2 ¶ 3, (UA 447). When the Unions asked why OPM was not present in accordance with the statute, DoD spokesmen told the Unions that OPM would participate on the Agencies' timeline, not on the Unions'. Roth Decl. ¶ 6 (UA 339).

Defendants continued to ignore their statutory responsibilities throughout the remainder of 2004. While they met with the Unions several times, the meetings were devoid of substance. Neither DoD nor OPM presented a single proposal to the Unions; rather, they passed out papers entitled "Potential Options" for the NSPS. *See, e.g.*, Brown Decl. #2 at Exhibits A and B (UA 451-70). Each 'option' contained language specifically stating it was not a proposal; and at each meeting Defendants' representatives noted they had no authority to bind their respective agencies as to any agreements the parties might reach at the meetings. Brown Decl. #2 ¶ 6 (UA 448-49);

38

Roth Decl. ¶¶ 8-13 (UA 339-40).  DoD and OPM actually acknowledged that these meetings did not fulfill the Agencies' statutory obligation for "meaningful discussions" in accordance with 5 U.S.C. § 9902(m)(3)(A)(i), repeatedly stating that the meetings were 'pre-statutory' in nature. Roth Decl. ¶ 13 (UA 340);   Brown Decl. #2 ¶ 6 (UA 448-49).   Finally, the Agencies told Plaintiffs that DoD and OPM would eventually "go dark", suspending all meetings with Plaintiffs while the Agencies wrote the proposed regulations for the NSPS, including the labor-management provisions.  Roth Decl. ¶ 14 (UA 340); Brown Decl. #2 ¶ 7 (UA 449-50).

During the summer of 2004, Plaintiffs learned that Defendants had convened secret working groups to develop the NSPS regulations.  Brown Decl. #2 ¶ 7 (UA 449-50).  These groups included no employee representatives.   *Id.*; Roth Decl. ¶ 15 (UA 340).   Plaintiffs repeatedly requested to collaborate and participate in these secret working groups; DoD and OPM refused their requests.  Brown Decl. #2 ¶ 7 (UA 449-50).  Defendants also refused to divulge any information whatsoever about the groups' progress to Plaintiffs, including preliminary draft proposals or other work products seen or produced by the secret groups.  *Id.*

On or about December 14, 2004, the Agencies did "go dark."  *Id.*  Plaintiffs had no further opportunity to meet with DoD or OPM about the new labor-management system until February 10, 2005, when Plaintiffs were invited to a briefing about the proposed regulations that were to be published four days later.  *Id.*; Roth Decl. ¶ 15 (UA 340).  During the briefing, DoD representative Gordon Englund, Secretary of the Navy, acknowledged that Plaintiffs had had no meaningful participation in the development of the new labor-management system.  *Id.*

The proposed regulations were published in the Federal Register on February 14, 2005; the comment period ended March 16, 2005.  70 Fed. Reg. 7552 *et seq.*  Defendants and Plaintiffs met to discuss Plaintiffs' comments on the proposed regulations in May and June, 2005.  Roth

Decl. ¶ 18 (UA 341).  Plaintiffs presented their proposals on labor-management relations, and on May 9, 2005 asked Defendants for feedback on those proposals.  DoD undersecretary for personnel Charles Abell told the Unions it served little purpose to discuss the Unions' proposals because the proposed regulations represented the Administration's fixed position on labor relations.  Roth Decl. ¶ 20 (UA 341); Gibson Decl. ¶ 21 (UA 5).  On June 16, 2005, representatives from DoD and OPM advised Plaintiffs that Defendants had no intention of changing any portion of the proposed labor-management regulations to accommodate Union objections.  Roth Decl. ¶ 21 (UA 341).

As these facts clearly demonstrate, Defendants breached the statutory mandate of 5 U.S.C. § 9902(m)(3) by developing a labor relations system without (1) "ensur[ing] the participation of employee representatives"; (2) "afford[ing] employee representatives and management the opportunity to have meaningful discussions concerning the development of the new system"; and then, once a labor-management relations system had actually been proposed, (3) "meet[ing] and confer[ring] . . . with the employee representatives, in order to attempt to reach agreement" on any points of contention in the proposed labor management relations system.  *Id.*

Where Congress has not indicated another intent, the common meanings of statutory words can be assumed.  *See, e.g., Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 388 (1993).  "Meaningful" is ordinarily defined as "significant," which in turn means "having or likely to have influence or effect; important."  MERRIAM-WEBSTER ONLINE, at http://www.m-w.com (last visited Oct. 31, 2005).  "Participate" means "to have a part or share in something."  *Id.*  Plaintiffs' role in developing DoD's labor-management regulations system can be fairly described as neither meaningful nor participatory.  As described *supra*, throughout 2004

the Defendants conducted a dog-and-pony show with the Unions, presenting "potential concepts" while simultaneously convening secret working groups, wholly inaccessible to Plaintiffs, which in fact drafted the regulations.  The proposed regulations were thus drafted with *no Union participation*. Contrary to the plain meaning of the statute, Plaintiffs' role in developing a new system was meaningless; their participation effectively non-existent.    "An agency's interpretation of a statute is not entitled to deference when it goes beyond the meaning that the statute can bear."  *MCI Telecomm. Corp. v. AT&T Co.*, 512 U.S. 218, 228 (1994) (internal citations omitted).

Similarly, Defendants have violated the NDAA by failing to "meet and confer" with Plaintiffs as required by § 9902(m)(3)(B)(i).  The phrase "meet and confer" is a term of art which has repeatedly been used by Congress in the field of labor-management relations.  Consideration of how Congress has used similar language in other statutes is a traditional tool of statutory construction.  *See Chertoff I*, 385 F. Supp. 2d at n.16 (citing *W. Va. Univ. Hosps., Inc., v. Casey*, 499 U.S. 83, 100 (1991)).

> The general rule is perfectly well settled that, where a statute is of doubtful meaning . . . the court may look into prior and contemporaneous acts . . . to determine its proper construction.  The guiding principle is that a prior statute's definition of the term will control if it is natural and reasonable to think that the members of the legislature, in drafting the new statute, were influenced by the prior statute(s).

