## Department of Defense (DoD) and Office of Personnel Management Meet with DoD Union Officials to Discuss NSPS Labor Relations System Concepts

### Meeting Summary

On February 26 and 27, 2004, DoD hosted a two-day meeting with representatives from employee labor unions to discuss and exchange ideas for the NSPS labor relations system. Representatives from the Office of Personnel Management (OPM) also participated in the meeting. The purpose of the meeting was to engage in meaningful discussions and interchange with the unions regarding the creation of a new labor management relations system for DoD, as authorized by the National Defense Authorization Act (NDAA) of fiscal year 2004.

A commissioner from the Federal Mediation and Conciliation Service (FMCS) facilitated the meeting.

Representatives from the following unions were present:

American Federation of Government Employees (AFGE)
American Federation of Teachers (AFT)
Association of Civilian Technicians (ACT)
Federal Education Association (FEA)
Fraternal Order of Police (FOP/NDW)
Heat and Frost Insulators
International Association of Fire Fighters (IAFF)
International Association of Machinists and Aerospace Workers (IAMAW)
International Association of Masters Mates and Pilots (MMP)
International Brotherhood of Electrical Workers (IBEW)
International Federation of Professional and Technical Engineers (IFPTE)
International Union of Operating Engineers (IUOE)
Ironworkers International
Laborers International Union of North America (LIUNA)
Marine Engineer Benevolent Association (MEBA & MMP)
Metal Trades Department (MTD)
National Association of Aeronautical Examiners (NAAE)
National Association of Government Employees (NAGE)
National Association of Government Inspectors (NAGI)
National Association of Independent Labor Unions (NAIL)
National Federation of Federal Employees (NFFE)
Seafarers International Union (AGLIWD/NMU)

Exhibit C                                                          0359

Sheet Metal Workers International Association (SMWIA)
United Association of Journeyman and Apprentices (UA)
United Power Trades Organization (UPTO)

Also present at the meeting were management representatives from the Military Departments, the Defense Logistics Agency, and the Washington Headquarters Services.

### Overview of Discussion of Labor Concepts

DoD began the meeting with a detailed overview of the labor relations concept paper that was provided to unions on February 6. DoD representatives stressed during the presentation that these concepts were not the final proposal, and pointed out that DoD solicited feedback and ideas from the unions on ways to improve the labor relations program in the Department. DoD stated that such feedback and input would be considered in drafting the official written proposal to be provided to the unions on April 20, 2004 (initiating the statutory process of collaboration).

The rest of the meeting focused on discussions of the concepts proposed by DoD. This included union comments and reaction to the labor relations concepts, as well as questions to DoD on specific concepts.

The major areas of discussion are summarized below. This summary is not intended to capture all comments and statements made during the meeting, rather it summarizes the significant issues discussed.

**Status of Chapter 71** – Union representatives questioned whether DoD had the legal authority to establish a labor relations system that was not consistent with Chapter 71 of title 5, USC. (Some unions asserted that this was not lawful.) DoD representatives stated that the NDAA authorized the Department to develop a new system for labor management relations in the Department, notwithstanding chapter 71.

**National Security** – Union representatives asked what the national security interest was in proposing these new concepts. DoD representatives stated that a modern, efficient, and effective system for labor relations which provided for streamlined and efficient processes for bargaining over changes to conditions of employment, quick resolution of disputes, while respecting the collective bargaining rights of employees would improve the Department's ability to carry out its national security mission.

**Concept of bargaining** – Union representatives expressed concern over the

2

Summary of DoD/OPM/Union Meeting

concept of "consultation" under the NSPS labor relations system, which they asserted was not consistent with the traditional definition of collective bargaining. Of particular concern to union officials was the lack of a third party "impasse" process, and the lack of term collective bargaining agreements. DoD explained that under the proposed concepts, bargaining would be accomplished using a collaborative, issue-based approach, as provided for in law, and that this requires a new "mindset" by both parties.   Under the proposed concepts, unions could have input in new or changed policies, which may include issues that are traditionally "non-negotiable." DoD also pointed out that unions would have an avenue to dispute outcomes of the bargaining process through the Defense Labor Relations Board.

**Definition of "significant impact"** – Union representatives expressed concern over the "significant impact" standard for duty to bargain for changes in condition of employment, and asked that this be defined in regulations. DoD stated that a definition had not been fully developed, however the thought behind the concept was to ensure that there was sufficient reason to begin the bargaining process.

**Defense Labor Relations Board (DLRB)** – Union officials expressed concern about whether an internal board could act independently in settling labor disputes. DoD representatives cited other internal boards within the Department that are required to act as independent decision-making bodies. OPM representatives pointed out that the Homeland Security personnel proposal included a similar internal board for resolving labor relation disputes.

One union representative suggested that the makeup of the board should include three management representatives, three union representatives, and one member jointly selected by management and unions. DoD noted this suggestion.

**Determination of Bargaining Units** – Union representatives objected to the proposed concept for determining bargaining units (that they may be described in terms of command structure, geographic location, and/or Component). Union officials expressed concern that this may lead to significant consolidation and reduction of bargaining units.

Union officials also objected to the standard for elections of bargaining units (over 50% member turnout with over 50% votes cast), recommending that DoD should retain the current standards for elections.

Several union representatives objected to new categories of employees who would be excluded from bargaining unit membership under the proposed concepts. DoD noted the specific concerns and indicated that the flexibility to structure bargaining

3

Summary of DoD/OPM/Union Meeting

units could improve the efficiency of working with unions, particularly when the arrangement facilitated dealing with similar problems and issues. DoD made a clear statement that it was not the intent to consolidate unions.

**Employee Complaints** – Union representatives expressed concern over how individual employee grievances would be handled under NSPS. DoD officials stated that the employee appeals process would be streamlined under a single process (replacing negotiated grievance procedures), but that the details of that system were under development. DoD pointed out that the employee complaints process would certainly provide for due process. Several union officials stated that the labor relations system should provide for a negotiated grievance process with binding arbitration. DoD noted the recommendation.

**Fee-for-Service Concept** – Several union representatives objected to a proposed fee-for-service arrangement for non-dues paying bargaining unit employees. DoD stated that this was proposed to address union concerns over the requirement to represent employees who do not pay dues. Union officials stated that they believed this would decrease union membership, which would financially hurt the unions. DoD noted this concern.

**Dues Collection** – Union representatives objected to proposed language regarding management liability for administrative errors in dues withholding. DoD representatives clarified the intent of this provision, stating that the purpose was to identify a fair mechanism for reimbursing employees whose dues have been withheld in error.

**Union Access to Information** – Union representatives expressed concern over the proposal to use the Freedom of Information Act procedures for providing unions information for labor relations purposes. DoD stated that the intent was to use an existing, known process for providing information. One union official recommended that the current process should be followed, but suggested that the standard for granting access be based on "relevance." DoD noted the recommendation.

**Official Time** – Union representatives expressed concern over changing the procedures for authorizing official time, and recommended that DoD retain the status quo.

### Next Steps

DoD and OPM representatives thanked union representatives for attending the meeting and providing input to the process, and welcomed additional input for

4

Summary of DoD/OPM/Union Meeting

ways to improve the labor management relations system.  DoD stated that the information and feedback from these meetings would be taken to heart, and fully considered in drafting the written proposal for a new labor relations system in the Department.

