## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD H. RUMSFELD, SECRETARY, UNITED STATES DEPARTMENT OF DEFENSE, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civ. A. No. 05-2183 (EGS)

## DECLARATION OF MICHAEL B. FILLER

I, Michael B. Filler, hereby declare as follows:

1.      I am over the age of eighteen and competent to testify to the facts contained in this Declaration from my personal knowledge.

2.      I currently serve as the Associate Director, Public Services Division of the International Brotherhood of Teamsters ("IBT" or "the Teamsters Union"). In this position, I am responsible for reviewing collective bargaining agreements to ensure compliance with laws and regulations, providing advice on drafting grievances for alleged contract violations, analyzing and commenting on proposed laws and regulations, and conducting educational seminars for union officials, business agents, and stewards on a variety of labor-management topics. I have served as an Associate Director at the IBT since September 2003.

3.      The Teamsters Union is an unincorporated labor organization with this principal headquarters at 25 Louisiana Avenue, NW, Washington, DC  20001.  The IBT and/or its

**0608**

affiliated Locals is the exclusive bargaining representative of approximately 2,300 employees who are employed by the United States Department of Defense ("Department of Defense") and/or the agencies within the Department of Defense.

4.      On behalf of these employees, the Teamsters Union and/or its affiliates have negotiated collective bargaining agreements with the Department of Defense and/or one of its agencies.   These collective bargaining agreements govern the terms and conditions of employment for the employees represented by the Teamsters Union.  These collective bargaining agreements may also contain negotiated procedures with respect to the exercise of management rights and/or appropriate arrangements governing the impact of the exercise of management rights.  There are approximately five collective bargaining agreements currently in effect.

5.      These collective bargaining agreements will be impacted if the Department of Defense implements the final regulation establishing the National Security Personnel System.

6.      I am attaching true and correct copies of certain excerpts from some of the above-referenced collective bargaining agreements as Exhibits to this Declaration.  The excerpts and Exhibits are as follows:

a.      Exhibit 1 contains excerpts of the three-year collective bargaining agreement between the Naval Air Depot (Jacksonville, Florida) and Teamsters Local 512, which became effective November 7, 2003.

b.      Exhibit 2 contains excerpts of the three-year collective bargaining agreement between the Naval Station, Department of Public Safety (Great Lakes, Illinois) and Teamsters Local 714, which became effective November 10, 2004.

**0609**

I declare under penalty of perjury that the foregoing is true and correct.   Executed on

November 21, 2005.

Michael B. Filler

**0610**



# COLLECTIVE BARGAINING AGREEMENT

*Between the*

## NAVAL AIR DEPOT JACKSONVILLE FL

*and the*

## INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 512





Approved by the Department of Defense on November 7, 2003
to be effective November 7, 2003

**0611**

# TABLE OF CONTENTS

| SECTION/ARTICLE | TITLE | PAGE |
|---|---|---|
| PREAMBLE | | |
| WITNESSETH | | iv |
| | | 1 |
| SECTION 1:  RIGHTS & RESPONSIBILITIES OF THE PARTIES | | |
| ARTICLE 1 | RECOGNITION AND UNIT | |
| ARTICLE 2 | PROVISIONS OF LAW AND REGULATIONS | 2 |
| ARTICLE 3 | MATTERS APPROPRIATE FOR NEGOTIATION | 2 |
| | | 3 |
| ARTICLE 4 | PAST PRACTICES | |
| ARTICLE 5 | RIGHTS OF THE EMPLOYER | 4 |
| ARTICLE 6 | RIGHTS OF EMPLOYEES | 4 |
| ARTICLE 7 | RIGHTS AND OBLIGATIONS OF THE UNION | 5 |
| | | 6 |
| ARTICLE 8 | UNION REPRESENTATION | |
| | | 7 |
| SECTION 2:  WORK SCHEDULES | | |
| ARTICLE 9 | BASIC WORKWEEK | |
| ARTICLE 10 | HOURS OF WORK | 12 |
| ARTICLE 11 | OVERTIME | 13 |
| ARTICLE 12 | HOLIDAYS | 15 |
| ARTICLE 13 | REDUCED OPERATIONS OR SHUTDOWN DURING HOLIDAY PERIODS | 19 |
| | | 19 |
| ARTICLE 14 | TRAVEL | |
| | | 20 |
| SECTION 3:  LEAVE ADMINISTRATION | | |
| ARTICLE 15 | ANNUAL LEAVE | |
| ARTICLE 16 | SICK LEAVE | 24 |
| ARTICLE 17 | LEAVE WITHOUT PAY | 26 |
| ARTICLE 18 | ADMINISTRATIVE LEAVE | 31 |
| ARTICLE 19 | COURT LEAVE | 32 |
| | | 33 |
| SECTION 4:  PAY | | |
| ARTICLE 20 | PAYDAYS | |
| ARTICLE 21 | ENVIRONMENTAL DIFFERENTIAL | 34 |
| ARTICLE 22 | PARTICIPATION IN AREA WAGE SURVEYS | 35 |
| | | 35 |
| SECTION 5:  OCCUPATIONAL SAFETY & HEALTH | | |
| ARTICLE 23 | SAFETY AND HEALTH | |
| ARTICLE 24 | INJURY COMPENSATION | 36 |
| ARTICLE 25 | TOOLS AND PROTECTIVE CLOTHING | 40 |
| | | 41 |