*Id.* (internal citations omitted).

Congress used the words "meet" and "confer" in the National Labor Relations Act ("NLRA"), the major labor-relations statute for private sector employees, as follows:  "to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith. . . ."  29 U.S.C. § 158(d). The Courts and the National Labor Relations Board, in turn, have construed that language of the

NLRA to mean the parties must come together with a "sincere purpose to find a basis of agreement." *NLRB v. Herman Sausage Co.*, 275 F.2d 229, 231 (5th Cir. 1960); *see also Atlantic Hilton & Tower*, 271 N.L.R.B. 1600, 1603 (1984). While Defendants may not have been required to engage in full-fledged collective bargaining with the Unions over the new labor relations system, the use of the term clearly imposed a substantive obligation on the Defendants that was not fulfilled.

The Federal Service Labor Management Relations Act contains substantially similar language—"meet and consult"—to the language at issue here. Here, too, the language imparts a substantive duty—"the mutual obligation of the representative of an agency and the exclusive representative of employees in an appropriate unit in the agency to meet at reasonable times and to consult . . . in a good-faith effort to reach agreement." 5 U.S.C. § 7103(a)(12). Even where the phrase does not appear in the text of the statute, the substantive requirement to meet and confer has been similarly construed, in the context of other labor-management statutes, to impose a real obligation upon management. *See, e.g., Va. R. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 547-8 (1937) (Railway Labor Act "requires the employer to meet and confer with the authorized representative of its employees, to listen to their complaints, to make reasonable efforts to compose [their] differences.")

It is entirely reasonable to think that Congress, in drafting the labor-management relations portion of the NDAA, was influenced by other labor-management relations statutes and their interpretation. In choosing to include this term of art from the field of labor relations, Congress clearly intended to impose a duty similarly substantive in nature to that set forth in the other statutes. Nothing in the NDAA suggests otherwise. Indeed, the very text of the statute expressly supports the interpretation Plaintiffs suggest: 5 U.S.C. § 9902(m)(3)(B)(i) states that

after a new labor-management system has been proposed, the Defendants must "meet and confer…with the employee representatives, *in order to attempt to reach agreement.*" (Emphasis added.)

Defendants have not fulfilled their obligation to meet and confer in order to attempt to reach agreement, as required by the NDAA. Once Plaintiffs finally had the opportunity to examine the proposed regulations, the Unions voiced serious concerns about the Agencies' proposed system (unsurprisingly, as they had been afforded no input into the development of the system). While Defendants technically fulfilled the physical requirement of "meeting" with Plaintiffs after the proposed regulations were published, they made it immediately and unmistakably clear they had no intention of changing any portion of the proposed labor-management regulations to accommodate Union concerns or objectives. Roth Decl. ¶¶ 18-21 (UA 341). Defendants' conduct falls far short of their legal obligation to "meet and confer."

Defendants will doubtless argue that the notice-and-comment rulemaking process fulfilled their statutory obligation to meaningfully collaborate with the Unions. Such an argument is meritless. Under 5 U.S.C. § 553(a)(2), matters "relating to agency management or personnel," such as labor management relations, are exempt from notice-and-comment rulemaking. If Congress had meant to provide an exception to § 553(a)(2) in this case, which would have enabled DoD to work with the Unions solely through the notice and comment process, it could easily have so stated. It did not. The statute expressly provided that the development of the regulations was to occur *in collaboration with the unions, ensuring their participation, convening meaningful discussions with them, giving their proposals full and fair consideration, and—finally—meeting and conferring to attempt to reach agreement.* 5 U.S.C. §§ 9902(m)(3)(A) & (B).

43

The D.C. Circuit has stated two purposes for according notice and comment opportunities: "to reintroduce public participation and fairness to affected parties after governmental authority has been delegated to unrepresentative agencies, and to assure that the agency will have before it the facts and information relevant to a particular administrative problem, as well as suggestions for alternative solutions." *Am. Hosp. Ass'n. v. Bowen*, 834 F.2d 1037, 1044 (D.C. Cir. 1987) (internal citations omitted).  The text of the NDAA clearly mandates that the Unions have more involvement than as mere "commenters" on a proposed rule. Accordingly, the notice-and-comment rulemaking process cannot be said to satisfy the Agencies' particularized duties under the NDAA.

As evidenced by the language of the NDAA, the legislative history, and established principles of statutory interpretation, Defendants have breached their statutory obligation to establish a labor-management system in collaboration with Plaintiffs and other employee representatives.

### D.  The NSPS Places Unlawful Restrictions On Employee Appeal Rights

#### 1.  *The Appeals Process And How It Works*

One of the strongest protections afforded federal employees is the ability to appeal discipline, also known as "adverse actions."  The NDAA grants the Secretary authority to establish an appeals process for disciplined DoD employees; however, this grant is subject to certain restrictions.

As discussed extensively above, the NDAA does not permit DoD to waive or modify chapter 71, with two exceptions not applicable to employee appeals.  Further, the statute expressly directs that the Merit Systems Protections Board, an independent agency charged with reviewing and adjudicating adverse actions for federal employees, be involved in any employee

appeals system crafted by the agencies.  5 U.S.C. §§  9902(h)(4), (5), (6), (8).  Additionally, the NDAA requires that DoD employees be afforded the protections of fair treatment and due process when appealing agency-imposed discipline. § 9902(h)(1)(A) and (B)(i).  Citing this limited grant of authority, the Secretary and Director have issued regulations that violate the NDAA, improperly circumscribe the MSPB's authority, and contravene chapter 71.