Summary of DoD/OPM/Union Meeting

0363

**CONFIDENTIAL - FOR UNION USE ONLY**

DEBORAH R. KLEINBERG
COUNSEL

SEAFARERS INTERNATIONAL
ION - AGL/IWD
SEAFARERS PLANS

5201 AUTH WAY
CAMP SPRINGS, MD 20746
(301) 899-0675, EXT. 4410
FAX (301) 702-4411

**SUMMARY MEETING NOTES**

Meeting Between DoD and Unions Representing DoD Bargaining Units
February 26 and 27, 2004
Hyatt Regency Hotel – Arlington, Virginia

Dear Colleague:

Below please find notes summarizing the meeting with the Department of
Defense to discuss the National Security Personnel System concepts. This is a
transcript of handwritten notes taken during the meeting. Because of the length of the
meetings and the number of speakers, it was most difficult to develop a verbatim record
of our discussions. This document is only a summary of the meeting. This document is
meant to be distributed only to the Union representatives.

February 26, 2004
Morning Session: 8:30 a.m.

DoD:    We would like to talk with people who are selected to sit at the table.
Everyone else will be observers. We will be talking with them because
they will be able to talk with the Union representatives at the table. That
way you will be able to get your issues heard. The Firefighters have been
asked to represent Unions with no consultation (NCR) rights at the table.
There is a very short time for implementing the system. It must be done in
October. There is a very short time table to engage in discussions. If
Unions do not join DoD at the table you will not have an opportunity to
comment.

Union:    No one wants to miss the opportunity to discuss this with you. These
proposals have done one good thing in that they have brought every DoD
Union together in the spirit of solidarity. The first issue of business is to
determine whether there will be a bilateral relationship. If you unilaterally
make decisions about who will be at the table it is a problem. We know
you need order and we need to come up with a system where there will be
order but everyone will have an opportunity to speak. Right now DoD is
unilaterally setting the rules about how to impose the meeting order.

DoD:    We were clear that DoD would afford a pre-collaboration process, and that
those Unions who have consultation rights (CR) would be at the table. The
Firefighters were chosen to represent those NCR Unions. We are not
forestalling anyone who has a right to speak.

Page 1 of 38

Exhibit D

0364

**CONFIDENTIAL - FOR UNION USE ONLY**

**DoD:**  We have two days to dialogue on concepts and seek Union input. DoD will have a formal process to propose on April 20. October is set for implementation.

**OPM:**  OPM is providing guidance to DoD. We are observers. OPM was not involved in the development paper. OPM will provide technical support to DoD. OPM is very interested in hearing the Unions' opinions and ideas about ways to move forward.

**DoD (1):**  This is not a negotiation. This is about giving information. We have provided enough breaks in the agenda. I do not want to use the word caucus because it seems to connote bargaining.

**DoD (2):**  DoD is only keeping a summary of the discussions and it will be shared and put up on the NSPS website.

**DoD (1):**  I wasn't going to be making point-counterpoint on the record. Perhaps if we can get a 24 hour turn around on comments from the unions regarding the summary we can accept input. DoD wants it done almost instantaneously because they have concerns about what if another group puts out something different.

## A.    DISCUSSION REGARDING THE CONCEPTS PAPER.

**DoD:**  Tim Curry read from the concept paper.  No detailed comments were offered by DoD representatives.

**DoD:**  In every case as we were building concepts DoD thought of how it affected national security.

1. Labor Relations Administration. There will be a Defense Labor Relations Board. The Board will function with independence and autonomy within the Agency. DoD will establish a firewall to ensure independence. DLRB will hear labor disputes and employee disputes. Union members will also have seats on the Board.

2. Looking at fee for service arrangements if someone does not join the Union.

3. Looking for a new way to consider how a bargaining unit is formed. DoD wants Management and Union to try and work among themselves to solve issues and if they can't the matter goes to the DLRB.

**CONFIDENTIAL – FOR UNION USE ONLY**

DoD wants 50% vote in support of a union to get a union elected. Maybe an outside person could help.

Work leaders are taking on more responsibilities and would need to be out of the unit. Confidential employees will also be removed from the unit. HR clerical employees as well.

4. Bargaining – "Significant" will be defined using a higher standard. Unions will be informed but DoD is not obligated to bargain about any change.

5. Scope of Bargaining – 7106(b) are no longer permissive subjects. They are added to management's rights under 7106(a).

6. If a Union contract is expired it can no longer roll over.

7. DoD is looking to break away from Chapter 71 in order to make this change in the dynamics. We are proposing not to employ any provisions of Chapter 71.

**AFTERNOON SESSION**
**12:30 p.m.**

Union:      Could you explain why you state that Chapter 71 is waiveable?

DoD:        We are not going to enter into a debate about what is right. If you have any suggestions about content you can give them. Otherwise we will not go down that road.

Union:      Have you had attorneys review this?

DoD:        We are going to talk about concepts. We have attorneys participating in the process. We're not here to talk about whether this is legal or not. I'm not willing to tell you why it is legal. I'm only telling you what the concepts are. We are just here to talk about content proposal not whether it is legal.

Union:      Can you give us the rationale as to why all of Chapter 71 is gone?

DoD:        We believe we will have the ability to discuss this.

**Union:**    Will we be getting anything from the DoD legal office?

**DoD:**    If your position is that it is illegal then let's move on and we will note that you think it is illegal.

**Union:**    Is it fair to say that you are coming into the process with the thought that everything you are doing is legal?

**DoD:**    Yes, I believe it is legal.

**Facilitator:**    She is not going to articulate anymore than this.

**Union:**    On page 7 it notes an end to collective bargaining as it has been understood. Doesn't the statute say there must be collective bargaining?

**DoD:**    We believe that all the concepts are legal.

**Union:**    What is the national security issue that led you to develop the concept?

**DoD:**    Everything we do in the Department is related to national security. We are not going to talk about each item, not the justification or the reasons for the legislation. I'm here to talk about the concepts about collective bargaining as it is described on this page.

**Union:**    We have been asked to agree to certain changes.

**DoD:**    I'm asking you to react to the concepts, the terminology. The concepts are what I want to discuss. The national security question is not to be discussed here.

**Union:**    It is clear you are refusing to talk about the fundamental issue.

**DoD:**    You are not here to discuss this point. We are here to discuss the concepts.

**Union:**    Even if we are of the mind to reach an agreement, how can we do this unless we know the impact of this, unless you can answer our questions?

**DoD:**    You stated that as a statement. You didn't ask a question. We are not going to discuss national security reasons.

**Union:**    This is not consultation or bargaining. When you're having a consultation and you are asked a question it means I usually ask a question and the

CONFIDENTIAL - FOR UNION USE ONLY

other party responds. I need to know this to understand how I can make a proposal.

**DoD:** I can talk to you about why we are trying to change but I'm not going to talk to you about this because everything is related to national security. We are only going to talk about the concepts we set forth.

**Union:** We have a basic need in the interest of fairness to understand the rationale behind these issues. We need more specifics. We can build our concepts on yours in a joint fashion.

**DoD:** We can talk about why we're discussing consultation but in terms of why we're seeking consultation is because we want to change faster than we have in the past. DoD has taken years to change policy at local level. If we deal with issues at the national level than we can go to the local level. It's a different thought process and I want a similar process at both levels. I don't want to have to wait for contracts to open up.

**Union:** When I look at that reason, it can be addressed.  You said there is a special national security concern. We think it's our job to give alternatives more palatable to our members. Consultation is a term of art. National level bargaining says that. There is 30 years of precedent that says that consultation is not bargaining. If you want to do collaboration issue based bargaining, maybe that would be better.

**DoD:** We are redefining what this term means. Just because something is a term of art doesn't mean that we don't want discussion. We are not saying we want a union free environment.