i

0612

| SECTION/ARTICLE | TITLE | PAGE |
|---|---|---|
| SECTION 6:  EMPLOYEE QUALITY OF WORK LIFE | | |
| ARTICLE 26 | CIVILIAN EMPLOYEE ASSISTANCE PROGRAM | 42 |
| ARTICLE 27 | TRAINING AND RETRAINING | 42 |
| ARTICLE 28 | TECHNOLOGICAL CHANGE | 44 |
| ARTICLE 29 | VISION AND COST REDUCTION PROGRAMS | 44 |
| ARTICLE 30 | PARKING | 45 |
| SECTION 7:  PERSONNEL ADMINISTRATION | | |
| ARTICLE 31 | OFFICIAL PERSONNEL FOLDER | 45 |
| ARTICLE 32 | CHANGES IN JOB DESCRIPTIONS AND REVIEW OF JOB GRADING ACTIONS | 46 |
| ARTICLE 33 | PROMOTIONS | 47 |
| ARTICLE 34 | DETAILS AND TEMPORARY PROMOTIONS | 49 |
| ARTICLE 35 | ACTING SUPERVISOR ASSIGNMENTS | 51 |
| ARTICLE 36 | REDUCTION IN FORCE AND REEMPLOYMENT | 52 |
| ARTICLE 37 | CONTRACTING OUT WORK | 54 |
| SECTION 8:  DISCIPLINARY ACTIONS AND RESOLUTION OF DISPUTES | | |
| ARTICLE 38 | DISCIPLINARY ACTIONS | 55 |
| ARTICLE 39 | ADVERSE ACTIONS AND PERFORMANCE BASED ACTIONS | 57 |
| ARTICLE 40 | NEGOTIATED GRIEVANCE PROCEDURE | 58 |
| ARTICLE 41 | ARBITRATION | 64 |
| SECTION 9:  MISCELLANEOUS | | |
| ARTICLE 42 | FACILITIES AND SERVICES | 66 |
| ARTICLE 43 | BULLETIN BOARDS AND DISTRIBUTION OF LITERATURE | 67 |
| ARTICLE 44 | PUBLICIZING THE AGREEMENT | 67 |
| ARTICLE 45 | BOARDS AND COMMITTEES | 68 |
| ARTICLE 46 | VOLUNTARY ALLOTMENTS OF UNION DUES | 68 |
| ARTICLE 47 | GENERAL PROVISIONS | 70 |
| ARTICLE 48 | DURATION AND CHANGES | 71 |
| GLOSSARY | | |

ii

**0613**

ARTICLE 10
HOURS OF WORK

<u>Section 1</u>. The regular shift hours of Unit employees, except for service functions and workload considerations which necessitate such a change, shall be as follows:

| <u>A Shift</u> | <u>B Shift</u> | <u>C Shift</u> |
|----------------|----------------|----------------|
| 0700 - 1530    | 1530 - 2400    | 2230 - 0700    |

<u>Section 2</u>. Consistent with the Code of Federal Regulations, a Unit employee will be given notice of a change in workdays or basic hours of duty in a workweek as soon as possible but no later than prior to the administrative workweek during which the change is to occur.

<u>Section 3</u>. When the EMPLOYER proposes to establish a tour of duty which is not in existence at the time this Agreement is in force and effect, the EMPLOYER will offer to negotiate impact and implementation of such a change. Simple activation or deactivation of a standard "B" or "C" shift in a shop or work area does not constitute a change in working conditions triggering an obligation to negotiate. The EMPLOYER agrees to notify the UNION when shift activation/deactivation occurs.

<u>Section 4</u>. Unit employees on "B" and "C" shift assignments shall receive the applicable shift differential determined in accordance with applicable wage policies and procedures for wage fixing.

<u>Section 5</u>. When a continuous "B" or "C" shift is in existence, it is agreed that the normal "B" or "C" shift tour for Unit employees shall be rotated in a 3- to 6-week interval. The EMPLOYER agrees to inform the UNION prior to making a deviation outside of that interval period.

<u>Section 6</u>. It is understood that each employee shall be at his/her job site or work area ready to work at the scheduled time of his/her shift, and shall remain at the job site or work area during duty hours unless excused or directed otherwise by the supervisor. If the EMPLOYER requires the employee to perform any work or duty either before or after his/her regular shift hours, the employee will be compensated at the appropriate rate of pay for such work or duty performed. It is also understood that if an employee is directed by the EMPLOYER to report at a designated location at a specified time prior to the start or after the end of his/her scheduled shift, such time will be considered compensable at the appropriate rate of pay. Unit employees shall be provided a 30-minute non-paid lunch period during their normal tour of duty.

<u>Section 7</u>. The shift hours of Unit employees working at another Activity will not be subject to the established shift or work hours of the EMPLOYER's Facility.

<u>Section 8</u>. The EMPLOYER has the exclusive right to determine the qualifications for each position and the number of positions required on each shift. When night shifts are necessary,

13

**0614**

the selection of employees for night shifts shall be subject to the provisions below within 90 days after the effective date of this agreement (reference Section 5 of this Article):

a. The night shift will be staffed by qualified and able volunteers within a given shop or work program if available, to the greatest extent possible. The remainder of the shift will be staffed by rotational assignments, based on least senior service computation date first. Volunteers will normally remain on the night shift subject to the provisions of this Article. Lists of upcoming shift rotation assignments will be posted in the shop, consistent with the requirements of Section 2 of this Article.

b. In situations where the number of qualified volunteers exceeds the number required, volunteers will be selected based upon seniority as determined by their service computation date. If a more senior employee is transferred into the shop or work program and wishes to volunteer for a night shift, or if a more senior employee subsequently chooses to volunteer for a night shift assignment, that employee may displace the least senior employee on that night shift. Such displacement will occur at the next scheduled shift rotation.

c. If an employee assigned to the day shift wishes to volunteer for a night shift, or an employee on the night shift wishes to remain on the night shift, a written request will be made to the supervisor before the beginning of the fourth week. If the rotation cycle is less than six weeks, the request must be made prior to the beginning of the second half of the shift rotation.

d. A volunteer on the night shift must notify his/her supervisor in accordance with the procedure outlined in paragraph c above of his/her desire to return to the day shift. Normally such a volunteer will be returned to the day shift at the next shift rotation unless workload considerations prohibit the employee's return to the day shift.

e. Having served as a volunteer on a night shift does not exclude the assignment of any employee to night shift.

f. A decrease in shop effectiveness attributable to a volunteer, evidence of less than satisfactory performance, or a current disciplinary action may be considered just cause for removal from, or prevention of assignment to, the night shift. The EMPLOYER will provide written notification (2 copies) to any employee who is reassigned from night shift for the above reasons.

g. Exceptions to the above may be made only as follows:

(1) For short periods of time for training purposes, or to attend grievance meetings, hearings, jury duty, appeals, etc. Such short periods of time shall not be considered as breaks in night shift and shall be paid at night shift pay in accordance with regulations governing pay of employees.

(2) If an employee volunteering for night shift withdraws his/her request for assignment, he/she will be placed at the bottom of the list of the volunteers regardless of his/her service computation date.

14

**0615**

h. An employee promoted or assigned into a shop may be delayed assignment to night shift for the following reasons:

(1) When supplemental training is required.

(2) To allow familiarization with shop policies.

(3) To ensure a timely performance rating.

(4) To allow sufficient time to access the employee's qualifications.