Upon implementation, the final DoD regulations will illegally restrict bargaining unit employees from appealing serious disciplinary actions[7] taken against them.  As a preliminary matter, understanding the appeals process under the final regulations requires some work. Initially, an employee suffering an adverse action (with the exception of a "mandatory removal offense," discussed *infra*) must choose whether to appeal via the negotiated grievance procedure or through the MSPB.[8]  5 C.F.R. § 9901.922 (f)(1).  The first level of review is before an arbitrator (if the grievant elected to proceed via the grievance procedure) or an MSPB Administrative Judge (AJ)). 5 C.F.R. §§ 9901.807(a)(2)(ii); 9901.922 (f)(2).  However, the regulations sharply limit the arbitrator/AJ's authority by prohibiting him or her from mitigating a

---

[7] These actions could include, for example, a long term suspension.  They do *not* include "mandatory removal offenses" (MRO) as defined in 5 C.F.R. § 9901.103.  DoD has prescribed a separate appeals procedure for MROs, as discussed *infra*.

[8] 5 C.F.R. § 9901.715 addresses the employee's initial opportunity to reply to an adverse action.  Subsection (e) states that an employee may be represented by, *inter alia*, a representative of the employee's choice subject to subsection (f).  Subsection (f) states that the employee's representative may be disallowed if (1) representational activities would cause a conflict of interest with the DoD or (2) the representative's release would give rise to unreasonable cost or work assignments preclude release or (3) representation could compromise national security.  The agency's ability to disqualify an employee's choice of representative during the crucial *reply period*, without recourse to an independent third party (since the AJ/arbitrator is not involved at this preliminary stage) merely on DoD's unilateral assertion, for example, that a work assignment precludes release is blatantly unfair.  It allows the agency potentially to force accused employees to retain representation outside of the agency (at the employee's personal cost) in order to meet the timeframes designed by the regulations, without recourse or redress.  It also weakens the Unions' function as an effective representative for aggrieved employees by potentially depriving employees of the ability to select, *i.e.,* their shop steward, their local union vice-president, or anyone they know and trust as their advocate.

penalty imposed by DoD unless it is "totally unwarranted in light of all pertinent circumstances." 5 C.F.R. §§ 9901.807(f)(2)(ii); 9901.923(a).  Once the arbitrator/AJ issues a decision, the matter moves to DoD, the party issuing the discipline in the first instance, for a second level of "review."   DoD is free to disregard the arbitrator/AJ's decision and issue its own "final decision," which can only be modified by the full MSPB.  5 C.F.R. § 9901.807(g)(2)(ii)(A) & (B).  Upon petition, the grievant then moves to the third level of review:  the MSPB may review an arbitrator/AJ's decision or DoD's decision replacing that of the arbitrator/AJ. 5 C.F.R. §§ 9901.807(h)(1), (2).   However, the DoD's final regulations circumscribe the MSPB's authority by, *e.g.,* allowing DoD to disregard MSPB's order for interim relief, and by prohibiting the MSPB from mitigating an adverse action based on the way the charge was labeled or the conduct characterized, or based on the way a performance expectation was expressed.  5 C.F.R. §§ 9901.807(f)(3), (4), (5)(i).

As explained below, these limits on employees' rights of appeal violate the NDAA in a variety of ways.  They violate its specific guarantees that employees have access to a fair appellate process, with due process protections.  They violate its directives that the MSPB have a meaningful role in the appeals process.  Finally, they violate the statute's explicit reaffirmation of chapter 71, and of the rights of employees to collectively bargain.

### 2.  *The Sections Of The Regulations Requiring Arbitrators And MSPB Administrative Judges To Uphold An Adverse Action Unless It Is "Totally Unwarranted" And To Always Impose The Maximum Justifiable Penalty— 5 C.F.R. §§ 9901.807(f)(2) And 9901.922(f)(2)—Are Invalid*

The regulations prohibiting an MSPB AJ from mitigating a penalty imposed by DoD unless it is "totally unwarranted in light of all pertinent circumstances" violates § 9902(h)(5)(A) of the NDAA, which requires that the MSPB mitigate DoD's adverse action if the action was

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  Just three months ago, Judge Collyer of this Court invalidated substantially similar regulations which would have ignored the MSPB's own long-standing "arbitrary and capricious" standard of review, allowing the Board to mitigate penalties imposed by the Department of Homeland Security only if they were "wholly without justification."  *Chertoff I*, 385 F. Supp. 2d at 32-35. In that case, the Court invalidated the regulations despite the fact that nothing in the enabling statute specifically required a different standard for mitigation.  *Id.*  The arguments for invalidating the penalty mitigation standards in this case are even stronger here than in *Chertoff I*, because here the implementing statute expressly directs that the MSPB use the arbitrary and capricious standard in mitigating Agency penalties.  § 9902(h)(5)(A).

DoD will likely argue that its final regulations cure the problems cited in *Chertoff I* by allowing the full MSPB to ultimately overturn DoD's adverse personnel action based on an 'arbitrary and capricious' standard of review.  5 C.F.R. § 9901.807(h)(2)(iii)(A).  *See also* 385 F. Supp. 2d at 34-35 (finding that "arbitrary and capricious" is the appropriate standard for MSPB mitigation).  *See also* 70 Fed. Reg. 66173.  This is a fallacy.  As described above, the initial review of DoD's adverse action must be performed by an MSPB AJ (or an arbitrator, discussed *infra*), and DoD has illegally circumscribed her authority by preventing mitigation of a penalty imposed by DoD unless the AJ finds the penalty "totally unwarranted in light of all pertinent circumstances." § 9901.807(f)(2)(ii).  The phrase "totally unwarranted in light of all pertinent circumstances" is the functional equivalent of the "wholly without justification" standard struck down in *Chertoff I*.  Indeed "wholly" is listed as a synonym for "totally" in various online dictionaries, and "unjustified" and "unwarranted" are also synonymous.  *See, e.g.*, http://www.dictionary.com; http://www.m-w.com.

47

The fact that the full MSPB, which the grievant may encounter two stages of review after the AJ, is held to the 'arbitrary and capricious' standard in the final regulations does not cure this problem with the appeals regulations.    Instead, the regulations merely serve to confuse employees and unions who may consider appealing adverse actions because they effectively promulgate different standards of review applicable to the same underlying action.    Also, the regulations ensure that employees and unions will need to expend the maximum amount of resources, both of time and money, in appealing any adverse action, since an employee must seek review by the full MSPB in order to obtain any benefit from the "arbitrary and capricious" standard guaranteed by 5 U.S.C. § 9902(h).[9]    The Defendants' half-hearted attempt to postpone mitigation of a penalty until the final review by the full MSPB does not satisfy the concerns of the Court in *Chertoff I*, nor does it guarantee "fair treatment in any appeals" as required by the statute.  5 U.S.C. § 9902(h)(1)(A).