**Union:** I am at a loss to see what national security is being breached or how it is impacted by teachers.

**DoD (1):** We can talk about what the concepts mean and how it would play out at the local level.

**DoD (2):** Management would go through a notification process. If the Union wants to consult the Union could make any comments and if management is in agreement it will be adopted. During this process if the parties wanted to bring in ADR that could happen.

**Union:** Why when management consults with labor and there is a disagreement the issue shouldn't be sent to impasse and live with the impasse panel decision?

**CONFIDENTIAL - FOR UNION USE ONLY**

**DoD:** If you look at the process you're looking at management coming in a good faith effort. If management sees the Unions' suggestion is a good business decision then it could be adopted. The DLRB is the system. If the parties can't resolve the issue then it is implemented.

**Union:** Why is this fair?

**DoD:** This is the process we have chosen.

**Union:** So we are talking about consultation but not in the normal sense of the word. In your concept, bullet 7, it is being redefined to mean something new.

**DoD:** Yes, the concept will be different. There will be similarities. If DoD comes to the Union prior to finalization of a policy you are free to submit your comments. When you submit your comments we look at it and give it due consideration. We adopt when we can and say it if we can't adopt it. Where concerns are considered, there is a process of dialogue to try and reach resolution. The new system goes beyond this and there is a right to go to the DLRB.

**Union:** Is there a requirement of you to go beyond this? Is this consultation plus?

**DoD:** We are trying to move it from adversarial process to a collaborative process.

**Union.** The term significant impact is used, what is the meaning? Is there a definition?

**DoD:** It is something that impacts not 1 or 2 people but a majority of people. The effect or influence affects a significant number. It is event driven. When we put procedures together, there would be a list of topics that people could get an idea from.

**Union:** How as a union official can I provide you with a proposal about the definition of significant impact? When will we have an opportunity to see your proposal?

**DoD (1):** That would be part of the process on April 20.

**DoD (2):** The DLRB can't order status quo ante remedy ever, but DLRB could order the parties to go back to the consultation process.

**Union:** Have you developed procedures for the DLRB?

CONFIDENTIAL - FOR UNION USE ONLY

**DoD (1):** When we developed the options we had internal discussion about it but we asked you to give us concepts too to suggest how it could be developed further.

**DoD (2):** It's in a conversational context first. We have changed collective bargaining to more than consultation. We took the good ideas from the partnership process and moved it towards consultation.

**Union:** Are you combining consultation with issue based bargaining?

**DoD:** It's not going to result in traditional collective bargaining agreements but the discussions will result in a policy document.

**Union:** All the times I've sent things in to DoD it was never used by you. We're not so sure we want to trust you in the consultation process. I'm really confused now. It doesn't matter what federal employees do. Their whole life has changed.

**Union:** At some point in the collaborative process you have to say what your interest is in making a change. At some point you have to discuss national security so we know how to make a proposal for change or even if it is in our interest to make such a proposal. Will this happen on April 20th.  Are you relieving the collective bargaining burdens of the employer?

**DoD:** If you are asking how something will apply or change you can do it now.

**Union:** Let's say, in Houston DoD says the hours have to be increased.  It's not a national security issue.  How does this happen in the local context?

**DoD:** When Management notified the Union what change is needed then the Union has a right to give its opinion.  If it makes sense, Management should adopt it.

**Union:** What's the standard that the DLRB uses?

**DoD:** DLRB will determine if the process was followed.  Was the Employer acting in good faith?  If DLRB determines no, they can order the parties back to consultation. Ultimately the final outcome will be that Management implements its policy if the parties can't agree.

**CONFIDENTIAL - FOR UNION USE ONLY**

**Union:** What is the difference between what we are doing today and consultation later? If you told Congress you were going to bargain, how can you explain this?

**DoD:** This is a pre-collaborative process. It is not required by law. We are offering you an opportunity to submit your comments. We haven't engaged in the statutory process yet.

**Union:** You're just going to hand down a program from on high. We don't have an equal relationship and what we are doing here isn't collaboration.

**DoD:** This is not part of the statutory process. We are trying to work with the Unions in the room and seek your input. There are two different statutory processes. The answer about why you are here is to give us your ideas about what would improve the concepts. April 20 is the beginning of the statutory process.

**Union:** We have a lot of people retiring from our craft. We have a training program. We have 50 trainees and put a lot of time and effort into them. They have heard about what we are doing here and they are already planning to leave. Our people lined up and volunteered to go to Iraq. Do you think this will still happen if you implement this system?

**Union:** What is the incentive for local Management to sit down if there is no meaningful penalty?

**DoD:** They must go to the DLRB; the whole system is major mindset change. There will be training of managers. The tool for the Union is to go to the DLRB.

**Union:** How does this system meet the needs and balance the needs of both parties?

**DoD:** This is the opportunity for local unions to make recommendations about changes to these concepts. Management will still have to listen to your concerns.

**Union:** If you think you will be able to implement this you are not realistic. What gave you the right to change the definition of words over the law? Why can't you tell us how this relates to national security?

**DoD:** We have had a productive conversation when we proceed to talk about Union and Management relationships. We can discuss how things will play out and talk about the specifics of concepts.

CONFIDENTIAL - FOR UNION USE ONLY

Union:     Since all of the Unions have had collective bargaining agreements all employees have delivered, repaired and maintained the most sophisticated weapons systems in the world. Can DoD show us where any collective bargaining agreement has interfered with this? In our bargaining units many of these employees were union leaders. You have discretion right now and the authority. You can say let's apply Chapter 71 just as it exists and if it fails then we can consult and say changes should be made. Then we can discuss options.

Union:     You are talking about moving to a collaborative process to give us more. Will we still have national consultation rights?

DoD:     ACT is impacted by national level bargaining procedures. We haven't specified any criteria but it is a good place to start. For those Unions at the national level this has not been flushed out. For NCR Unions we don't know how this will play out.

Union:     What I'm having trouble understanding what happens to the local level after National Consultation rights are met? How does this help local level who can only consult?

DoD:     Since no answer we give will be acceptable, there is no point in answering.

Union:     After consultation you are saying the policy is developed then DoD can override the policy.

DoD:     The document that is developed is policy but after it is developed; if another new policy is developed then the Union would have another opportunity to comment if we make any change we have to give notice to the Union.

Union:     If consultation results in policy does it affect collective bargaining law?

DoD:     NSPS is the new labor relations system.

Union:     If DoD implements a policy and you say it's not significant and the Union says it is significant do we go to the DLRB.

DoD:     Yes.

Union:     I am confused about the pre-collaboration process.

0372

**CONFIDENTIAL - FOR UNION USE ONLY**

**DoD:**    The collaboration process formally starts in April. Now we are trying to seek input.

**Union:**    If we go to the DLRB and you've sent back things that say we considered all of your concerns, will this supplant the current process?

**DoD (1)**    The process is that when the document is provided to you at the local level and Management wants to make changes, notice is given to the Union. If the Union feels it is unfair the Union can go to the DLRB. Two seats on the board are union seats.

**DoD (2)**    The managers will give a rationale – a business related reason why we can't accept your proposal.

**Union:**    Have you considered implementing Chapter 71 instead of this new system?

**DoD:**    If the Department wanted to stay with Chapter 71 we would have, but the new legislation gives us freedom to change the system.