Section 9. A Unit employee may request that he/she be excused from shift rotation and a decision by the EMPLOYER concerning such a request will be based upon existing workload considerations and the employee's need. When the request is based upon a personal hardship, temporary in nature, the employee must provide sufficient information to enable the supervisor to make a reasonable and prudent judgment. Requests based upon medical reason(s) must be substantiated by a medical certificate signed by a physician. Requests based upon continuation of formal education leading to a degree or trade-related technical training must be supported initially by a registration certificate and, subsequently, by proof of satisfactory progress. Information provided by the employee for either personal hardship of a temporary nature or medical reasons will be treated as a confidential matter by the EMPLOYER. All requests regardless of reason will be reevaluated at each scheduled shift rotation.

Section 10. Securing the work area and the stowage of tools as required by the EMPLOYER shall be considered as hours of work. Unit employees who are required by the EMPLOYER to remain on the premises after the end of their normal tour of duty for such purposes shall be compensated in accordance with applicable law, rule and regulation.

Section 11. In accordance with NADEPJAX INST 5330.1 (latest issuance), deviations from standard hours of work for personal hardship will be considered. Deviation requests will be approved/disapproved by SBT leaders or division directors. Employees working non-standard hours at their request will transact attendance at the beginning and end of the shift.

ARTICLE 11
OVERTIME

Section 1. Employees shall be compensated for overtime work performed in accordance with applicable laws and regulations.

Section 2. Overtime is work or duty which is scheduled and authorized by the EMPLOYER, and is performed by a Unit employee(s) in excess of 8 hours per workday or 40 hours per administrative workweek. Employees shall be paid for performing such work or duty at the applicable overtime rate including shift differential or other additional pay to which they are entitled by law.

15

**0616**

Section 3. The EMPLOYER agrees to distribute overtime among employees in a particular shop, shift, job rating, or work program in such a manner as to reasonably assure that each employee is provided an equal opportunity to work overtime. It is recognized that certain factors, i.e., TDY, leave, and continuity on jobs of short duration as well as workload considerations may create a temporary imbalance in the distribution of overtime; however, the EMPLOYER agrees to make every reasonable effort that such work will be distributed fairly and equitably on a quarterly basis. It is agreed that such quarterly distribution shall commence the first full quarter following approval of this Agreement by the Department of Defense and shall begin anew each quarter thereafter for the duration of this Agreement. Overtime will be reasonably balanced in a shop, shift, job rating or work program where practicable based on workload. Variations from the quarterly cycle for specific workload programs may be made by mutual agreement of the UNION and the EMPLOYER, if such variation promotes the interest of equitable distribution.

Section 4. When an employee is temporarily assigned to perform work in a shop other than his/her regularly assigned shop on a continuous basis (40 hours or more) and overtime is required of the employees of that shop, that individual, if qualified and able, will be provided equal opportunity to work overtime. Such an employee will be credited with overtime in the amount equal to the average amount recorded for any regular employee of that shop or work program. Upon the employee's return to his/her regularly assigned shop he/she will be credited with overtime in the amount equal to the average amount recorded for any regular employee within his/her parent shop. Employees reassigned without time limitation from the shop or work program to another shall be entered on the overtime records with the average amount of overtime of the employees within the shop, work program, and job rating to which assigned.

Section 5. Overtime work is a work assignment, and the EMPLOYER may occasionally require employees to work overtime to accomplish mission requirements. However, in assigning overtime, the EMPLOYER agrees to provide as much advance notice as practicable consistent with workload considerations, and to give due consideration to the employee's personal desire to work the overtime. Under normal circumstances the EMPLOYER will, upon request by an employee, relieve the employee from the overtime assignment if the assignment would result in an unreasonable inconvenience or pose an undue hardship on the employee, and the supervisor can find another employee in the shop who is qualified and can perform the work on a production basis reasonably available and willing to work. In cases where required overtime creates an undue inconvenience or hardship, use of fully qualified volunteer substitutes from outside a shop may be considered if their use does not compromise safety, production efficiency, or quality. The EMPLOYER will notify the UNION when employees are _required_ to work seven days a week _involuntarily_ in any shop or work program.

Section 6. All overtime offered to and declined by an employee shall be charged as overtime worked for the purpose of determining the equity of overtime distribution. An employee properly scheduled and informed in advance for overtime work on a nonscheduled work day and who fails to report for duty for any reason will be charged

16

0617

with the number of overtime hours for which he/she was scheduled or would have worked for purposes of determining the amount of overtime on official records, and may be subject to disciplinary action for failure to report for such duty.

Section 7. The EMPLOYER will contact the employees regarding their availability for overtime consistent with workload requirements, and will notify employees of overtime assignments. Overtime assignments will be posted in a location readily visible to the employees in the shop.

Section 8. The EMPLOYER agrees to maintain and post on a current basis in a readily visible location, a shop record of overtime worked and declined by Unit employees (see Appendix C). These records shall be utilized for the purpose of determining the equitable distribution of overtime. Supervisors will retain quarterly overtime distribution records for a period of one year. In the case of an alleged inequity, and upon request by an employee or the employee's UNION representative, the supervisor will discuss the overtime record in order to attempt resolution of the alleged inequity.

Section 9. When a Unit employee is required by the EMPLOYER to work overtime, the EMPLOYER will not require the employee to utilize annual leave or be placed in a leave-without-pay status during the basic workweek solely to offset the overtime hours worked.

Section 10. During scheduled overtime assignments which extend for a period of 4 hours beyond the normal 8-hour day, affected employees so assigned shall be permitted to eat while in a pay status, provided such employees can eat without unduly interrupting or suspending the work effort. When an employee is required to work unscheduled overtime in excess of 4 hours and food is not available within reasonable walking distance, upon request by the employee(s) concerned the EMPLOYER will make necessary arrangements to obtain food at the nearest available source. Cost of the food shall be at the expense of the employee(s). Scheduled overtime for the purpose of this Section means that the employee was notified prior to the end of his/her previous full shift that he/she would be required to work overtime.

Section 11. Unless the EMPLOYER is reasonably precluded by circumstances, the EMPLOYER agrees to notify in advance employees who may be required to work overtime in the following manner:

a. Weekday overtime, not later than 2 hours prior to the end of the employee's scheduled shift.

b. Weekend overtime, not later than prior to the end of the employee's shift on Thursday immediately preceding the overtime assignment.