Additionally, the standards imposed by the final regulations do not afford employees due process as required by 5 U.S.C. § 9902(h)(1)(b)(i).   "Due process centrally concerns the fundamental fairness of governmental activity."  *Quill Corp. v. North Dakota*, 504 U.S. 298, 313 (1992).  In this case, DoD has acted to curtail employee access to a fair and impartial decision-maker.  Under the final regulations, the MSPB AJ—who conducts the mandatory first level of review through which all employee appeals must pass—cannot mitigate even unreasonable penalties if even the smallest sliver of justification exists, giving every benefit of the doubt to DoD.  This new standard would apparently permit the removal of an employee with a long unblemished record for committing a minor infraction (such as arriving five minutes late) that,

---

[9] As discussed throughout this section, the new appeals system both adds layers of review and provides for differing standards of review at the different layers.  It is hard to see how this new process comports with Defendants' oft-stated goal of "streamlining" the appeals/adverse action procedure.  *See, e.g.,* 70 FR 66126, 66127

by any reasonable measure, warrants a much less severe penalty.  Because the penalty is not "totally unwarranted under all pertinent circumstances"—*i.e.,* the employee did commit the infraction—the penalty can not be mitigated at the AJ level.  *See*  5 C.F.R. § 9901.807(f)(2)(ii).  Any scheme that requires an AJ to uphold unreasonable penalties is not designed to further fairness.

Finally, the regulations prohibiting arbitrators from mitigating penalties unless they are "wholly unwarranted" violates §§ 7121(e) and (f) of chapter 71.  Under these provisions, employees subject to serious discipline may seek review through either the MSPB or the grievance-arbitration procedure.  If they choose the latter, the statute provides that the arbitrator is vested with the same authority as the full MSPB.  5 U.S.C. § 7121(f).  Thus, under chapter 71 arbitrators must be permitted to use the same standard of review as the MSPB.  Accordingly, this aspect of the regulations unlawfully waives chapter 71.

### 3.  The Sections Of The Regulations Which Allow The DoD To Modify Or Reverse An Arbitrator Or Administrative Judge's Decision— 5 C.F.R. §§ 9901.807(G)(2)(Ii)(A) And (B)— Violate Chapter 71 (In The Case Of Arbitrator Decisions) And NDAA's Fairness Provisions (In The Case Of Arbitrator And Administrative Judge Decisions)

#### a.  Arbitrator Decisions

As discussed above, under chapter 71 employees subjected to serious discipline for alleged misconduct or unsatisfactory work performance may seek review either through the MSPB or through the negotiated grievance arbitration procedure.  If they choose the latter, the arbitrator's decision is followed immediately by judicial review to the Federal Circuit.  5 U.S.C. § 7121(f).  Defendants' regulation delays judicial review in these cases by subjecting arbitration decisions to two intermediate levels of review.  The first layer allows DoD to overrule the arbitrator.  5 C.F.R. §§ 9901.807 (g)(2)(ii)(A) and (B).  The second layer is review by the full

49

MSPB.  5 C.F.R. §§ 9901.807(h).  Only following a final decision by the full MSPB may a grievant seek judicial review.  5 C.F.R. §§ 9901.807(i).

The regulations requiring that arbitrators' decisions be appealed to the DoD and then to the full MSPB before being certified for judicial review violate § 7121(e) and (f) of chapter 71. As noted above, under these provisions the arbitrator is vested with the same authority as the full MSPB.  Thus, under chapter 71 arbitrators must be permitted to use the same standard of review as the MSPB, and their decisions must, like the MSPB's, be appealable to the U.S. Court of Appeals for the Federal Circuit.  5 U.S.C. §§ 7703(b), (c).

Defendants do two separate harms by promulgating these regulations.  First, as discussed above, they subject grievants to inconsistent, unfair and illegally deferential standards of review in violation of the NDAA as well as chapter 71.  Second, they effectively eliminate the grievance arbitration procedure as an option for aggrieved employees.  In enacting the federal sector labor laws, Congress expressly provided that employees would have a choice of forum in which to appeal serious disciplinary actions taken against them:  the negotiated grievance arbitration procedure or the processes of the MSPB.  5 U.S.C. § 7121(e)(1).  *See also Devine v. Pastore*, 732 F.2d 213, 216 (D.C. Cir. 1984) ("Arbitration is recognized as faster, cheaper, less formal, more responsive to industrial needs, and more conducive to the preservation of ongoing employment relations (than MSPB review) . . . [In enacting the statute, Congress was] hoping to encourage employee selection of the grievance-arbitration process. . . .") (internal citations omitted).  The final regulations effectively eliminate the grievance procedure option by requiring all arbitrator decisions to go through the same layers of review as those of MSPB AJs.  Not only does this violate chapter 71, it renders meaningless one of the most fundamental tenets of union representation:  the grievance and arbitration procedure.  The appeals provisions of the

regulations mirror the regulations as a whole in their determination to eliminate essential elements of collective bargaining.

### b. Decisions of Administrative Judges

Administrative Judges' decisions are similarly subject to review, first by the DoD, then by the full MSPB, as noted above.  Specifically, 5 C.F.R. §§ 9901.807(g)(2)(ii)(A) and (B) authorize DoD to reverse an AJ's decision if, in DoD's opinion, the AJ made "a material error of fact" or that the "decision has a direct and substantial adverse impact on the Department's national security mission, or is based on an erroneous [legal] interpretation."

Section § 9902(h)(1)(A) of the NDAA requires that "an appeals process . . . provide[] employees . . . fair treatment in any appeals they bring."  A system that allows one party to a proceeding (DoD) to unilaterally modify or reverse the decision of an independent AJ cannot be reasonably found to confer fair treatment.  The Department's stated rationale for this regulation is "to ensure that [AJ] decisions interpret [the regulations] in a way that recognizes the critical mission of the department."  70 Fed. Reg. 66175.  This bald assertion that the Department wishes to control the decisions of supposedly neutral decision-makers may be honest, but it is certainly not *fair*.