**Union:**    Please show us on each element of the concept paper how this creates a problem with national security.

**DoD:**    We are not here to address the issue of how things affect national security.

**Union:**    Your process is not consistent with law. It is not good for national security. Checks and balances are necessary and good for national security. It's easy  for you to write to us and just say that none of these things hurt and it's all good for business. The employees will not find this to be a credible system. It may be Management;s opening proposal but it is not Management's best proposal not to have an independent third party in the system. If you want time limits or faster speeds, we can help you. This is too slanted even for you. We can spend sixty days on a policy on the national and local levels and you can just override it.  We did make changes in the law for doctors and nurses and excluded from bargaining very specific things. They still have a bargaining unit with less rights but it works for them. Let us know what it is that DoD needs. This is not going to work at the local level. I'm sure you are frustrated too.

**DoD:**    We have to agree to disagree on a number of points.

**Union:**    What will happen with the sixty day comment period? They will just implement the policy without considering comments. If these things are

**CONFIDENTIAL - FOR UNION USE ONLY**

put out there for comment, then give us real proposals. If it is not serious then give us serious proposals so we can move on.

**DoD:**  They are serious proposals and the ones we put on the table so your constructive comments will be useful.

**Union:**  I've always gone to the bargaining table with a sincere desire to reach an agreement and because we have listened we have had a better agreement. We need to know how DoD sees this as creating a problem for me. If we don't address the root problem we can't create any meaningful proposals.

**Union:**  I've worked for the federal government since 1969. I have never heard of a pipe fitter or a power plant worker breaching national security. But I have heard of a higher level official that has breached security. I want to protect the government and that's why I can't support DoD's comments.

**Union:**  Can you give me clarity about all of the things you can't consider. If we give you a proposal, what would you consider a proposal you can accept? Can you show us a concept you can carry back as an example? I do want to understand and I do want to collaborate. I do not understand. You are not accepting anything we are saying.

**DoD:**  I'm not understanding because only Chapter 71 has been proposed. You prefer an external board and that will be taken back for discussion.

**Union:**  Why don't we have a third party independent look at these disputes? You need to show your hand to a certain point so we can get to collaboration.

**Union:**  We are replacing Chapter 71 with this new system. We implement consultation and in sixty days if we can't agree we go to the DRLB. The scope of what we can talk about is limited because it must be a significant impact. Assume we get over all of the hurdles and the next day what we agreed to can be overridden by issuing a regulation.

**DoD:**  You're talking about an adverse action, a disciplinary situation. This is a discussion for another day. There is nothing for me to discuss. Our appeals process is currently under development. This doesn't contain anything about page 7. There is a different process to deal with employee appeals. NSPS appeals process is under development but it's not in the NSPS new system.

**Union:**  Shortly after 9/11, I along with 20 other labor folks met with Secretary Rumsfeld and had a discussion. Secretary Rumsfeld asked for union

support to overcome this tragedy. Rumsfeld said he looked forward to our advice and counsel in the future to keep our country strong. Remember what you said back then. If something is broken let us know, otherwise let him know this is not going to work.

**Union:** I've been before the federal impasse panel and if DoD is going to introduce new concepts we need to know the demonstrated need so we can help fix things.

**DoD:** We continue to go around this issue. We can talk about what change will impart but we have legislation which allows us to make these changes. We can give you what we think will make things better.

**Union:** You said there is no requirement for this meeting. Doesn't the statute require us to meet?

**DoD:** We're here because we want to try and explain the concepts and how they will be implemented and not to just hand you a piece of paper to get your reaction. We want to explain the concepts.

**Union:** Why are you reluctant to discuss the concepts as they relate to national security?

**DoD:** We are here to discuss the concepts and what facilitated the change in the rule.

**Union:** When a party wants change they explain the need. You have not explained a legitimate concern regarding unions and national security.

## B. LABOR RELATIONS ADMINISTRATION

**Union:** Employees have a right to a grievance procedure.

**DoD (1):** We have moved the grievance procedure out of that part of the labor management relations system and moved it into a labor relations appeals system.

**DoD (2):** On page 11, I did address this earlier today.

**Union:** If you wanted to make any changes at all didn't OPM/DoD have to initiate this by January 23? DoD excluded OPM and initiated the process with the 8 CR unions. If you didn't initiate the process it may go to court.

**CONFIDENTIAL - FOR UNION USE ONLY**

**DoD:** We did meet the letter of the law - do not interrupt me. You can ask me a question as to how it will apply to a certain situation and how it will work.

**Union:** If OPM was involved on January 22, then our claim is out of the question. Were they involved?

**DoD:** Your question was answered 5 hours ago when the OPM representatives spoke.

**Union:** Are you saying that all 40 unions were involved?

**DoD:** I need you to focus on paragraph one. We are not getting into a debate about what happened on January 22. What specific issue are you trying to approach?

**Union:** You say that for national security reasons you want to change to a DLRB board. How will this better serve national security?

**DoD:** I can respond to it how I see fit. We have an opportunity to change the dynamics on how we do business. Both sides don't like FLRA so we can establish a new board. It will allow Management and Union to try to solve this issue.

**Union:** The Collins amendment never made it into law but it suggested time limits for the FLRA, wouldn't that help here?

**DoD (1):** That would have helped but we need help in the process. Total impasse would stop the mission. We need finality and there are more pieces of the FLRA process. The timing would have helped but it wasn't enough.

**DoD (2):** When we looked at it and it didn't go far enough because how the system drives the dispute and the nature of relationships with local unions. We need to change the whole system and mindset.

**DoD (1):** We would be interested in knowing from you should we be retaining the FLRA system with some changes. Your ideas need to come forward and we need to know what needs to be fixed so we can go to the FLRA if they would agree to it.

**Union:** This is exactly what we are interested in doing.

**Union:** The FLRA does need tweeking but the FLRA has 30 years of law which shouldn't be trashed. This could be looked at but the DLRB will be paid by

**CONFIDENTIAL - FOR UNION USE ONLY**

the DoD. They are not independent. If there are seven positions and the Union has only two chairs, how is this balanced?

**Union:** Can the DLRB have three management representatives, 3 union representatives and an independent person on the board?

**DoD:** One reason we propose this is that we have examples of bodies that have review authority and no one can influence them and they to operate with independence and autonomy. If you want to make suggestions about 3 management representatives and 3 union representatives and one independent, this is the kind of stuff we want to hear from you.

**Union:** Concerning pay for performance and pay banding what needs to be fixed? Judge us on our performance and how our students are doing.

**DoD:** The human resource process we would like to change and make better. We are not saying employees are not doing a good job, we want to improve the system and this proposed system is fair. We are looking for suggestions back form you. We have different perspectives but if we can meet in the middle we will have a better system.

**Union:** I propose you maintain the current system of grievance if you want to do national level bargaining. You need to negotiate the right to go to arbitration; the results are not that different. It gives the system more credibility. If you do it the other way, it looks like union busting.

**OPM:** Since we keep coming back to the national security issue and status quo these are not on the table. In the last half hour there were good proposals. The document is not set in stone. The next six weeks are wide open and you should try to develop proposals, you can still take issue with the whole document.


**Adjourn**


**February 27, 2004 Morning Session**

**Union:** Will the FLRA cases be relied upon by the DLRB?

**DoD:** It would be available for the board to look at. There is a statement in NSPS that says the process for employee appeals will be unified and this

CONFIDENTIAL - FOR UNION USE ONLY

process is still under development. It is not part of the April 20 submission. DoD representatives are working with the MSPB about what the process will look like. It will then be shared with the Unions.

**Union:** How does the DLRB meet the test of independence?

**DoD:** The decisions will be independent.

**Union:** If you have an internal board it does not meet the guiding principles. Rather than have DoD hand decisions down, why not let the board create an independent labor management program. This would be the best approach to restructuring.