The provisions of this Section do not apply to employees who are engaged in operations which are subject to unplanned overtime requirements such as Emergency Repair, Calibration Laboratory, and Plant Maintenance personnel. However, the EMPLOYER agrees to advise these employees with as much advance notice as is available to the EMPLOYER prior to the affected employee's overtime requirement.

17

**0618**

**Section 12**. Newly hired Unit employees or employees reassigned or promoted to a different job rating or those returning to the overtime list for other reasons will be credited with an amount of overtime equal to the average amount recorded for any Unit employee assigned in the same job rating, shop, shift, or work program for the purpose of equity of overtime distribution.

**Section 13**. Use of leave will not be used as a sole rationale for denying an employee opportunity to work overtime. However, if an employee exhibits a pattern of unscheduled leave usage in close proximity to overtime scheduled or worked, that pattern may be used as the basis for imposing a letter of requirement for suspected leave abuse. (See Article 16.)

**Section 14**. It is recognized that the EMPLOYER is not obligated to offer overtime to an employee who has received written notification that his/her performance is less than at the satisfactory level. Likewise, the EMPLOYER is not obligated to offer overtime to an employee who has a documented pattern of failure to report for scheduled overtime without acceptable cause.

**Section 15**. A Unit employee who is called back to work at a time outside of and unconnected with his/her scheduled hours of work shall receive at least 2 hours overtime pay including any shift differential and additional pay to which he/she is entitled.

**Section 16**. All overtime hours paid will be charged as overtime worked.

**Section 17**. Work leaders will not be assigned overtime in lieu of lower pay grade employees unless there are insufficient volunteers at the required level or to assist in reasonable supervisory span of control or handle an unusual workload requirement that may require special skill.

**Section 18**. Compensatory leave may be earned in lieu of overtime, only if the employee desires. Use of compensatory leave is subject to the same scheduling and approval procedures pertaining to annual leave. If compensatory leave is not used within one year of its being earned, it will be paid to the employee as overtime at the rate of pay in effect at the time it was earned.

**Section 19**. If an employee is unjustifiably and knowingly deprived of overtime to which he/she should properly have been assigned, the EMPLOYER shall pay the wages and overtime rate which the employee would have earned had he/she not been unjustifiably and knowingly deprived. The back pay is limited to 12 hours per occurrence per employee. In addition, in no event will an employee receive a monetary relief for denied overtime if management can provide substantiating evidence that the employee's silence or other actions contributed to his/her denial of overtime.

18

**0619**

Section 10. Employees will be allowed to use government computers during non-duty hours to prepare and submit electronic résumés. Employees are advised that computers are also available in the Human Resources Division for preparation and submission of résumés during non-duty hours. Employees may use their government e-mail addresses on their résumés if they so desire. This e-mail address is used by HRSC to provide notification to the employee that his/her résumé has been received.

Section 11. Employees may grieve an ineligible/lack of qualifications determination or other merit promotion matter under the control of the HRSC-SE using the process described in Article 40, Section 12 of this Agreement.

## ARTICLE 34
### DETAILS AND TEMPORARY PROMOTIONS

Section 1. A detail is a temporary assignment of a Unit employee to a different position for a specific period, with the employee returning to his/her regular duties at the end of the detail. The employee continues to be the incumbent of the position from which detailed.

Section 2. Details are intended only for meeting temporary needs of the EMPLOYER's work program when necessary services cannot be obtained by other desirable or practicable means. It is understood that details will not be effected in violation of prohibited personnel practice provisions of the Civil Service Reform Act of 1978. It is recognized that details may be made appropriately under circumstances such as the following:

a. To meet situations occasioned by workload fluctuations, change in mission or organization, or unanticipated absences.

b. Pending official assignment, pending description and classification of a new position, pending security clearance and for training purposes (particularly where the training is a part of established promotional or developmental programs).

Section 3. Except for an emergency detail of 30 days or less, an employee may not be detailed for at least three months after appointment from an Office of Personnel Management register.

Section 4. The EMPLOYER will solicit volunteers for details from qualified employees within the affected shop or work area, and will attempt to satisfy the need prompting the detail from interested, well-qualified volunteers, unless substantive mission requirements dictate otherwise. Should there be more equally qualified volunteers than the requirement for details, the EMPLOYER will detail by order of service computation date, unless substantive mission requirements dictate otherwise. Determination of qualification requirements and volunteer qualifications is the responsibility of the EMPLOYER.

Section 5. In situations of involuntary details, the EMPLOYER will detail otherwise equally qualified employees in the affected shop or work area by inverse order of service

49

computation date, unless substantive mission requirements dictate otherwise. As with voluntary details, the determination of qualification requirements and employee qualifications is the responsibility of the EMPLOYER.

Section 6. The EMPLOYER will verbally notify the UNION when the need for details and temporary promotions of Unit employees arises. In cases where substantive mission requirements prevent volunteer solicitation or the use of the seniority procedures, the EMPLOYER will verbally notify the UNION of that situation. The EMPLOYER will provide the UNION with a written description of the mission requirement upon UNION request.

Section 7. The UNION and EMPLOYER agree that the following time frames will apply in detailing of Unit employees:

    a. Details to positions at the same or lower level will be made in increments of 120 days and not to exceed one year.

    b. Details to higher graded positions will be be limited to 120 days in a 365-day period for any employee, pending action to fill the position via merit promotion procedures.

    c. Details to positions with known promotional potential will be made in increments of 120 days and will not exceed one year.

    d. Details to unclassified duties will be limited to one year.

    e. Details of 30 days or less, also commonly referred to as "loans," do not require official documentation. Details of 30 days or more must be documented by generation of a Standard Form 52.

Section 8. The EMPLOYER is responsible for controlling the duration of details and assuring that the details do not compromise the open-competitive principle of the merit system or the principles of job evaluation. The EMPLOYER will not assign an employee to a detail with the intent to give that employee a competitive advantage for an upcoming permanent promotion.

Section 9. The EMPLOYER agrees that an employee will be furnished a copy of the Standard Form 52 effecting a detail in excess of 30 days by the EMPLOYER. The supervisor will explain to the employee the reason(s) for the detail, its anticipated duration, the nature of the duties to be performed, and will answer any questions the employee may have concerning the detail.

Section 10. The EMPLOYER agrees that the work performed during a detail will be given appropriate consideration in the evaluation of an employee for promotion, provided the employee includes a description of any work performed on detail and its duration, whether officially recorded or not, on his/her application when applying for a promotional opportunity.