### 4.  The Sections Of The Regulations Restricting The Authority Of The Full MSPB— 5 C.F.R. §§ 9901.807(f)(3), (f)(4) And (f)(5)(i)—Violate The NDAA

Section 9902(h)(4) of the NDAA states that most DoD employees who are, *inter alia,* removed, suspended, or furloughed by management "shall have the right to petition the full Merit Systems Protection Board for review . . . no personnel action shall be stayed and no interim relief shall be granted during the pendency of the Board's review unless specifically ordered by the Board."  Nevertheless, the final regulations provide that the Secretary may, "in his or her sole,

exclusive and unreviewable discretion," choose to ignore the *specific order of the MSPB* for such interim relief.  5 C.F.R. § 9901.807 (f)(5)(i).  The regulations thus not only violate their implementing statute, they utterly disregard the powers and expertise of the MSPB itself.

The MSPB is an independent federal agency enacted by Congress.  It is charged with adjudicating cases involving "personnel actions" for federal employees pursuant to the procedures and precedents it develops.  5 U.S.C. § 1204.  Defendants' attempts to insert themselves into the MSPB's administrative practice have the effect of converting the MSPB from an independent and effective arbiter of adverse personnel actions to an advisory panel to the Secretary of Defense.  This result is directly contrary to Congress's intent in creating the MSPB.  *Id.*  Defendants' sole stated rationale for defying the MSPB—"to provide for the efficient accomplishment of the mission and to avoid disruption of the workforce,"—is utterly inadequate to explain its departure from the language of the NDAA.  70 Fed. Reg. 66174.

Additionally, the NDAA specifically directs that the MSPB may mitigate the penalty imposed by DoD, or otherwise order "such corrective action as [the MSPB] considers appropriate," if it determines the adverse action was:

> (A)   arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

> (B)   obtained without procedures required by law, rule or regulations having been followed; or

> (C)   unsupported by substantial evidence.

5 U.S.C. § 9902(h)(5).  Again, however, the final regulations circumscribe the MSPB's statutory authority.  Specifically, the regulations prohibit appellate reversal of an adverse action "based on the way in which the charge is labeled or the conduct characterized," or "based on the way a performance expectation is expressed, provided that the expectation would be clear to a

reasonable person." 5 C.F.R. §§ 9901.807(f)(3) and (f)(4). It is clearly within the purview of MSPB to determine whether DoD has operated under "procedures required by law, rule or regulation" by clearly and accurately articulating the charges against an employee. More fundamentally still, it is antithetical to the statute's guarantees of "fairness" and "due process" to excuse the DoD from the bedrock requirement of providing employees with clear and accurate notice of charges against them. The provisions at issue violate the NDAA's grant of authority to the MSPB, as well as its guarantees of fairness, and are thus invalid.

### 5.  The Sections Of The Regulations Precluding Administrative Judges From Determining The Penalty For "Mandatory Removal Offenses"—5 C.F.R. §§ 9901.712(c), 9901.807(f)(1)(v), 9901.808(b) And (c), And 9901.922(f)(2)— And The Sections Excluding "Mandatory Removal" Cases From The Grievance And Arbitration Procedure Altogether— 5 C.F.R. § 9901.922(c)(4)—Are Unlawful And Should Be Enjoined

As argued in the previous section, Congress directed the Secretary to provide an appeals process that provides employees with "fair treatment" and affords employees "the protections of due process." 5 U.S.C. §§ 9902(h)(1)(A) & (B). However, the Secretary failed to implement Congress's directive, providing employees with an appeals process littered with violations of the NDAA and employees' rights. Yet, even that process is overshadowed by the Byzantine process by which employees have to appeal in an attempt to mitigate the removal penalties for so-called "mandatory removal offenses" or "MROs."

The process in MRO cases begins with the Secretary's "sole, exclusive and unreviewable discretion to identify offenses" that would lead to the mandatory removal of an employee. 5 C.F.R. § 9901.712(a). Generally, if an employee is deemed to have committed an MRO and is removed from his or her employment, the employee has a right to appeal that removal to an Administrative Judge of the MSPB. 5 C.F.R. § 9901.807(a)(2)(ii). The AJ has the authority to

uphold the penalty, but not to mitigate the penalty if there are extenuating circumstances. 5 C.F.R. § 9901.808(b). After the AJ issues his decision, "either party" may file a request for review within thirty days of the AJ's decision with the "Department" and the MSPB. 5 C.F.R. § 9901.807(g).

At this stage, the process becomes Kafkaesque, as the "Department" has the right to consider the appeal before the MSPB may hear the case. If the "Department" chooses to consider the appeal, it can remand the case to the AJ for further proceedings, accept the AJ's findings as the Department's own findings, or issue a final decision of its own. 5 C.F.R. § 9901.807(g)(2). Notwithstanding these scenarios, the removal penalty cannot be mitigated because the final regulations provide that "*[o]nly the Secretary* may mitigate the penalty within the *Department*." 5 C.F.R. § 9901.808(c) (emphasis added). If the "Department" is anyone but the Secretary, then the aggrieved employee must file yet another appeal with the MSPB, which is the first reviewing body that has the authority to mitigate the penalty of removal for an MRO offense. *See* 70 Fed. Reg. at 66176 (stating "[w]e do agree however, that the enabling legislation allows mitigation of MRO penalties by the full MSPB and have modified the provision accordingly"). However, the MSPB can not offer an employee any finality or real relief: according to the regulations, if the MSPB "sustains an employees appeal based on a finding that the employee did not commit an MRO, a subsequent proposed adverse action (other than an MRO) based in whole or in part on the same or similar evidence is not precluded." 5 C.F.R. § 9901.808(d). Under the new DoD regulations, it seems that an employee can be tried for the same crime twice.