**DoD:** There are two different pieces. We are building a system that DoD supports but it will be independent. DoD wants labor input but DoD builds the system and applies the rules.

**Union:** Doesn't this mean it's a house union? It's not bilaterally established. You tell them what to do but it doesn't bring about peace and harmony that is expected in the labor management relationship or bring about an equal footing. Why would he want to help you redefine a program that is contrary to the guiding principles?

**OPM:** The proposal for DHS was developed by OPM and DHS and has a similar provision. How could it be independent? The parallel is the FLRA. It's independent but does not have free reign. Why can't an internal body be independent just because we have a proposal to establish rules that were set not by itself. It is not really different that the MSPB or the FLRA.

**Union:** Would it be acceptable to DoD to have an arbitrator be independent?

**OPM:** Adjudicators can be independent, even if someone is appointed by the Secretary of Defense, rather than someone appointed by the Senate. They are independent even if they apply a set of rules applied by the DoD under its authority.

**Union:** But there is no judicial review.

**Union:** Where would the board be located?

**DoD:** There hasn't been a decision about where it would be located.

**Union:** OPM left the Senate hearing before a senator expressed his contempt that a board appointed by the DoD would be worthless. I don't think there is a

**CONFIDENTIAL - FOR UNION USE ONLY**

loose analogy to the FLRA and an internal board implementing DoD rules. What is OPM's opinion on eliminating the grievance and arbitration process?

**OPM:** I can only speak to you about what we are doing at DHS. DHS is going to retain the grievance and arbitration process. DHS will also retain MSPB procedures and have adverse actions funnel there.

**Union:** Is OPM in favor of keeping collective bargaining agreements?

**OPM:** I don't know if it is useful to contrast what DHS is doing. What works for DHS may or may not work for DoD.

**Union:** I thought that what DoD proposed is to be part of OPM discussions.

**DoD:** This is not what we are here to address. We are not here to address what OPM thinks (Union asked that OPM be allowed to finish its statement). It is my opportunity to respond to this, not OPM's.

**Union:** I am asking OPM what is his position I didn't ask DoD to answer the questions for OPM.

**OPM:** What we propose at DHS may not be applicable to DoD. We are just getting involved with working with DoD. George just got involved this week.

**Union:** This is only DoD's document so far?

**OPM:** OPM was not involved in the development.

**DoD:** I'm responsible for the development of this system and I can respond to this issue. This is a DoD meeting and I am a partner with OPM and I will respond if I think it is important to answer a question.

**Union:** If we get into court or before Congress you will go in and say that this was a joint OPM/DoD meeting.

**DoD:** You have asked the same question and you were told time and time again.

**Union:** What if the board has to respond to the rule changes by DoD? What is the board member's term of service? Do they serve at the whim of the Secretary?

CONFIDENTIAL - FOR UNION USE ONLY

**DoD (1):**     We have not talked through the time periods of service of the board members.

**DoD (2):**     Do you have suggestions to change FLRA process?

**Union:**     I don't think it's a question of a complete change.

**Union:**     What difference does it make if the DLRB decisions can be changed by DoD?

**DoD (1):**     The Board can order the parties back to consult but if management wants to implement its decision it can.  This will take a big change in mindset.

**DoD (2):**     If there is a new policy issued it goes through due process.  Many policies can get issued but if there is a disagreement, the DLRB can get involved.

**Union:**     The FLRA case decisions can be looked at.  How will DLRB use these decisions?

**DoD:**     The only part we thought about was that FLRA case law would be used if DLRB should chose to do so.

**Union:**     Is grievance and arbitration off the table?  Is this your final decision?

**DoD (1)**     No definite determination has been made about how appeals will be handled.

**DoD (2)**     No decision has been made.  We heard you yesterday that you would also suggest to have one negotiated grievance system.

**Union:**     Will DLRB board members be appointed with the advice and consent of the Senate?

**DoD:**     No.

**Union:**     If arbitration is not off the table, is it available to discuss it now?

**DoD:**     No, it's not available to discuss now.  When we have that piece ready we will talk about it then.

**Union:**     We can't buy into this process until we know what you plan for the grievance and arbitration procedures.

**DoD:** If DoD has no standards developed DLRB members could then go look at outside cases.

**Union:** I can see this proposal seems to be efficient and streamlined but there does not seem to be balance for employees. Do you propose to eliminate hearings and charge filing systems? Where is discovery or meaningful investigations? Where is due process?

**DoD:** I can see that as a possibility but this would have to be looked at when we develop regulations. This time limit is for filing the complaint. We don't say when decisions have to be made.

**Union:** So is this a misprint on page twelve?

**DoD:** What you are looking at is the first part on page 11. This is something that goes directly to DLRB. That doesn't mean that the decision has to be made in 30 days.

**Union:** Who if anyone will have time to conduct an investigation? How can any fact finding occur? Where is this built into your process?

**DoD:** If a complaint is filed with Management, Management would have to do its own investigation. Right now hearings are not spelled out. You can have mediation and try to get the parties to resolve the issues. The DLRB may or may not be able to have a hearing.

**Union:** I'd like to propose that any system have fundamental rights to due process for employees.

**Union:** Number one and number 11 calls for an appeals process for employees and number 11 calls for a process that lacks due process. What's your plan for rolling this out if it is included here but not in the submission on April 20?

**DoD:** The goal the department is seeking to achieve is a streamlined process. That's our goal and to consolidate. So the folks working on the appeals process are still working. We will talk to you about this later on.

**Union:** Would the department be open to collective bargaining and binding arbitration?

**DoD:** We've heard you loud and clear that you need binding arbitration. We are not saying no to it. Also, we know it's important to you as to how collective bargaining is defined.

CONFIDENTIAL - FOR UNION USE ONLY

**Union:** In any labor relation system we need to talk about binding arbitration and due process and we need to understand the rest of the system.

**DoD:** We don't have it ready yet.

**Union:** If there is a statutory violation can the Union raise the violation through the Union complaint process?

**DoD:** That's a possibility.

**Union:** Since the parties seemed to be deadlocked in their positions about information regarding the employees' appeals process, would it be possible to take 10 minutes from this afternoon's agenda and reframe the conversation? DoD employees are working on the appeals process; however, Union representatives need this information to be able to create meaningful proposals and have better understanding of the system as a whole. Maybe we can take time to discuss the possibility of receiving this information and moving the April 20 deadline so we could get this information and make our proposals.

**DoD (1):** We could discuss this but the April 20 date will not be moved.

**DoD (2):** You can make your proposal.

**Union:** How can you get everything streamlined when FOIA requests can take up to 3 years to get information?

**DoD:** Our goal is to have a single uniform process. The standards that have been established through case law is convoluted and confusing.

**Union:** The FOIA standard now is whether the information is in the public interest. It's unworkable now because it is always stated that nothing is in the public interest. We should just say that the standard should be one of relevance. This standard can be enforced by the DLRB easier.

**Union:** Appeals and due process, these two issues are intertwined. What is the urgency? Let's discuss it one at a time. Why create an artificial deadline? You know we can't separate the two issues. Is it possible for us to have the final product before April 20?

**DoD (1):** There's no final product on that.

**DoD (2):** April 20 is not an arbitrary date. This date allows us to get the system together to implement by October.

CONFIDENTIAL - FOR UNION USE ONLY

**Union:** Why not allow us to be part of a working group discussion to come up with something both parties can agree to?

**DoD:** We are not cutting you off. We need to get clear on how DoD wants to handle our priorities. We need to work in our system first without Union input. You will get two separate products – a labor system and an appeals system and that's it. The answer to your question is no.