0621

Section 11. The EMPLOYER agrees that when a Unit employee is assigned to temporarily perform the grade determining duties of a higher grade Unit position and there is reasonable basis to conclude that the assignment will last 30 days or more, the employee will be temporarily promoted upon assuming the assignment, provided the employee is fully qualified for the higher graded position.

ARTICLE 35
ACTING SUPERVISOR ASSIGNMENTS

Section 1. The EMPLOYER will use bargaining unit members to serve as acting supervisors on an intermittent basis when the permanent supervisor is absent from the shop.

Section 2. Acting supervisors will perform routine administrative supervisory duties as assigned to ensure continuity of operations within the shop. The acting supervisor's scope of authority will NOT normally include these functions:

a. Approval of labor transactions – the acting supervisor will correct and initial system-generated labor reports, but signature of these reports will be referred to the next higher management level.

b. Administering discipline.

c. Performance evaluations.

d. Approval or disapproval of leave – the acting supervisor will recommend approval/disapproval to the next higher level of management.

Section 3. The following procedures will regulate those assignments:

a. Journeyman artisans and worker leaders that have been assigned to the shop or work area for at least 90 days are considered eligible to perform as acting supervisors. In those shops or work units that do not have journeymen assigned, eligible candidates will be drawn from the full performance level and worker leader employees present within the shop. Exceptions to this guideline may be made by mutual agreement between the EMPLOYER and the UNION.

b. Supervisors will solicit volunteers from the eligible candidates within the shop or work unit to be acting supervisors. Interested, eligible volunteers will do so in writing, and revoke their volunteer status in writing. Should volunteers be unavailable, the EMPLOYER will consider utilizing supervisors or volunteers from other areas if that is a practical solution. As a last option, the supervisor will assign the task to the least senior eligible employee (based on service computation date) within the shop or work unit.

c. A decrease in shop effectiveness objectively attributable to a volunteer, less than acceptable performance, a current letter of requirement, or a pending or current

51

## ARTICLE 41
## ARBITRATION

<u>Section 1</u>. If the EMPLOYER and the UNION fail to settle any grievance properly processed under Article 40 of this agreement, such grievance may be submitted to arbitration. The term "settle" means that a mutually agreeable solution has been reached. A request for arbitration may be withdrawn at any time, with the moving party paying any withdrawal fee.

<u>Section 2</u>. Within 10 workdays from the date of receipt of a final grievance decision, the party receiving the final decision may invoke arbitration by notifying, in writing, the other party. The party invoking arbitration will, within the same time limits, request a list of seven arbitrators from the Federal Mediation and Conciliation Service (FMCS). The parties shall meet within five workdays after receipt of such a list and each party shall strike one name from the list of seven and repeat the procedure until one name remains; that individual shall be the duly assigned arbitrator. A flip of a coin shall determine which party strikes a name first. By mutual written agreement, an arbitrator may be selected for specific periods to hear all cases during that time.

<u>Section 3</u>. It is agreed and understood that the procedures to select an arbitrator, as specified in Section 2 above, may be waived upon mutual agreement by the EMPLOYER and the UNION. In which case, the EMPLOYER and the UNION shall mutually select an arbitrator by whatever means that are mutually acceptable to the Parties.

<u>Section 4</u>. The Federal Mediation and Conciliation Service shall be empowered to make a direct designation of an arbitrator to hear the case in the event either party refuses to participate in the selection of an arbitrator.

<u>Section 5</u>. Except as provided for in Section 1, the fees of the arbitrator shall be borne equally by the parties, provided that they do not exceed the maximum authorized by applicable regulations. Any arbitration filing fee incurred by either party will be borne equally if the grievance actually proceeds to arbitration hearing. It is further agreed that the UNION and the EMPLOYER shall share equally the expenses of an official transcript if requested by both parties. The EMPLOYER agrees to provide the space for the proceeding.

<u>Section 6</u>. Unless mutually agreed otherwise in writing, the UNION and the EMPLOYER shall meet at least 10 workdays prior to the scheduled date of arbitration to consider means for expediting the arbitration processing by:

   a. Jointly reducing the issue to writing.

   b. Stipulating to facts.

   c. Authenticating proposed exhibits.

   d. Exchanging lists of proposed witnesses.

0623

Section 7.  If the parties fail to agree on a joint submission of the issue(s) for arbitration, each shall submit a separate submission and the arbitrator shall determine the issue(s) to be heard.

Section 8.  The arbitrator proceeding shall normally be conducted during the regular duty hours of the basic workweek.  Employees who are required by either party or the arbitrator to participate in the proceeding shall be excused from duty without loss of pay or charge to leave.  Witnesses shall be excused from duty only to the extent that they are required to furnish testimony, after which time they will be expected to leave the proceeding and return to work if they still have time remaining in their scheduled shift.

Section 9.  The arbitrator will be requested to render a written decision to the EMPLOYER and the UNION in writing no later than 30 calendar days from the conclusion of the proceeding or closing of the record unless the parties mutually agree otherwise.  The arbitrator's award will include a definitive basis for the decision, and the decision shall be binding upon the EMPLOYER and the UNION, except that either party may file exceptions to the award with the Federal Labor Relations Authority in accordance with procedures established by the Authority.  Any dispute over the application of an arbitrator's award shall be referred to the arbitrator for resolution.

Section 10.  The decision of the Arbitrator shall be limited to the terms and provisions of this Agreement and applicable law, rules, and regulations.  In no event may the terms and provisions of this Agreement or appropriate laws, rules, or regulations be altered, amended or modified by the Arbitrator.

Section 11.  Before pursuing arbitration over an unresolved grievance filed under the authority of Article 40 of this agreement, the EMPLOYER shall use the following procedure:

First Step:  The Commanding Officer must, by certified mail, forward a written grievance to the UNION's Business Representative postmarked within five (5) workdays of the occurrence giving rise to the grievance or the EMPLOYER's awareness of the matter giving rise to the grievance.

Within ten (10) workdays following the UNION's receipt of the grievance, the Commanding Officer or his designee and the UNION's Business Representative will meet to discuss the grievance.

The UNION's Business Representative shall respond in writing to the grievance within ten (10) workdays following the meeting with the Commanding Officer.

Second Step:  If the EMPLOYER is not satisfied with the response issued by the UNION's Business Representative at the first step, the Commanding Officer may forward the grievance to the Business Manager of Local UNION #512 by certified mail postmarked within 3 workdays of his receipt of the UNION response.