By forcing an employee to run this gauntlet of steps before finally reaching a decision-maker with the authority to modify a removal penalty (and then, if exonerated, facing double

jeopardy), the appeals process for MROs is the antithesis of "fair treatment" and violates 5 U.S.C. § 9902(h)(1)(A).  At the initial steps of the process, the employee's only means to obtain mitigation of a removal penalty for an MRO is to prove he or she did not commit the MRO.  Yet, the employee must undertake this task in a setting where either "[a]n AJ will give great deference to the determination regarding the penalty imposed," 5 C.F.R. § 9901.807(f)(2)(i), or where the "Department" is reviewing its own penalty of removal.  5 C.F.R. § 9901.807(g).  If an employee is unable to meet this burden, the removal penalty remains, regardless of any mitigating circumstances.    The only decision-maker with the authority to consider such mitigating circumstances is the MSPB and this only at the *final* step of the process.  Given that the Secretary has chosen to establish an appeals process under the NDAA, the process must "provide[ ] employees . . . *fair treatment* in *any appeals* that they bring in decisions relating to their employment."  5 U.S.C. § 9902(h)(A).  There is no exception to the fair treatment requirement for appeals involving MROs.  The inability to have any true, fair or timely consideration given to mitigating circumstances thus constitutes a clear violation of the enabling statute.

Unsurprisingly, the Agencies have cited DoD's "national security mission" as justification for curtailing its employees' rights.  70 Fed. Reg. 66176.  It is difficult to see any nexus (nor did DoD explain one) between national security and the labyrinthine appeals process prescribed by the regulations.

Not only has the Secretary denied his own employees "fair treatment" in the appeal process, but the Secretary has issued a regulation that precludes an employee from challenging a removal for an MRO through the grievance and arbitration procedures in the collective bargaining agreements.  *See* 5 C.F.R. § 9901.922(c)(4).  The Federal Service Labor-Management

Relations Statute provides that employees may challenge discipline through the grievance and arbitration procedure in the employees' collective bargaining agreement. 5 U.S.C. §§ 7121(e)(1) & (f) (providing employees may pursue matters covered by 5 U.S.C. § 7512 (which includes discipline such as removals)through the grievance and arbitration procedure). This procedure begins with attempts by the parties to resolve the grievance, continues with a hearing before an arbitrator and concludes with judicial review. At every step of this procedure, there is the possibility that the removal offense may be mitigated, as every decision-maker has the authority to modify a penalty. As discussed above, Congress did not vest the Secretary with the authority to waive chapter 71, which includes 5 U.S.C. § 7121. Therefore, the Secretary has unlawfully promulgated a regulation that denies the employees' statutory right to challenge discipline through the grievance procedure if they so desire. Additionally, it is noteworthy that the Agencies did not provide any reason for this regulation.

Accordingly, the Secretary has violated both the enabling statute and the Federal Service Labor-Management Relations Statute in promulgating its appeals process for employees to challenge removal penalties in MRO cases. For these reasons, the Unions request that the Court enjoin the unlawful regulations that govern the appeals in MRO cases. *See* 5 C.F.R. §§ 901.712, 9901.807 & 9901.922(c)(4).

## VI.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this motion be granted and that the Court enter summary judgment in their favor on all claims in this action.

Respectfully submitted,

Dated:  November 23, 2005                By:   /s/ Joseph Goldberg_____
                                              JOSEPH GOLDBERG, Bar # 291096
                                              Assistant General Counsel
                                              MARK D. ROTH, Bar # 235473
                                              General Counsel
                                              AMERICAN FEDERATION OF
                                              GOVERNMENT EMPLOYEES, AFL-CIO
                                              80 F Street, N.W.
                                              Washington, DC  20001
                                              (202) 639-6426


                                        By:   /s/ Sally M. Tedrow_____
                                              SALLY M. TEDROW, Bar #938803
                                              ROBERT MATISOFF, Bar #210294A
                                              KEITH R. BOLEK, Bar #463129
                                              O'DONOGHUE & O'DONOGHUE LLP
                                              4748 Wisconsin Avenue, N.W.
                                              Washington, DC  20016
                                              (202) 362-0041


                                        By:   /s/ Susan Tsui Grundmann_____
                                              SUSAN TSUI GRUNDMANN, Bar #433437
                                              General Counsel
                                              NATIONAL FEDERATION OF FEDERAL
                                              EMPLOYEES, FD-1, IAMAW, AFL-CIO
                                              1016 16th Street, N.W.
                                              Washington, DC  20036
                                              (202) 862-4400


                                        By:   /s/ Daniel M. Schember_____
                                              DANIEL M. SCHEMBER, Bar #237180
                                              GAFFNEY & SCHEMBER, P.C.
                                              1666 Connecticut Avenue, N.W.
                                              Suite 225
                                              Washington, DC  20009
                                              (202) 328-2244

                                              Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

AMERICAN FEDERATION OF GOVERNMENT :
EMPLOYEES, AFL-CIO, *et al*.,                       :
                                                                         :
                          Plaintiffs,                          :
                                                                         :
                          v.                                      :          Case No. 1:05CV02183 EGS
                                                                         :
DONALD H. RUMSFELD, SECRETARY,      :
UNITED STATES DEPARTMENT OF            :
DEFENSE, *et al*.,                                       :
                                                                         :
                          Defendants.                       :
                                                                         :

<u>**PLAINTIFFS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**</u>

1.      The Plaintiffs are the following labor organizations: American Federation of Government Employees, AFL-CIO ("AFGE"); Metal Trades Department, AFL-CIO ("MTD"); National Federation of Federal Employees, FD-1, IAMAW, AFL-CIO ("NFFE"); Association of Civilian Technicians, Inc. ("ACT"); National Association of Government Employees, SEIU, ("NAGE"); United Power Trades Organization ("UPTO"); International Federal of Professional & Technical Engineers ("IFPTE"): International Brotherhood of Teamsters ("IBT"); Laborers International Union of North America ("LIUNA"); International Association of Fire Fighters ("Fire Fighters"); Overseas Federation of Teachers, AFT, AFL-CIO ("OFT"); International Association of Machinists & Aerospace Workers, AFL-CIO ("IAM"); and National Association of Independent Labor ("NAIL") (collectively referred to herein as the "Unions"). The Unions represent, collectively, more than 350,000 employees in the Department of Defense (DoD). Gibson Decl. ¶ 3 (UA 0001); Ault Decl.  ¶ 3 (UA 165); Brown Decl. #1 ¶ 2 (UA 250); Zeiler

Decl. ¶ 3 (UA 333-34); Sainz-Funaro Decl. ¶ 2 (UA 471-72); Bastas Decl. ¶2 (UA 508-09);

Filler Decl. ¶ 3 (UA 608-09); Schaitberger Decl. ¶ 3 (UA 638).[1]

2.      Defendant Donald H. Rumsfeld is the Secretary of the United States Department

of Defense ("DoD"). (*See* http://www.defenselink.mil/osd/topleaders.html.)