**Union:** Did you give the NSPS document with the exception of the appeals system to OPM yesterday?

**DoD:** No.

**Union:** I misunderstood.

**Union:** Are we getting together with you again?

**DoD:** I don't know.

**Union:** You've got to realize that is irresponsible to provide us with one system and not propose the other. You should withdraw part of number one and all of number 11 and get us together again.

**DoD:** I disagree.

**Union:** How will you roll this out?

**DoD:** We won't talk about the employees' appeals process here.

**Union:** But you are making us talk about it now and you are also saying that you will not have it by April 20. You need to give us an idea of how it will work.

**DoD:** We only put it in the document form so you would understand that it is in the system and its part of a separate appeals structure. There are three parts of the system: (1) the main human resources; (2) the labor management relations system; (3) an appeals system that's not yet developed.

**Union:** Somewhere down the road will we know our members' core rights.

**CONFIDENTIAL - FOR UNION USE ONLY**

**DoD:**      We are in the process of developing how it fits together. We haven't finalized what it looks like, we have been very clear that this will be issued based discussions. A policy will be put in place and this is how it will operate.   The DLRB will be an independent third party that would look at disputes that need to be reviewed.

**Union:**    Tim said he heard us but now you are telling us that it is not going to be part of the labor relations system.

**DoD:**      We are on a fast track to implementing this process.  We have established April 20 to set forth the regulations to allow you the statutory response time.  We are trying to implement the entire system by October.  We are taking back all input and will consider it.  But we have not developed employee appeals part.

**Union:**    Are all the collective bargaining agreements void in October?

**DoD:**      We don't know today but by the October time frame where agreements are in place, the collective bargaining agreements will be in place only for those things not covered by DoD policy.

**Union:**    You are telling us that you have already decided, as you separately decided about streamlining your systems.  You should respect employee rights.

**DOD:**      We have stated that we are respecting employee rights but it doesn't mean the grievance system has to remain the same.

**Union:**    What happens to all existing employee complaints in October?

**DoD:**      We don't have the system built yet but existing complaints will be transitioned.  We will have to look at how the cases are in the process to determine what happened to it and how it will continue to proceed under the collective bargaining agreement.

## C.    EMPLOYEE RIGHTS

**Union:**    What does a fee-for-service have to do with national security?  Why do we need to have a fee for service process, and how do you envision this working?

**DoD:**      In terms of fee-for-service we understood that Unions had concerns and we built this into the program thinking that this is something

you would like to see in. If it is your feedback you don't want it in we will take it back.

**Union:** I would not like to see it in.

**Union:** You indicate that you heard this was an issue for the Unions. Where did you hear this?

**DoD:** This was documented in GAO reports. These studies cited Union offices complaining about having to represent non-union members.

**Union:** This sets up two systems - a free complete system employees can use on the clock but if you go to the Union you have to pay a fee.

**Union:** Every union in this room has been certified as an exclusive representative. Is it DoD's intent to have a single union that represents all employees working for DoD?

**DoD:** No, you have to look at what is in the proposals for Unions to represent the unit. Maybe it's streamlined in the lower level components.

**Union:** Hasn't the Navy already filed a petition for a single union representative?

**DoD:** What the Navy is doing is a Navy decision.

**Union:** Won't this happen to everyone in this room? We are short-lived under the proposal set forth under these new regulations. Every time we make a comment to you we are driving a nail into our own coffin.

**DoD:** I don't agree with you.

**Union:** The Union's obligation is to represent its members. Unions are requested to represent all employees in the grievance process. If you combine them all into one system. How will we operate?

**DoD:** It gets back into the fee-for-service. If an employee is not a member you do not have an obligation to represent anyone.

**Union:** How has the department contemplated the agency fee?

**CONFIDENTIAL - FOR UNION USE ONLY**

**DoD:**     We considered it and it goes to the consensus to give employees a choice rather than to force anything on them.  How do you see it?

**Union:**     You could do it just like fair share.

**DoD:**     I think it's a possibility.

**Union:**     How would it work in the right to work state?  What is your general philosophy?

**Union:**     Do you intend to consolidate units/installation by geographic area?

**DoD:**     No.

**Union:**     Does bargaining collectively mean the same as the definition in Chapter 71?

**DoD:**     We understand your position but don't support the concept.

**Union:**     Will you publish definitions in the regulations?

**DoD:**     Yes.

**Union:**     Do you understand that lack of definitions is problematic for us?

**DoD:**     Yes.

**Union:**     Did you include any other Union concerns besides fee-for-service?

**DoD:**     We are looking at all the pieces.

**Union:**     Is it the intent that fee for service results in deprivation of official time for union representatives?

**DoD:**     No, overtime is provided for.

**Union:**     In number two, official time, when you say situations as requested by the Union.

**DoD:**     Yes, for representation purposes.

**Union:**     In terms of number two, the only right employees have is to pay money to the Union.  This is not a fundamental right. Are you

**CONFIDENTIAL - FOR UNION USE ONLY**

redefining the term 'right to organize', etc.? Is there any model that you took this from?

**DoD:** No, it comes from NSPS law. We are putting it in the document to recognize that.

**Union:** Is there a definition?

**DoD:** No. We were basically looking to try to change the standard. If you have a small turnout in an election it would be the driver for everyone. If you have a suggestion for a number give us a number.

**Union:** The majority rule has worked for 200 years.

**Union:** You need to go back and revisit this, if its not broken lets not try to fix it. Why not have the status quo with elections. Just leave it alone.

**Union:** If we had these standards in our country, no political person could be elected.

**DoD:** That wasn't our intention.

**Union:** It is not a fair standard.

**DoD:** The bargaining unit should be defined under this system.

**Union:** Since you have national level bargaining why do you need to mess with this? You can do most of this at national level bargaining. Please re-look at this. You can renegotiate with however many unions there are but you don't need to go there. Use status quo for the community interest standard.

**Union:** We represent 800 teachers in DoD. Another union represents 8,000 teachers in DoD, based on these proposals I get the impression that DoD wants one union and under this system you could do it.

**DoD (1):** Is your question can a Union's sphere of influence be identified? You could conceivably consider DoD's unit all as one.

**DoD (2):** DoD can say that the standards are satisfied and that status quo is fine if they are so inclined.

## CONFIDENTIAL - FOR UNION USE ONLY

**Union:**      Could Management decide to collapse both Unions into one Union?

**DoD:**      Yes, we could do this.

**Union:**      How is this issue preserved under Chapter 71?

**DoD:**      We are developing a new labor relations system here. The concepts we have put on the table are not under Chapter 71.

**Union:**      Will Chapter 71 be preserved?

**DoD:**      No. Chapter 71 concepts will not be preserved; it will be replaced by the concepts here.

**Union:**      What is the trigger for bargaining unit composition?

**DoD:**      It will probably be the same as it is today, Management can trigger under FLRA based on component structure and mission. Maybe the Unions can work it out. The DLRB would oversee and make the decision.

**Union:**      Do we file a petition under the DLRB?

**DoD:**      Initially we would try to get Union and Management to do this themselves. Effectively speaking this could happen on October 1, but it is unlikely.

**Union:**      We could use our resources to try to stop Management's aggressive effort but you could work with NAGE and not AFGE. You could try to knock off the metal trade's locals and you could play with the numbers.

**DoD:**      Are you stating you could accrete them?  No. We won't play with the numbers.  They may be factored into additional accretion units.

**Union:**      Traditional principles of accretion should be incorporated. Why do you need national security exclusions if this all about national security?  Your system is tailored to your own needs. I see it as a tough test to get people out of the unit. Why take them out at all?