Within ten (10) workdays of the UNION's Business Manager receiving the grievance, the Commanding Officer or his designee, the appropriate management official alleging

65

**0624**

a contract violation (if applicable), the UNION's Business Representative and the UNION's Business Manager shall meet to discuss the grievance.

Within fifteen workdays of the second step meeting, the UNION's Business Manager shall issue a written response to the Commanding Officer.

These grievance steps shall not be a substitute for submission of UNION or Unit employee grievances under Article 40 of this Agreement.

## ARTICLE 42
## FACILITIES AND SERVICES

**Section 1.** The EMPLOYER agrees to provide reasonable space on the EMPLOYER's premises to the UNION for use as an office. This space is to be equipped with adequate cooling provisions. The EMPLOYER agrees to make office furniture and equipment available on a loan basis, to be mutually agreed to by the EMPLOYER and the UNION, which are surplus to the needs of the EMPLOYER. The UNION agrees to maintain such furnishings in a reasonable condition.

**Section 2.** The UNION agrees that the office space will not be utilized by Unit employees, including stewards to conduct internal UNION business on official time. Unit employee(s) or Stewards shall not visit the UNION's office during duty hours without first obtaining authorization from his/her immediate supervisor. The supervisor will be guided by provisions of this Agreement when granting such authorization. One key to the UNION office will be issued to the EMPLOYER's security office. Said key will be maintained for security purposes only and shall not be duplicated or used for any other reason. The UNION agrees to maintain the office space in a clean and sanitary condition and agree to abide by all security and safety provisions which are written policy of the EMPLOYER. The UNION recognizes that the office space is subject to a periodic safety inspection. Such inspection(s) shall be accomplished in the presence of a UNION representative.

**Section 3.** The EMPLOYER will furnish at no cost to the UNION a telephone for placing and receiving on-station and local non-toll calls. The installation of this telephone is predicated on the availability of the service. It is understood that the use of this telephone for personal business or for placing long-distance calls of any type, including third number calls and calls either placed or received collect, is unlawful. In place of this telephone provided by the EMPLOYER, the UNION may at no cost to the EMPLOYER have a commercial telephone installed in the UNION's office space in which case the UNION shall be solely responsible for the billing of the commercial telephone installed at the UNION's election.

**Section 4.** The UNION agrees to conduct their business in an efficient manner. In this connection, supervisors will make existing telephone facilities available to the UNION and common courtesy will be exercised insofar as privacy is concerned.

**Section 5.** The employee(s) shall have reasonable access to public telephones in the operating areas and the EMPLOYER shall provide that capability to the extent of his authority.

66

EXHIBIT
2

# NEGOTIATED
# AGREEMENT

## Between
## Naval Station
## Department of Public Safety

## And

## The International Brotherhood of
## Teamsters
## Local 714

### Naval Station,
### Great Lakes, IL

### Approved by the
### Department of Defense
### On
### 10 November 2004

# TABLE OF CONTENTS

| NO. | ARTICLE | PAGE |
|---|---|---|
| | PREAMBLE | 4 |
| 1 | Recognition and Unit Designation | 6 |
| 2 | Management Rights | 7 |
| 3 | Rights of Employees | 9 |
| 4 | Rights and Responsibilities of the Union | 11 |
| 5 | Official Time | 13 |
| 6 | Joint Labor-Management Committee | 16 |
| 7 | Annual Leave | 17 |
| 8 | Sick Leave | 19 |
| 9 | Other Leave Provisions | 22 |
| 10 | Hours of Work | 26 |
| 11 | Holidays | 29 |
| 12 | Overtime/Compensatory Time | 31 |
| 13 | Equal Employment Opportunity (EEO) | 33 |
| 14 | Employee Development/Training | 34 |
| 15 | Performance Appraisal | 36 |
| 16 | Position Classification | 37 |
| 17 | Equipment and Uniforms | 38 |
| 18 | Details | 42 |
| 19 | Reassignments | 44 |
| 20 | Merit Promotion | 45 |
| 21 | Reduction In Force | 48 |
| 22 | Civic Responsibility | 51 |
| 23 | Civilian Employee Assistance Program | 52 |
| 24 | Communications | 54 |
| 25 | Health and Safety | 55 |
| 26 | Injury Compensation | 56 |
| 27 | Dues Withholding Agreement | 57 |
| 28 | Use of Official Facilities | 60 |
| 29 | Diversified Provisions | 61 |
| 30 | Seniority | 62 |
| 31 | Employee Personnel Records | 63 |
| 32 | Employee Indebtedness | 64 |
| 33 | Travel | 65 |
| 34 | Disciplinary and Adverse Action | 66 |
| 35 | Grievance Procedure | 68 |
| 36 | Arbitration | 74 |
| 37 | Duration of Agreement | 77 |
| 38 | Miscellaneous Items | 78 |

0627

## ARTICLE 10

## HOURS OF WORK

**SECTION 1.** Subject to the provisions of 5 CFR 610, the basic workweek for employees will be fixed at forty (40) hours and will not extend over more than six (6) of any seven (7) consecutive days. Whenever practicable the two (2) days outside the basic workweek will be consecutive. Except in unusual circumstances, the working hours in each day in the basic workweek will be the same.

**SECTION 2.** Employees will work 8-hour shifts. To avoid overlapping shifts, or where constant attention or availability is required, employees will "eat on the run" without a specific time period for lunch. Except where it is determined that the Employer would be seriously handicapped in carrying out its function or that costs would be substantially increased, the days and shift hours of an employee's basic work week shall not normally be changed without a notice to the employee of at least three (3) calendar days except that shift hours may be changed for participation in grievance appeals, official hearings, training, medical examinations, and similar situations where it is impractical or undesirable to conduct the hearings, training, examination or investigations during the employee's normal tour of duty.

**SECTION 3.** The Employer agrees to consult/negotiate as appropriate with the Union whenever a change is contemplated in an established basic workweek or tour of duty for the majority of employees in the unit of exclusive recognition.