3.      Defendant Linda M. Springer is the Director of the United States Office of

Personnel Management ("OPM"). (*See* http://www.opm.gov/news/bios/LindaSpringer.asp.)

Ms. Springer succeeded Kay Coles James, who was the OPM Director when the proposed

regulations in this case were promulgated. 70 Fed. Reg. 7574.

4.      Prior to the publication of the proposed regulations, the final version of which is

the subject of these proceedings, the Unions and the DoD and OPM ("Agencies") met on

multiple occasions to discuss the establishment of a new labor relations system for DoD. Roth

Decl. ¶¶ 6-14 (UA 339-40); Brown Decl. #2 ¶¶ 3-4 (UA 447-48). No representative from OPM

attended the first of these meetings, which was the only meeting that took place within the 60-

day period after enactment of the enabling statute. *Id.*; Zeiler Decl. ¶ 5-10 (UA 333-34). At

some of these meetings, the Unions objected to the Agencies' concept for a new labor relations

system. Roth Decl. ¶ 10 (UA 339)

5.      During the meetings, DoD presented documents to the Unions outlining some

concepts for the new labor relations system. These documents were labeled "Potential

---

[1] "Gibson Decl." refers to the Declaration of Mark Gibson, which is included in Exhibits to Plaintiffs' Motion for Summary Judgment or the Unions' Appendix ("UA") at 1. "Ault Decl." refers to the Declaration of Ron Ault included at UA 165. "Brown Decl. #1" refers to the first Declaration of Richard N. Brown included at UA 250. "Zeiler Decl." refers to the Declaration of Jean Zeiler included at UA 333. "Roth Decl." refers to the Declaration of Mark Roth included at UA 338. "Brown Decl. #2" refers to the second Declaration of Richard N. Brown included at UA 446. "Sainz-Funaro Decl." refers to the Declaration of Marie Sainz-Funaro included at UA 471. "Bastas Decl." refers to the Declaration of Thomas G. Bastas included at UA 508. "Filler Decl." refers to the Declaration of Michael B. Filler included at UA 608. "Schaitberger Decl." refers to the Declaration of Harold A. Schaitberger included at UA 638.

Options . . . these concepts do not constitute proposals, and are predecisional." Brown Decl. #2 ¶ 6 (UA 448-49).

6.       During the summer of 2004, the Unions learned that the Agencies had convened working groups to draft proposed regulations for a new labor relations system.  The Unions repeatedly requested the opportunity to participate in these groups, but the Agencies refused these requests.  *Id.* at ¶ 7; Roth Decl. Ex. D (UA 382-400).  The Unions also requested information about the groups' progress, including preliminary draft proposals or other work products seen or produced by the groups.  The Agencies did not provide or agree to provide the requested information.  Brown Decl. #2 ¶ 7 (UA 449-50).

7.       On February 14, 2005, the DoD Secretary and the OPM Director published proposed regulations in the Federal Register to establish a human resources management system for DoD.  70 Fed. Reg. 7552.

8.       The Unions submitted detailed comments objecting to various provisions of the proposed regulations.  *See generally* 70 Fed. Reg. 66122-66185.

9.       The Unions and the Agencies met to discuss the proposed regulations in May and early June 2005.  The Unions continued to press their objections to the regulations, and presented packages of proposals during these meetings.  The Agencies responded to these proposals by claiming that they were entitled to waive the obligations of the federal labor statute set forth in title  5, chapter 71 of the U.S. Code, in its entirety.  Roth Decl. ¶¶ 20-21 (UA 341); *see also* 70 Fed. Reg. 66176.  The Agencies also stated that it served little purpose to discuss the Unions' proposals on the scope of bargaining, and other union objections because the proposed regulations represented the Administration's fixed position on labor relations.  The last meeting before final regulations were issued took place on June 16, 2005.  Roth Decl. ¶¶ 18-21 (UA 340-

41). On that day, representatives from DoD and OPM advised Plaintiffs that Defendants had no intention of changing any portion of the proposed labor-management regulations to accommodate Union objections. *Id.*

10.    On November 1, 2005, the DoD Secretary and OPM Director jointly promulgated final regulations ("Final Rules") establishing a human resources management system for DoD. 70 Fed. Reg. 66116-66220 (Nov. 1, 2005).

11.    In the federal sector, much of the bargaining that takes place concerns impact and implementation bargaining, bargaining over negotiated procedures, and bargaining over appropriate arrangements for employees who are adversely affected by an agency's exercise of its management rights. Gibson Decl. ¶¶ 70-112; 114 (UA 0020-0032).

12.    The Unions secure workplace benefits for employees through impact and implementation, negotiated procedure and appropriate arrangement negotiations. Ault Decl. ¶¶ 6-7 (UA 166-67); Brown Decl. #1 ¶¶ 3-5 (UA 251-52); Sainz-Funaro Decl. ¶¶ 3-4 (UA 472); Bastas Decl. ¶ 3 (UA 509); Filler Decl. ¶¶ 4-5 (UA 609); Schaitberger Decl. ¶¶ 4-5, 7 (UA 639-641).