**DoD:**      This standard is very different. It was looking at today's case FLRA law and exclusions.

**0388**

**CONFIDENTIAL - FOR UNION USE ONLY**

**Union:** Why not write the exclusions from your statute? The standards should be made tougher. Exclude only those who really are a danger and if they really touch security.

**Union:** The reason for excluding people is not because they have a conflict. Any policy you put forth could have exceptions. There is no reason to take some out if they have security clearance. You are making rules and no third party will be able to tell you how to apply the rules. You should keep people in.

**DoD:** All supervisors will come out.

**Union:** Some people wear dual hats. They have some supervisory responsibilities.

**DoD:** Those people are classified as work leaders. We add work leaders to the exclusion list. They take on more responsibilities but you have made an interesting point.

**Union:** What factors were used to exclude people with a "DWEA" certification?

**DoD:** All the work that they have to do is the training and programming for management. There is a provision in the proposal that says that employees can say if they want to be included or not.

**Union:** Will you increase the pay to these certified people? Why, when they have chosen already to be represented will they have an option to be unrepresented?

**DoD:** When we flip the switch in October there are some transition issues we will have to look at, an election could be held or they could stay in their unit.

**Union:** I represent a significant number of supervisors who are civil service mariners, they have been grandfathered into units by law for over 30 years. Is it your intent to exclude them?

**DoD:** If they are supervisors, yes.

**Union:** We employ a lot of students who are permanent employees. They are cooperative students and part time workers. When they finish school they are full time employees.

**CONFIDENTIAL - FOR UNION USE ONLY**

**DoD:**    Student employees will be excluded. They are eligible when they graduate and become full time employees.

**Union:**    What standard will the DLRB use?

**DoD:**    It will be an efficient and effective standard for the DoD mission. If we don't specifically address a standard the DLRB could look to the FLRA if they want to. We haven't said if there would be a single DLRB office or regional offices. We want to implement something that is effective.

**DoD:**    Anyone who acts as a confidential employee to anyone who formulates and effectuates policy, any type of policy, not just labor relations will be excluded if they act in a confidential capacity.

**LUNCH - Reconvened at 1:30pm**

The Union noted that DoD should understand that nothing the Union discussed in their meetings should be considered a proposal. Overall the Unions disagree with the entire concept of the National Security Personnel System.

**Union:**    On January 22, I attended a meeting with an open mind because I thought you wanted to have an open and honest dialogue with the Union. When I got this document on February 6 we saw through the DoD. You never explained what the problems are with the current state of affairs. Can you help us out? You have given no explanation of any problems. You insisted that we question you and dig information out of you. I have worked with many private companies in financial distress and saved them from ruin because they were open and honest with us. You have not answered any questions honestly. You won't get any proposal from my Union because we don't want our members to think that we buy into any of this.

**D.    UNION DUES**

**Union:**    Referring to bullet one, this is contrary to case law and it is illegal. What does this have to with national security? It's unfair and it adds injury to insult. Referring to bullet two there have been three Circuit Courts that have told you that when you screw up Union dues, you pay. What does this have to with national security? It's insulting. All of page four is a non-starter. I am sure you did not go to Congress for number four.

CONFIDENTIAL - FOR UNION USE ONLY

**Union:** We heard you over and over again that the DLRB would do a lot of things but not regarding dues.

**DoD:** That's not what the intent is here. This relates to trying to change the entire system. We have to look at it as a whole. This is driving the pieces and changes the system as a whole. Canceling union dues just gives employees a choice, the idea is to allow one year to provide union stability. But then this gives employees a choice. Item two involves if dues did continue by mistake. We are looking for any easy mechanism to get money back and reimburse the employee.

**Union:** Doesn't this absolve you of doing your business properly? If the agency refused to process form 1187 and it was later told to pay dues under the language you have here this situation won't be covered.

**DoD (1):** I know what the words say but I did not completely understand the explanation.

**DoD (2):** This is better left to the unions, DoD won't get involved. If there is an error in withholding, DoD won't be responsible to get the money back. The Union should give the money back.

**Union:** How would we do this under the new system?

**DoD (1):** It depends on the disputes; we could add more language here to clarify this.

**DoD (2):** If this were back dues do you think the Agency should pay or should it come from the employee?

**Union:** I'm trying to look at this from a DoD wide perspective not just any small union.

**DoD:** You've raised some valid points we need to look at it and address it in a regulation.

**Union:** Management is generally in agreement with labor. DoD tries to streamline the system, you accept the least exposure but you maximize opportunity for mistakes. Then you insulate yourself from these mistakes. If you make a mistake in taking dues what is your justification for this?

**CONFIDENTIAL - FOR UNION USE ONLY**

| | |
|---|---|
| **Union:** | You've said we need to see the entire picture, if there is no urgency to get this done before the election, when will we get the full document? |
| **DoD (1):** | My comment is in the context of the labor relations system. |
| **DoD (2):** | We will be giving you the document with your comments on April 20. This will include the details of this system based on your comments and our work with OPM. |

## E.    DUTY TO BARGAIN

| | |
|---|---|
| **Union:** | Who defines what significant impact is? Will we have a chance to comment? |
| **DoD:** | Significant impact will be put in the regulations; the collaborative process will give you a chance for input. I cannot say what DHS will do. |
| **Union:** | I want to remind you that you encouraged AFGE and the metal trades unions to form the biggest units we could have. If we have large bargaining units under this system it can be held against us because in a RIF a thousand people could be considered small in the scope of a big unit. If one person gets RIF'd we should have a chance to help. Your whole concept of significant impact should be revisited. |
| **Union:** | Why should it be significant impact on bargaining unit employees as opposed to impact on an employee? |
| **DoD:** | You have made some valid points. |

## F.    SCOPE OF BARGAINING

| | |
|---|---|
| **Union:** | If you have national level bargaining why would you supercede this with DoD regulations? It makes no sense. If you sign off on the one page policy why would you reserve to yourself the right to change it? It discredits the idea of national level bargaining. |
| **DoD:** | Issuing a regulation is not a one time deal. Things change and processes change and when it does we go back to national level bargaining all over again. |

**CONFIDENTIAL - FOR UNION USE ONLY**

**Union:**    On April 20 we will be a getting a definition of bargaining.

**DoD:**    Yes, we are looking at bargaining. It will look like the consultation language that we spoke about yesterday. It will be based on Management's rights. When Management has established a process; if we don't follow these processes there could be a challenge to the fact that we did not follow process. There could be no challenge over the substance of the decision itself. If there are procedures set and Management doesn't follow the process just the process problem could be challenged, not the substance of the decision.

**Union:**    What is the rationale for unzipping all of the contracts?

**DoD:**    We want to do issue based bargaining. We want to deal with issues at hand and move forward. I have seen how it could take years to resolve issues and it doesn't have to be that way. We have been bargaining about garnishment of wages for misuse of credit cards for a very long time. We want to finish this type of thing quickly.

**Union:**    One, you said that were not going to incorporate any of Chapter 71 issues but here you are retaining all of management's rights under Chapter 71. Two, will there be a fair and equitable way to handle things with supervisors? For instance, performance ratings. We need to have some imput to have some kind of review of performance issues.

**Union:**    Has the Secretary implemented its 'subsection g' authority?

**DoD:**    No, we are in the process of trying to work through this issue by following time lines. But we will not say this is consultation.

**Union:**    'Subsection g' says that results of bargaining are binding on DoD. It's not a rule, the agreement is binding.