**SECTION 4.** The following shall be the available (available does not include personnel on special departmental detail; extended sick leave; military leave; injury compensation; etc) minimum journeyman Police Officers (journeyman is defined as those Police Officers who have completed the Great Lakes Police Academy) on duty for each shift:

a. If the number of available journeyman Police Officers (including military) is forty (40) or below, the following shall be the minimum journeyman Police Officer personnel on-duty for each shift:

    1 Supervisory Police Officer or
    1 Lead Police Officer and
    4 Police Officers (Great Lakes)
    2 Police Officers (Ft Sheridan)

26

0628

**b.** If the number of available journeyman Police Officers (including military) exceed forty (40), the following shall be the minimum journeyman Police Officer personnel on-duty for each shift:

> 1 Supervisory Police Officer or
> 1 Lead Police Officer and
> 5 Police Officers (Great Lakes)
> 2 Police Officers (Ft Sheridan)

**c.** If the number of available journeyman Police Officers (including military) exceed forty-seven (47), the following shall be the minimum journeyman Police Officer personnel on duty for each shift:

> 1 Supervisory Police Officer or
> 1 Lead Police Officer and
> 6 Police Officers (Great Lakes)
> 2 Police Officers (Ft Sheridan)

**SECTION 5.** If minimum personnel are not available, the Watch Commander must arrange to fill the empty position(s), prior to the start of the shift. Filling an empty position(s) shall be as follows:

If there is sufficient time (two hours or more), Management shall fill the position by contacting personnel in order of seniority, in accordance with Article 30, Section1. Notification will continue until the vacant position is filled. A no call list shall be established for employees not wishing to be called for shift shortages. This list shall not preclude management from calling employees in the event of an emergency. If everyone called declines to work, Management has the right to require the least senior person on duty to fill the position (mandatory overtime). If there is not sufficient time and no on-duty personnel wish to fill the position, Management shall still attempt to fill the position by contacting personnel in order of seniority, in accordance with Article 30, Section1. The personnel in mandatory overtime status shall remain on duty until properly relieved.

**SECTION 6.** Shifts in effect at the time of this agreement shall remain in effect. In addition, an employee may request a shift change at any time, with or without the mutual agreement with another employee. All shift changes are subject to Management approval. All requests for shift changes shall be in writing, dated, and submitted to the Deputy Chief of Police in charge of the division. If the request can be honored it will be kept on file for a period of one year from the date of the request and if an opportunity

0629

presents itself during that time it will be acted on.  In the event of two requests submitted at the same time, seniority will prevail.

**SECTION 7.**  Employees hired after the effective date of this Agreement, and upon completion of their field training, and employees promoted to Sergeant or Detective after the effective date of this Agreement, shall work rotating shifts as follows:

    **1)**  **Patrol Division** - shift will rotate in a counterclockwise manner every six (6) months for a total of eighteen (18) months, at which time the employee will be assigned a permanent shift.

    **2)**  **Detectives** - shift will rotate in a clockwise manner every six (6) months for a total of eighteen (18) months, at which time the employee will be assigned a permanent shift.

0630

## ARTICLE 12

## OVERTIME/COMPENSATORY TIME

**SECTION 1.** Scheduling of overtime work/compensatory time (including the nature of the work; the need for special skills, the priority of productive or support effort; and the number of employees which will be required to work) is solely a function of the Employer. The right to order overtime is the vested right of the Employer. Supervisors will select employees for overtime work consistent with job requirements. First consideration for overtime shall be given to those employees who are currently assigned to the job. The personal preference and health conditions of employees to work or not work overtime will be respected, but only if another qualified employee is available. In assigning overtime work, the supervisor will take into consideration the special requirements of the job to be performed. If the above provisions do not result in the availability of adequate personnel for overtime work or it results in an excess number, overtime work will be rotated equitably among qualified employees in the bargaining unit. Except in case of emergency, employees assigned to overtime work shall be given reasonable advance notice. An emergency is any unplanned or unforeseeable event requiring immediate action.

**SECTION 2.** In accordance with 5 CFR 550, irregular or occasional overtime work performed by an employee on a day when work was not scheduled for the employee, or for which the employee is required to return to their place of employment, is deemed at least two (2) hours in duration for the purpose of premium pay.

**SECTION 3.** Employees who are notified to work overtime on the same day will be given an opportunity to place not more than three (3) personal phone calls, in accordance with current Naval Station Great Lakes instructions.

**SECTION 4.** A ten (10) minute break will be granted to employees working more than two (2) hours overtime after their normal shift. The timing of this break will be at the discretion of the supervisor.

**SECTION 5.** A bargaining unit employee shall not be required to work for compensatory time in lieu of overtime pay in accordance with 5 CFR 550. However, the Employer retains the right to request volunteers to work for compensatory time in lieu of overtime pay. An employee who does not volunteer for compensatory time will not be penalized for this decision.

**SECTION 6.** Employees may accumulate and carry up to eighty (80) hours of compensatory time.

0631

**SECTION 7.**   Police Officers or Detectives appearing in court to provide testimony who know in advance of the scheduled court date, will report to the Great Lakes Naval Base to sign in and pick up a government vehicle to drive to court. The Police Officer or Detective will return to the Great Lakes Naval Base to return their vehicle and sign out.  If applicable, the Police Officer or Detective will be paid overtime in accordance with 5 CFR 550. If a Police Officer or Detective is called to make an immediate, unscheduled court appearance, and is required to report directly to court, the Police Officer or Detective will be paid for this irregular or occasional overtime in accordance with 5 CFR 550.  In accordance with 5 CFR 550, this call back overtime will be deemed no less than 2 hours in duration for the purpose of premium pay, either in money or compensatory time off.  In addition, the Police Officer or Detective may be entitled to mileage reimbursement in accordance with current regulations.   All claims for mileage must be submitted by the claimant to the Naval Station Comptroller's Office via the Chief of Police within seven (7) calendar days of travel.  It is the employee's responsibility to complete the required documentation in order to receive reimbursement. Current form for reimbursement is the SF-1164.

0632

# ARTICLE 15

## PERFORMANCE APPRAISAL

**SECTION 1.**  The policies and procedures set forth in current Naval Station Great Lakes instructions are applicable to Unit employees, except that:

An employee may be rated Unacceptable only after the employee has had a minimum of ninety (90) calendar days to demonstrate acceptable performance since their performance standards were set.  Employees may only be changed to lower grade or removed based on unacceptable performance after the employee has been issued a formal ninety (90) calendar day Performance Improvement Plan letter and has been given ninety (90) calendar days to improve their performance.