13.    Plaintiff AFGE, for example, has negotiated agreements on the procedures DoD uses when determining which employees will work overtime; the procedures DoD will use when making staffing decisions, such as determining which employees will be transferred to new posts of duty or assigning work shifts; the procedures for DoD to follow when conducting a reduction-in-force ("RIF"), such as buyouts, early retirement, placement in other positions within DoD, or placement in positions in other agencies; and appropriate arrangements for employees who are exposed to safety or health hazards on the job. Gibson Decl. ¶¶ 81-103, 108 (UA 24-31).

14.    The issue of overtime is important to DoD employees. *Id.* at ¶ 85 (UA 25).

15.    Some DoD employees want to work overtime to supplement their income.  *Id.* at ¶¶ 85-86.  Others have competing concerns, such as family demands, and would prefer to reduce the amount of overtime they work.  *Id.* at ¶ 87 (UA 25-26).

16.    Some or all of the Unions have negotiated agreements on overtime procedures. *Id.* at ¶¶ 88-90 (UA 26); Ault Decl., Ex. 3 (UA 240-42); Bastas Decl. Ex. 3 (UA 529); Filler Decl. Ex. 2 (UA 631-32).

17.    Safety and health issues are important to DoD employees.  Gibson Decl. ¶ 94 (UA 27-28).

18.    Some or all of the Unions have negotiated comprehensive procedures and arrangements on behalf of the many DoD employees who perform hazardous or dangerous work, including workplace safety practices, personal protective equipment, training, and improved ventilation.  *Id.* at ¶ 95 (UA 28); Schaitberger Decl. Ex. 4 (UA 670-71); Ault Decl. Ex. 2 (UA 207-12); Brown Decl. #1 Ex. 1 (UA 261-63).

19.    Changing employees' work schedules over their objection can have adverse effects on those employees, affecting commuting, child care, and the schedules of spouses. Gibson Decl. ¶¶ 37-38, 76-78, 80-81, 99 (UA 10-11, 23, 24, 29).

20.    Some or all of the Unions have addressed these effects when negotiating with DoD on work schedules by devising procedures for determining whose work schedules should be changed and how, and by making appropriate arrangements for adversely affected employees. *Id.* at ¶¶ 74-75, 80-82, 101; Brown Decl. #1 Ex. 2 (UA 267-69); Bastas Decl. Ex. 7 (UA 573-75); Filler Decl. Ex. 1 (UA 614-16).

21.     A function the Unions have served for DoD employees is to be present during meetings where employees fear they may be disciplined, or at formal discussions between management and bargaining unit employees.  Gibson Decl. ¶ 54-56 (UA 15-16).

22.     Some of the Unions, such as AFGE and NAGE, have represented certain employees of Non-Appropriated Fund Instrumentalities ("NAFIs") within the DoD for over twenty years.   Gibson Decl. ¶ 15, 120 (UA 4, 35); Zeiler Decl. ¶ 11 (UA 335).  NAFI employees are entitled to negotiate pay, benefits and other working conditions to the extent that negotiation of such matters is not precluded by chapter 71 of title 5 of the United States Code, and their union representatives have negotiated contract provisions on these issues.  Gibson Decl. ¶ 15, 120 (UA 4, 35); Zeiler Decl. ¶ 11 (UA 335).

                                   Respectfully submitted,


Dated:  November 23, 2005          By:   /s/ Joseph Goldberg_____
                                          JOSEPH GOLDBERG, Bar # 291096
                                          Assistant General Counsel
                                          MARK D. ROTH, Bar # 235473
                                          General Counsel
                                          AMERICAN FEDERATION OF
                                          GOVERNMENT EMPLOYEES, AFL-CIO
                                          80 F Street, N.W.
                                          Washington, DC  20001
                                          (202) 639-6426


                                   By:   /s/ Sally M. Tedrow_____
                                          SALLY M. TEDROW, Bar #938803
                                          ROBERT MATISOFF, Bar #210294A
                                          KEITH R. BOLEK, Bar #463129
                                          O'DONOGHUE & O'DONOGHUE LLP
                                          4748 Wisconsin Avenue, N.W.
                                          Washington, DC  20016
                                          (202) 362-0041

By:  /s/ Susan Tsui Grundmann_____
SUSAN TSUI GRUNDMANN, Bar #433437
General Counsel
NATIONAL FEDERATION OF FEDERAL
EMPLOYEES, FD-1, IAMAW, AFL-CIO
1016 16th Street, N.W.
Washington, DC  20036
(202) 862-4400


By:  /s/ Daniel M. Schember_____
DANIEL M. SCHEMBER, Bar #237180
GAFFNEY & SCHEMBER, P.C.
1666 Connecticut Avenue, N.W.
Suite 225
Washington, DC  20009
(202) 328-2244

Attorneys for Plaintiffs

Of Counsel:

JEAN E. ZEILER
Senior Counsel
NATIONAL ASSOCIATION OF
GOVERNMENT EMPLOYEES, SEIU,
AFL-CIO
159 Burgin Parkway
Quincy, MA  02169
(617) 376-0220

JULIA AKINS CLARK, Bar #337493
General Counsel
INTERNATIONAL FEDERATION OF
PROFESSIONAL AND TECHNICAL
ENGINEERS, AFL-CIO
8630 Fenton Street, Suite 400
Silver Spring, MD  20910
(301) 565-9016

PATRICK J. SZYMANSKI, Bar #269654
General Counsel
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS
25 Louisiana Avenue, N.W.
Washington, DC  20001
(202) 624-6945

135970_1

Of Counsel:

JEAN E. ZEILER
Senior Counsel
NATIONAL ASSOCIATION OF
GOVERNMENT EMPLOYEES, SEIU,
AFL-CIO
159 Burgin Parkway
Quincy, MA  02169
(617) 376-0220

JULIA AKINS CLARK, Bar #337493
General Counsel
INTERNATIONAL FEDERATION OF
PROFESSIONAL AND TECHNICAL
ENGINEERS, AFL-CIO
8630 Fenton Street, Suite 400
Silver Spring, MD  20910
(301) 565-9016

PATRICK J. SZYMANSKI, Bar #269654
General Counsel
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS
25 Louisiana Avenue, N.W.
Washington, DC  20001
(202) 624-6945

135785_1