**DoD:**    The agreement could be issuances of policy.

**Union:**    An agreement needs to be an agreement. Not just some unilaterally decided policy. An agreement does not mean a policy issued by one party.

CONFIDENTIAL - FOR UNION USE ONLY

**DoD:**  I am trying to explain the idea of national level bargaining to build a system that allows issued based discussion to build a policy.

**Union:**  Senators and Congressmen disagree with your interpretation about what national level bargaining will be.

**Union:**  This expands Management's rights and eliminates employee and Union rights. This doesn't represent anything like issue based bargaining that gives consideration to both sides. This only addresses the Management's side.

**DoD:**  From the perspective of the scope of bargaining, we have had a few ideas. This week the FLRA decided a case about the de minimus concept. It limits the idea of an appropriate arrangement if it interferes with Management rights it just interferes with it. It gets away from the complex shades of the standard.

**Union:**  You've eliminated the covered by doctrine and the ability of either party to negotiate.

**DoD:**  If it's covered by existing policies it could be that there will not be a duty to bargain unless conditions are substantially altered by new events or circumstances, for example like 9/11.

**Union:**  It's a double standard at best. Management can reopen discussion for any reason. It can initiate change on anything. The Union cannot reopen an issue unless something almost unimaginable happens.

**DoD:**  During the consultation process the Union can bring up any recommendation it wants. Management may or may not adopt it. If management does not agree with it will tell the Union why it will not adopt its suggestion. But the union goes to the DLRB about the process alone not about substance.

**Union:**  The consultation process results in a policy. This is not mutually agreed to on a piece of paper. Is the policy something mutually agreed upon?

**DoD:**  The policy is something that reflects consultation. It hammers out differences that results in the policy. If Management disagrees with the Union's recommendations then the policy is implemented at the end of sixty days.

**CONFIDENTIAL - FOR UNION USE ONLY**

| | |
|---|---|
| **Union:** | Give an example about how negotiating would work. |
| **DoD:** | I'm trying to talk about the DLRB would have to do.  The DLRB would look to evidence provided by Management and look at what management has done not just a statement of fact.  They would look at what the specifics were. |
| **Union:** | How would it work?  Would there be policy for different Unions? You said something about the parties meeting and then you implement what you want to.  Will you be meeting for national level bargaining? |
| **DoD:** | National level bargaining doesn't rule out a meeting.  We could do it with all of the Unions in the room, if it makes more sense. |
| **Union:** | In your regulations will you include as part of your definition objective type criteria that are graspable and litigatable? |
| **DoD:** | Yes. |
| **Union:** | This is the slippery part of the system.  What happens if management then issues another document that says something else needs to be done which violates the policy and is inconsistent. Then the union can then go to appeal.  As the case progresses through the system if it looks like Management is wrong, what Management can do is say we didn't violate the policy but we did do the process wrong so we just go back and consult now. |
| **DoD:** | I understand. |
| **Union:** | If we brought a charge what is the standard of proof? |
| **DoD (1):** | The same types of things can be put in front of the DRLB and Management would have to respond and then DLRB would have to decide the case. |

## G.    BARGAINING PROCESSES

| | |
|---|---|
| **Union:** | With regard to the National Guard units, instead of every local having a unit in every state we put it together and tried to coordinate.  The agency tries to listen to our unified response.  It's not like we negotiate in every place. |

**CONFIDENTIAL FOR UNION USE ONLY**

to the Union afterward with a signed document now trying to fight the removal.

**DoD:**       Your concerns are heard.

**Union:**     Do you personally know of any excesses Tim?

**DoD:**       No.

## I.      OFFICIAL TIME

**Union:**     There should be status quo on this topic.  There's no problem with official time.

**Union:**     On your guiding principle this is what the bargaining process is for and it is consistent with the statute. You are taking this back to the dark ages.

**Union:**     Using official time can affect resolution at the lowest level and save time and expenses later.

## J.      ALL INCLUSIVE COMPLAINTS REVIEW

**Union:**     We cannot talk about this because we don't know what the Department intends to do.

**DoD:**       This is just individual employee complaints.

**Union:**     Our point is that it should be included and we should get it in the April 20 document.

**Union:**     What duty is left for us to do after this system is implemented?

**DoD:**       We've been talking about this for last couple of days.

**Union:**     Under this system we are no longer the exclusive representative in the appeals process.

**DoD:**       If the employee files a complaint and pays a fee to you and you don't represent them they could sue you.

**Union:**   How will the MSPB be involved?

**DoD:**   The DoD appeals process will replace the MSPB. MSPB is required to work with DoD. All processes are being streamlined. As far as those actions which fall under the MSPB they will go there. But others will go to the new system. The appeals process is being developed and will be given to you. MSPB has jurisdiction in certain areas. Our internal appeals process on matters currently covered by MSPB will override the MSPB. With certain other matters, those will be appealed to MSPB.

**Union:**   Will OPM be rewriting the NSPS?

**OPM:**   We will work with DoD on rewriting this.

**Union:**   The internal appeals process at FAA has no credibility. Did you look at the FAA experiences when you drafted this?

**DoD:**   Yes.

**Union:**   I was there when that program was implemented. Everything fell into a void and FAA was told to redo the program.

**DoD:**   We are hoping that we will be building safeguards in this system that will appear fair even though it is hard to convince you of that. Whistle blower cases will go to the Office of General Counsel.

**Union:**   This system will force people to go the MSPB or the EEO because no one will have faith in this process.

## K.   MISCELLANEOUS ISSUES

**Union:**   On the status of 5 USC Chapter 71, this is not lawful, this is blanket waiver of the law. The legislation did not allow you to do this.

**OPM:**   We heard this before over the last two days.

**DoD:**   The original collective bargaining agreements will stay in place until they are replaced with policies over time.

0398

**CONFIDENTIAL - FOR UNION USE ONLY**

**Union:** The statute says in 2008 this can all revert back where we are today.

**DoD:** That's correct.

**Union:** Mr. Curry indicated he was asking the Union to think outside the box. But what the Agency had given us is a box with no sides. There are no parameters; no definitions and you want the Union to make recommendations with no information. We are lost in space.

**Union:** Will you issue an order the first day NSPS is implemented and say all grievances and arbitrations are cancelled or will you put out a policy with micro-management policy in place? How will this rollover work without enormous disruption?

**DoD:** We are implementing this based on a discreet organization. Those individuals in the NSPS construct – the local agreements will be replaced. There will have to be a transition period.

**OPM:** For DHS some Chapter 71 language was retained. I encourage you to take a look at it. We also did implement an independent internal DHS board.

**Union:** You are mandated to make a modern system but it's a throwback to the 1920's. You should withdraw your proposals.

**Union:** I was in Vietnam and you at DoD are attempting to give down orders. If you deal with people on a reasonable level you will get the result you desire. You are disrespecting the basic premise of what this country is built on.

**Union:** Don't you realize you are setting down a path that will get major resistance in many forms – legal and otherwise? Under the guise of national security you are on the way to making huge mistakes that will not be retractable easily.

**Union:** This proposal is stunning in its brazenness. It is obnoxious. It is insulting. The end result will be a demoralized and disenfranchised work force.

**DoD:** We will go back and reflect on your comments, I don't know if we will meet again. I want to thank you for participating. It hasn't been easy over the last two days and we will take to heart what you said. It has been valuable to hear your comments. If you have any

CONFIDENTIAL - FOR UNION USE ONLY

additional comments, send them to us. We look forward to getting input and keeping the communication channels clear.

**OPM:**     Thank you. Thank you for your civility.  Thank you for sitting until the end. Under all the circumstances you did a good job.

**Adjourn**