**SECTION 2.**  An employee who is removed or reduced in grade based on unacceptable performance under 5 USC 4303 may raise the matter under a statutory procedure or the negotiated grievance procedure, but not both.  For the purpose of this section, and pursuant to 5 USC 7121, an employee shall be deemed to have exercised this option when the employee files a timely appeal under the statutory procedure or files a timely grievance in writing under the negotiated grievance procedure.

**SECTION 3.**  An employee who is dissatisfied with an official performance rating may grieve that rating under the negotiated grievance procedure. Such a grievance will be submitted initially as an informal grievance to the supervisor who assigned the rating.

**SECTION 4.**  A copy of each individual's completed performance appraisal will be provided to them immediately upon presentation and discussion of the appraisal with the employee.  No changes, additions of any signatures, or other modifications, will be added after it is presented and discussed with the employee.  The employee will be asked to sign the completed appraisal form after it has been presented and discussed with them.  The employee's signature is voluntary and only acknowledges that the appraisal has been presented and discussed with the employee.  It in no way indicates the employee's approval or disapproval.

0633

## ARTICLE 18

### DETAILS

**SECTION 1.** The Union recognizes that the Employer may temporarily detail employees to work other than that within their current ratings.

**SECTION 2.** A detail is the temporary assignment of an employee to a different position for a specified period, with the employee returning to their regular duties at the end of the detail.

**SECTION 3.** Details of thirty (30) calendar days or less may be made orally. Details in excess of thirty (30) calendar days will be initiated on a SF-52, "Request for Personnel Action", and maintained as a permanent record in the Official Personnel Folder.

**SECTION 4.** Details should be used only to meet temporary needs of the activity work program when necessary service cannot be met by other means. Details may be made under circumstances such as:

a. To meet emergencies occasioned by abnormal workload, special projects or studies, change in mission or organization, or unanticipated absences.

b. Pending official assignment, pending description and classification of a new position, pending security clearance, and for training purposes (particularly where such training is part of established promotional or developmental programs).

**SECTION 5.** Details will not be used to "try out" an employee for potential promotion when this can be construed as preselection. A detail will not be used to qualify an otherwise ineligible employee for promotion.

**SECTION 6.** An employee may request to be detailed to a work area desired by that employee. The Employer shall give full consideration to such requests.

**SECTION 7.** Details will be rotated among employees to the maximum extent feasible consistent with employees' qualifications, capabilities, and desires.

**SECTION 8.** The Government and the Union recognizes the need to provide for the public safety and that the primary function of the Department of Public Safety is to maintain public safety. Activities such as sporting events, 4th of July festivities, change of military commands, and other functions that

0634

require extra police presence will be filled with on duty personnel or a combination of on duty personnel and personnel in an overtime status when needed.  Military personnel are part of the Department of Public Safety and will be used to perform work as needed by the Employer.

**SECTION 9.**  The Employer shall list openings for "special details" for five (5) calendar days when practical.

43

0635

## ARTICLE 36

### ARBITRATION

**SECTION 1.** Only the Union or the Employer may invoke the procedures set forth in this Article.

**SECTION 2.** The Party desiring to submit a matter to arbitration shall notify the other Party in writing within twenty (20) calendar days following receipt of the written decision at the fourth step. Within five (5) working days after receipt of such notice, the moving Party shall request the Federal Mediation and Conciliation Service (FMCS) to provide a list of seven (7) impartial persons qualified to serve as arbitrators. The Parties shall meet within five (5) working days after receipt of the list of arbitrators for the purpose of selecting an arbitrator. The following procedure shall be used:

    a. If the date of the transmittal letter from FMCS is an even number (i.e., the 2nd, 4th, etc.), the Union shall make the first strike from the list.

    b. If the date of the transmittal letter from FMCS is an odd number (i.e., the 1st, 3rd, etc), the Employer shall make the first strike.

    c. The other party shall strike one (1) name from the list. The Parties shall repeat the procedure until one (1) person remains on the list, which person shall be the duly selected arbitrator.

**SECTION 3.** Prior to the hearing, the Parties will meet to develop a statement which will contain the precise issue to be resolved by the arbitrator. If the Parties are in agreement as to the precise issue to be resolved, the statement shall be submitted jointly. If agreement cannot be reached, each party will submit to the arbitrator a statement regarding its perception of the issue. A copy of the statement shall concurrently be furnished to the other Party. If more than one (1) issue is involved and the Parties are in agreement as to some but not all issues, the Parties shall jointly submit a statement covering those issues where there is agreement, and separately submit statements on those issues where there is disagreement. The separate statement shall be submitted concurrently to the arbitrator and to the other Party. With respect to the issues which have been separately submitted, the arbitrator will be required to determine the issue(s).

**SECTION 4.** The arbitrator's fees and related expenses, if any, shall be borne equally by the Employer and the Union. The arbitration hearing will be held,

if possible, on the Employer's premises during the regular hours (9:00 am to 5:00 pm) of the basic workweek. All participants in the hearing who are employees of the Employer shall be in a duty status; however, overtime will not be authorized or paid. The costs of transcripts, if requested, shall be borne by the Requesting Party.

**SECTION 5.** Either Party shall have the right to submit a post hearing brief subject to a submission date established by the arbitrator. The arbitrator is expected to render a decision within thirty (30) calendar days from the closing of the hearing or the submission date established for the filing of a post hearing brief.

**SECTION 6.** The arbitrator shall have no authority to change, modify, alter, delete, or add to the provisions of this agreement. The arbitrator's authority shall be limited to the interpretation or application of the provisions of this Agreement and the decision shall be confined to issues specifically defined and related thereto. If no exception to an arbitrator's award is filed during the 30-day period beginning on the date the award is served on the Party, the award shall be final and binding.

**SECTION 7.** Either Party may file an exception to the arbitrator's award with the Federal Labor Relations Authority under regulations prescribed by the Authority, except that exceptions to an arbitrator's award in connection with a grievance filed under either Article 15 Section 2, or Article 34 Section 6, of this Agreement shall be handled in accordance with the requirements of 5 USC 7121 (f). A copy of such exceptions shall be provided concurrently to the other Party.

**SECTION 8.** Any dispute over the interpretation of an arbitrator's award shall be returned to the arbitrator for settlement.

**SECTION 9.** If there is a dispute concerning the arbitrability or grievability of a grievance, the arbitrator shall hear arguments regarding both arbitrability/grievability and the merits of the case at the same hearing. However, the Parties may mutually agree otherwise in instances such as highly complex cases which would involve several days of hearings.

0637