IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FEDERATION OF<br>  GOVERNMENT EMPLOYEES, et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 1:05CV02183 EGS |
| | ) |
| DONALD RUMSFELD, SECRETARY OF<br>  DEFENSE, et al., | )<br>)<br>) |
| Defendants. | )<br>) |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN

Of Counsel:                    United States Attorney

STEWART ALY
MICHAEL REHEUSER            SUSAN K. RUDY, D.C. Bar # 369112
HELEN SULLIVAN              JOSEPH W. LOBUE, D.C. Bar # 293514
Attorneys                   JEFFREY M. SMITH, D.C. Bar # 467936
U.S. Department of Defense  JONATHAN ZIMMERMAN, MA Bar # 654255
                            Attorneys, U.S. Department of Justice
STEVEN ABOW                 20 Massachusetts Avenue, N.W., Room 7300
DAVID SCHOLL                Washington, D.C.  20530
ROBIN RICHARDSON            Telephone:  (202) 514-4640
Attorneys                   Attorneys for Defendants
Office of Personnel Management

## TABLE OF CONTENTS

<u>**PAGES**</u>

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................... 2

I.    PLAINTIFFS' CHALLENGE TO THE APPEALS PROCESS AND LABOR
      RELATIONS REGULATIONS THAT HAVE NOT RESULTED IN ANY
      ACTUAL OR IMMINENT INJURY-IN-FACT ARE NOT JUSTICIABLE ................... 2

II.   THE LABOR RELATIONS SYSTEM ESTABLISHED BY THE
      AGENCIES COMPLIES WITH THE REQUIREMENTS OF
      SECTION 9902 ............................................................................................. 5

      A.    The Agencies Are Authorized To Establish And Adjust A Labor
            Relations System That Differs From Chapter 71 .................................... 5

      B.    Each Of The Challenged Labor Relations Regulations Fall Well
            Within The Scope Of The Agencies' Authority Under Section 9902 ................ 10

III.  THE APPEALS PROCESS IS FAIR AND LAWFUL .................................................. 21

      A.    The Appeals Process Protects Employees From Arbitrary Action ...................... 21

      B.    The Appeals Process Furthers The Purposes Of Section 9902 ........................... 22

      C.    The Appeals Process Provides Fair Treatment to Employees ............................ 23

CONCLUSION ........................................................................................................ 25

**TABLE OF AUTHORITIES**

**CASES**                                                                                    **PAGES**

Action Alliance for Senior Citizens of Greater Philadelphia v. Heckler,
    789 F.2d 931 (D.C. Cir. 1986) ........................................................................ 5

AFGE v. FLRA,
    46 F.3d 73 (D.C. Cir. 1995) .......................................................................... 6

AFGE v. FLRA,
    774 F.2d 1181 (D.C. Cir. 1985) ................................................................... 20

American Library Association v. Federal Communications Commission,
    401 F.3d 489 (D.C. Cir. 2005) ............................................................... 2, 3, 4

Association of Civilian Technicians v. FLRA,
    22 F.3d 1150 (D.C. Cir. 1994) ..................................................................... 7

Atlantic States Legal Foundation v. Environmental Protection Agency,
    325 F.3d 281 (D.C. Cir. 2003) ..................................................................... 5

AT&T Corp. v. Federal Communications Commission,
    317 F.3d 227 (D.C. Cir. 2003) ................................................................... 18

AT&T Corp. v. Iowa Utilities Board,
    525 U.S. 366 (1999) ................................................................................... 4

Barnhart v. Walton,
    535 U.S. 212 (2002) ................................................................................. 16

Chevron, USA v. National Resources Defense Council,
    467 U.S. 837 (1984) ............................................................................ 16, 17

Department of the Air Force v. FLRA,
    316 F.3d 280 (D.C. Cir. 2003) ................................................................... 20

Department of Health and Human Services, SSA, and AFGE,
    33 FLRA 454 (1988) ................................................................................ 15

Department of Health and Human Services, SSA, and AFGE,
    41 FLRA 1309 (1991) .............................................................................. 15

Exxon Mobil Corporation v. Allapattah,
    125 S.Ct. 2611 (2005) ............................................................................... 8

FLRA v. Aberdeen Proving Ground, Department of the Army,
    485 U.S. 409 (1988) ................................................................................. 11

Fort Stewart Schools v. FLRA,
    495 U.S. 641 (1993) ................................................................................. 13

Illinois National Guard v. FLRA,
    854 F.2d 1396 (D.C. Cir. 1988) ............................................................... 6

Interstate Natural Gas Association of America v. FERC,
    285 F.3d 18 (D.C. Cir. 2002) ................................................................... 3

James v. Tablerion,
    363 F.3d 1352 (Fed. Cir. 2004) ...............................................................25

Lentine v. Dep't of the Treasury,
    94 MSPR 676 (2003) ............................................................................... 21

Marine Corps Logistics Base Barstow, California and AFGE,
    45 FLRA 1332 (Sept. 30, 1992) .............................................................. 20

Morgan v. Dep't of Energy,
    424 F.3d 1271 (Fed. Cir. 2005) ............................................................... 21

National Treasury Employees Union v. Chertoff,
    385 F. Supp. 2d 1 (D.D.C. 2005), *appeal pending*, No. 05-5436 (D.C. Cir.) ............. 4, 21

New York v. Environmental Protection Agency,
    413 F.3d 3 (D.C. Cir. 2005) ..................................................................... 6

Raines v. Byrd,
    521 U.S. 811 (1997) ................................................................................. 3

Ratzlaf v. United States,
    510 U.S. 135 (1994) ................................................................................. 18

Reno v. Flores,
    507 U.S. 292 (1993) ................................................................................. 20, 21

Steel Company v. Citizens for a Better Environment,
    523 U.S. 83 (1998) ................................................................................... 4

Texas v. United States,
    523 U.S. 296 (1998) ................................................................................. 5

Texas Mun. Power Agency v. Environmental Protection Agency,
      89 F.3d 858 (D.C. Cir. 1996) ........................................................... 9

United States v. Salerno,
      481 U.S. 739 (1987) ...................................................................... 20

Whitmore v. Arkansas,
      495 U.S. 149 (1990) ........................................................................ 3

**STATUTES:**

5 U.S.C. § 2301 ..................................................................................... 21

5 U.S.C. § 7103 ..................................................................................... 13

5 U.S.C. § 7106 ................................................................................. 7, 12

5 U.S.C. § 7114 ......................................................................... 4, 16, 20

5 U.S.C. § 7117 ..................................................................... 10, 11, 15

5 U.S.C. § 7119 ............................................................................. 15, 16

5 U.S.C. § 7121 ............................................................................. 18, 19

5 U.S.C. § 7122 ................................................................................... 18

5 U.S.C. §§ 7701-7703 ........................................................................ 19

5 U.S.C. § 9902 .......................................................................... *in passim*

**FEDERAL REGULATIONS:**

5 C.F.R. § 9901.103 ....................................................................... 16, 17

5 C.F.R. § 9901.305 ....................................................................... 13, 16

5 C.F.R. § 9901.712 ............................................................................. 24

5 C.F.R. § 9901.807 ....................................................................... 18, 21

5 C.F.R. § 9901.903 ....................................................................... 13, 16

5 C.F.R. § 9901.905 ................................................................ 3, 5, 16, 17

5 C.F.R. § 9901.907 ................................................................... 17, 18

5 C.F.R. § 9901.908 ................................................................... 17, 18

5 C.F.R. § 9901.909 ......................................................................... 18

5 C.F.R. § 9901.910 ......................................................................... 12

5 C.F.R. § 9901.914 ........................................................... 4, 5, 19, 20

5 C.F.R. § 9901.916 ......................................................................... 16

5 C.F.R. § 9901.917 ....................................................................... 3, 10

5 C.F.R. § 9901.922 ......................................................................... 18

5 C.F.R. § 9901.923 ......................................................................... 18

## FEDERAL REGISTER & CONGRESSIONAL RECORD:

27 Fed. Reg. 551 (Jan. 17, 1962) ..................................................... 11

34 Fed. Reg. 17605 (Oct. 29, 1969) ................................................. 11

40 Fed. Reg. 7391 (Feb. 6, 1975) ..................................................... 11

70 Fed. Reg. 66128 (Nov. 1, 2005) .................................................... 7

70 Fed. Reg. 66171 (Nov. 1, 2005) .................................................. 22

70 Fed. Reg. 66174 (Nov. 1, 2005) .................................................. 21

70 Fed. Reg. 66176 (Nov. 1, 2005) .................................................. 17

70 Fed. Reg. 66178 (Nov. 1, 2005) .................................................. 12

149 Cong. Rec. S14428 (Nov. 11, 2003) ........................................ 8, 9

149 Cong. Rec. S14439 (Nov. 11, 2003) ........................................... 9

149 Cong. Rec. S14492 (Nov. 12, 2003) ........................................... 9

## PRELIMINARY STATEMENT

In a brief littered with sweeping pronouncements unencumbered by any relevant authority, plaintiffs argue that it is "self-evident" that they have standing even if they have suffered no injury-in-fact, that facial challenges to regulations are ripe (regardless of whether they are fit for judicial review) if there is any "realistic danger" that they might be applied to plaintiffs, and that the Court should ignore the text of § 9902(m) except for two of nine subsections that plaintiffs insist are the only ones that Congress intended to have any real effect. These claims are uniformly without merit.

Article III standing requirements cannot be satisfied by generalized allegations that each of the plaintiffs is a union and the rules apply to unions. Instead, plaintiffs must allege specific facts demonstrating an injury that is concrete and particularized. The mere possibility that plaintiffs *might* suffer an injury depending on how the Department of Defense (DOD) or the Merit Systems Protection Board (MSPB) exercise discretionary authority is insufficient. Similarly, challenges to rules that have no current effect on plaintiffs' activities are plainly not ripe for judicial review.

Moreover, all of plaintiffs' claims must be dismissed for failure to state a claim. As we have explained, the Agencies complied fully with procedural requirements in § 9902(m)(3) designed to ensure that employees have an opportunity to participate in the development of the new labor relations (LR) system. *See* Memorandum in Support of Defendants' Motion to Dismiss ("Def. Mem.") at 65-69. Plaintiffs do not even attempt to argue otherwise in their opposition.

Plaintiffs' substantive contention that the LR system created by the Agencies must conform (except in two respects) with the requirements of Chapter 71 rests on a tortured reading of § 9902(m) that cannot be reconciled with its text. Section 9902(m) does not begin with subsection (m)(5) nor does it end with subsection (m)(6); and established statutory construction principles foreclose plaintiffs' evident suggestion that the Court simply ignore the remaining provisions or, alternatively, construe them as "inconsequential" surplusage. As defendants have established, each of the LR

regulations fall well within the scope of the Agencies' authority under § 9902(m).  The regulations are therefore valid regardless of whether they differ in some respect from Chapter 71.

Plaintiffs' most recent attacks on the appeals process are likewise without merit.  Plaintiffs' claim that the regulation fails to protect employees against "arbitrary action" is refuted by the text of the rule which specifically authorizes the MSPB to order corrective action if it determines that DOD's decision (including any penalty imposed) was arbitrary.  In addition, there is nothing unfair about the Agencies' decision to use an independent administrative judge or arbitrator as a fact-finder as part of DOD's own internal decision-making process.  To the contrary, use of an independent fact-finder *enhances* the overall fairness of this stage of the proceedings.  Nor is it unfair to mandate the removal of a DOD employee that engages in conduct that has a "direct and substantial adverse impact on the Department's national security mission."  In fact, it would be unfair to the American public to retain such an employee.  Finally, DOD's final determination, including any penalty decision, remains subject to review by the full MSPB and ultimately by the Federal Circuit thereby providing further assurance that the process afforded complies with all applicable legal requirements.

## ARGUMENT

### I.     PLAINTIFFS' CHALLENGE TO THE APPEALS PROCESS AND LABOR RELATIONS REGULATIONS THAT HAVE NOT RESULTED IN ANY ACTUAL OR IMMINENT INJURY-IN-FACT ARE NOT JUSTICIABLE

Contrary to the arguments advanced in Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss ("Pl. Opp."), the doctrine of standing is not simply a "pro forma" requirement that may be ignored by the Court based upon unsubstantiated allegations that plaintiffs' standing is "self-evident."  *Id.* at 2-3.  Instead, "Article III standing is a prerequisite to federal court jurisdiction." *American Library Association v. Federal Communications Commission*, 401 F.3d 489, 492 (D.C. Cir. 2005) (hereinafter "*ALA*").  Indeed, "[n]o principle is more fundamental to the judiciary's proper

role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997).

The fact that a party represents entities "directly affected by a rule" and may have "good reason to assume that at least one of their members would suffer an Article III injury with the implementation of the disputed rule" is not sufficient to satisfy Article III standing requirements. *ALA*, 401 F.3d at 492. "And if a party raises a comprehensible challenge to a petitioner's standing, the petitioner is well-advised to respond with precision and clarity to make it clear that standing is present." *Id.* at 495. "Affidavits containing 'general averments,' 'conclusory allegations,' and 'speculative some day intentions' are inadequate to demonstrate injury in fact." *Id.* at 496. Moreover, an association claiming standing to assert claims on behalf of its members "must identify the relevant member . . . and describe the precise nature of the injury that will be caused . . . ." *Id.*

Plaintiffs' perfunctory allegations plainly do not satisfy these requirements. Plaintiffs argue that they have standing to challenge the "implementing issuances" provided for in §§ 9901.905(a) and 9901.917(d)(1) because they "clearly and pointedly address the Defendants' duty to bargain with the labor organization plaintiffs." Pl. Opp. at 3. However, because no "implementing issuances" have been issued by DOD, the Court can only speculate about whether such issuances will "clearly and pointedly address" the duty to bargain. While it is *possible* that an implementing issuance may have an incremental effect that extends further than the rule itself, "[a]llegations of possible future injury do not satisfy the requirements of Article III." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990); *see also Interstate Natural Gas Association of America v. FERC*, 285 F.3d 18, 60 (D.C. Cir. 2002) (when agency has left details of implementation to be "worked out" in the future, court has "no record" on which to evaluate nature or existence of injury). Similarly, the mere reservation of discretionary authority to take certain actions in the future does not give rise to a presently justiciable

controversy where "there is no immediate effect on the plaintiff's primary conduct." *AT&T v. Iowa Utilities Board*, 525 U.S. 366, 386 (1999) (court of appeals erred in exercising jurisdiction over pre-enforcement challenge to rule giving FCC authority to hear complaints and review agreements).[1]

Nor can plaintiffs establish Article III standing through general assertions that they are unions and § 9901.914 applies to unions. Instead, they must demonstrate a "substantial probability" that this rule will "hinder" their ability to engage in "otherwise permissible" activities and "in precisely what way such a hindrance is likely to occur." *ALA*, 401 F.3d at 496. Here, their alleged injuries rest on speculation about how DOD *might* exercise its discretionary authority.[2] Their challenge to the appeals process is based on speculation about whether DOD's review will be conducted unfairly,[3] how the MSPB *might* decide an appeal,[4] and that an employee *might* be terminated "for more than just aiding terrorism, engaging in sabotage and/or partaking in bribery." Pl. Opp. at 43. Such conjecture is insufficient to establish standing. *Steel Company v. Citizens for a Better Environment*, 523 U.S. 83, 102 (1998) (injury must be "actual or imminent, not conjectural or hypothetical").

---

[1] The decision in *National Treasury Employees Union v. Chertoff*, 385 F.Supp.2d 1, 18 (D.D.C. 2005), *appeal pending*, No. 05-5436 (D.C. Cir.) conflicts with controlling precedent of the Supreme Court and D.C. Circuit as more fully described in the text and should not be followed here.

[2] *E.g.*, Pl. Opp. at 32 (speculating that regulation may be construed to "forbid[] employee representatives to engage in conduct which differs *in any way* from that of other employees"); Pl. Opp. at 34 (speculating that meeting called by agency supervisor "*can be* a 'formal discussion'"); Pl. Opp. at 35 (speculating that DOD might "eliminate a union's § 7114(b)(4) right to information simply by writing an 'issuance' that eliminates it"); Pl. Opp. at 36 (speculating that DOD might "unreasonably" determine that disclosure would compromise DOD's mission or employee safety).

[3] Pl. Opp. at 38 ("The identity of the DOD personnel conducting the review is unknown. The form, substance or support required for any decision it would render is unknown. Any oversight of the panel is unknown.").

[4] Pl. Opp. at 38 n.31 ("Would the MSPB decide whether DOD's *de novo* review of the AJ's decision was arbitrary and capricious? . . . would the MSPB take into account that the AJ was required to uphold the agency's penalty . . . if it found that penalty to be arbitrarily and capriciously imposed? Would the MSPB make its determination based on the whole record . . . ?")

- 4 -

Because plaintiffs' challenges to these regulations rest on conjecture as to how DOD or the MSPB might exercise their discretionary authority in the future, they are also not ripe. *Action Alliance for Senior Citizens of Greater Philadelphia v. Heckler*, 789 F.2d 931, 940 (D.C. Cir. 1986) (claims are unripe "when the challenged prescription is discretionary so that it is unclear if, when or how the agency will employ it"); *Atlantic States Legal Foundation v. Environmental Protection Agency*, 325 F.3d 281, 284 (D.C. Cir. 2003) (quoting in part *Texas v. United States*, 523 U.S. 296, 300 (1998)) ("Even purely legal claims may be unfit for review" where they "rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all").

Accordingly, plaintiffs' challenge to DOD's unexercised authority to issue "implementing issuances" (§§ 9901.905(a) and 9901.914(d)(1)), to the regulation prescribing "representational rights and duties" (§ 9901.914), and to the procedures established for employee appeals from adverse actions should be dismissed for lack of standing and ripeness.

## II.    THE LABOR RELATIONS SYSTEM ESTABLISHED BY THE AGENCIES COMPLIES WITH THE REQUIREMENTS OF SECTION 9902

### A.    The Agencies Are Authorized To Establish And Adjust A Labor Relations System That Differs From Chapter 71

Citing 5 U.S.C. § 9902(d)(2), plaintiffs maintain that the Agencies have no authority to waive or modify Chapter 71 except as authorized by §§ 9902(m)(5) and (m)(6). Pl. Opp. at 6-17. However, § 9902(m)(1), a provision that is separate and discrete from those found in (m)(5) and (m)(6), provides that: "*Notwithstanding section 9902(d)(2)*, the Secretary, together with the Director, may establish and from time to time adjust a labor relations system for the Department of Defense to address the unique role that Department's civilian workforce plays in supporting the Department's national security mission."  The only sensible construction of the phrase "notwithstanding section 9902(d)(2)" is that Congress intended to authorize the Agencies to depart from § 9902(d)(2) (which

would otherwise require compliance with Chapter 71) in circumstances falling within the scope of § 9902(m)(1), *i.e.*, in establishing an LR system to address the "unique role" of DOD's civilian workforce in "supporting the Department's national security mission." *See AFGE v. FLRA*, 46 F.3d 73, 76 (D.C. Cir. 1995) ("we have interpreted similar language . . . to indicate that Congress intended agencies to enjoy 'unfettered discretion' loosed from the bargaining requirement of [Chapter 71]").

Plaintiffs essentially ask this Court to ignore the phrase "*notwithstanding* section 9902(d)(2)," and instead mandate that any new LR system comply with that section. However, the words "notwithstanding section 9902(d)(2)" cannot even arguably be interpreted as mandating compliance with that section. And the Court cannot simply rewrite § 9902(m)(1) in a manner more to plaintiffs' liking by "interpreting" it as if the phrase "Notwithstanding section 9902(d)(2)" had not been included. *New York v. U.S.E.P.A.*, 413 F.3d 3, 39 (D.C. Cir. 2005) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.").

This does not mean that § 9902(m) cannot be "read together" or "harmonized" with § 9902(d)(2), Pl. Opp. at 8; it simply means that § 9902(m) carves out a temporally limited exception to the requirements that would otherwise be imposed by § 9902(d)(2).[5] This is not only the most natural reading of the statutory language but reasonably harmonizes both provisions. *Illinois National Guard v. FLRA*, 854 F.2d 1396, 1405 (D.C. Cir. 1988) ("harmony can be achieved only by reading the Technician Act as preserving a narrow exception to the broadly applicable bargaining requirement of the Schedules Act"). Nor is there anything particularly unusual or "extraordinary" (Pl. Opp. at 8) about the fact that the rule created by § 9902(d)(2) and the exception created by

---

[5] The Agencies' authority to waive or modify Chapter 71 is expressly limited in duration by the statute and will "expire six years after the date of enactment of [subsection (m)], at which time the provisions of chapter 71 will apply." 5 U.S.C. § 9902(m)(9).

§ 9902(m) are found in the same statute. *E.g. Association of Civilian Technicians v. FLRA*, 22 F.3d 1150, 1155 (noting that 5 U.S.C. § 7106(b) is "indisputably an exception to § 7106(a)").

Plaintiffs also argue (Pl. Opp. at 7-8) that § 9902(m)(1) does not authorize any change in the requirements of Chapter 71 because, in plaintiffs' view, the collective bargaining requirements of chapter 71 do not "conflict" with the Agencies' ability to establish an LR system that addresses the "unique role that [DOD's] civilian workforce plays in supporting the Department's national security mission." This contention is unfounded for three reasons. First, the plain language of § 9902(m)(1) reflects that Congress anticipated that some Chapter 71 requirements might not be appropriate for DOD given the "unique role" that DOD's civilian workforce plays in supporting DOD's national security mission and, in those circumstances, the statute explicitly authorizes the Agencies to establish and adjust an LR system "notwithstanding" those requirements. Second, the legislative history reflects that Congress fully understood that greater flexibility is required to protect the nation's security. H. Conf. Rpt. 108-354 (Nov. 7, 2003) at 759 ("The conferees fully appreciate the need for a more flexible and responsive personnel management system for civilian employees of the Department of Defense."); H. Rpt. 108-106 (May 16, 2003) at 13 ("Given the radical changes in the international security environment, the committee believes it is vital to transform the way the Department of Defense operates."). Thus, contrary to plaintiffs' claims here, Congress plainly did not intend to maintain the status quo. Third, as explained in the preamble to the final rule, certain aspects of the collective bargaining requirements of Chapter 71 can and do interfere with the "unique role" that DOD's civilian workforce plays in supporting the Department's national security mission.[6]

---

[6]  *See, e.g.*, 70 Fed. Reg. 66128 ("The ability to act quickly is central to the Department's national security mission - not just during emergencies but, more importantly, in order to prepare for and prevent emergencies. . . . The Department must be able to assign employees and to introduce the latest security technologies without delay."); *id.* (Negotiated agreements governing procedures to be observed in exercising management rights "can and do place significant constraints on critical

The Agencies were thus fully empowered by § 9902(m)(1) to adapt the LR scheme established by Chapter 71 insofar as necessary to address the "unique role" of DOD's civilian workforce.

Plaintiffs are also mistaken in urging the Court to ignore the plain language of the statute and instead adopt the views expressed during the course of floor debates by one or more Senators who plaintiffs suggest are the "authors" of the legislation. Pl. Opp. at 9-12. As we explained previously, "the authoritative statement is the statutory text, not the legislative history or any other extrinsic material." *Exxon Mobil Corporation v. Allapattah*, 125 S.Ct. 2611, 2626 (2005). Legislative history has a "role in statutory interpretation" only if it sheds a "reliable light" on Congress's understanding of "otherwise ambiguous terms." *Id.* It cannot be used by individual members of Congress "to secure results they were unable to achieve through the statutory text." *Id.* The statutory text here which expressly authorizes the Agencies to act "notwithstanding section 9902(d)(2)" cannot rationally be interpreted to permit the Agencies to act only insofar as permitted by § 9902(d)(2).

Nor is there any basis for plaintiffs' claim that the views expressed by three Senators are entitled to more weight than those of other members of Congress because they were purportedly the "authors" of the legislation. At the outset, these three Senators specifically disavowed "authoring" the legislation. 149 Cong. Rec. S14428 (Nov. 11, 2003) (Sen. Collins) ("This conference agreement is a reasonable compromise . . . It is not as I would have drafted it."); *see also id.* at 14429 ("In the

---

actions such as the assignment of work, the deployment of personnel, and the staffing of tours of duty"); *id.* at 66129 ("demand on DOD's frontline managers, supervisors and employees to engage in constant post-implementation negotiations" over routine assignments and "prolonged third party impasse resolution" procedures "would divert them from accomplishing the [DOD's] mission"); *id.* at 7568 ("maintaining the status quo with respect to labor-management relations would not provide DOD with a workforce that is sufficiently agile and flexible to execute the current and future national security mission"); *id.* at 66181 (Chapter 71 "does not give the Department the flexibility necessary to carry out its vital national security mission . . . Today the Department is increasingly faced with an enemy that can attack with little or no advance warning. The Department must be agile enough to respond to the emerging and rapidly evolving threats inherent in 21st century warfare").

end, the product is not the one I would have preferred . . . ."); *id.* (Sen. Levin) (the "outcome" is "not

what either [Sen. Collins] or I would have preferred"); 149 Cong. Rec. S 14439 (Sen. Levin) ("The

bipartisan approach that Senator Collins and I took on this issue met with opposition from the

administration * * * The outcome on collective bargaining was more of a mixed bag."); 149 Cong.

Rec. S14492 (Nov. 12, 2003) (Sen. Lieberman) ("I oppose some of the labor/personnel [provisions]

. . . and I did not sign the conference report to signal my disagreement . . ."). As these statements

reflect, the statutory text instead represents a negotiated "compromise" forged after "an extremely

challenging conference with the House of Representatives." 149 Cong. Rec. S14428 (Sen. Collins).

As the D.C. Circuit has emphasized, "judges must exercise extreme caution before

concluding that a statement made in floor debate . . . may be taken as statutory gospel . . . ." *Texas*

*Mun. Power Agency v. EPA*, 89 F.3d 858, 875 (D.C. Cir. 1996). "This caution is especially

warranted when, as in this case, it appears that a colloquy is a direct result of 'a single member

attempting to reassure his own constituency or even to create legislative history to be cited by the

courts.'" *Id.* That is precisely the situation here. Thus, the views of these Senators are no more

"authoritative" than the contrary views expressed by their counterparts in the House. *See* Def. Mem.

at 30 n.10. They certainly cannot provide a basis for ignoring the statute's plain language, and

engrafting an interpretation on the statute that flatly contradicts its text. *See*, *e.g.*, Pl. Opp. at 15

(claiming "authors" of law intended that "unique role" clause produce no departure from Chap. 71).

In sum, § 9902(m)(1) unequivocally authorizes the Agencies to establish an LR system to

address the "unique role" of DOD's civilian workforce "notwithstanding" § 9902(d)(2).[7]

---

[7] As plaintiffs acknowledge, several other subsections within § 9902(m) also authorize the
Agencies to modify Chapter 71 in various respects. *E.g.*, Pl. Opp. at 8 n.5 ("§ 9902(m)(8) overrides
§ 7116, a Chapter 71 provision that otherwise would prohibit immediate implementation to the
extent the regulation conflicts with applicable pre-existing collective bargaining agreements"); *see
also* Pl. Opp. at 12 n.15 (§§ 9902(m)(5) and (m)(6) authorize defendants to modify Chap. 71).

**B.    Each Of The Challenged Labor Relations Regulations Fall Well Within The Scope Of The Agencies' Authority Under Section 9902**

Defendants' initial memorandum explains how each of the challenged LR regulations fall within the scope of the Agencies' authority under § 9902. *See generally* Def. Mem. at 31-55. Plaintiffs' responsive arguments (*see generally* Pl. Opp. at 19-36) are based largely on the premise that the Agencies have no authority to waive or modify Chapter 71 except as authorized by subsections (m)(5) and (m)(6). As we explained in Point II.A. above, that premise is manifestly wrong. We address plaintiffs' remaining arguments below.

**§ 9901.917(d)(1) ("Duty to Bargain"):** Section 9901.917(d)(1) retains DOD's longstanding right to limit the scope of collective bargaining by regulation or issuance. Def. Mem. at 31-35. It modifies Chapter 71 by eliminating the FLRA's authority to review DOD's regulations to determine whether there is any "compelling need" that justifies adherence to them. *See* 5 U.S.C. § 7117(a)(2). As we previously explained, this change falls well within the scope of the Agencies' authority under § 9902(m)(6) which, by its terms, authorizes the Agencies to define "what decisions are reviewable by the third party" (here the FLRA) and to change "the standard or standards for that review" (by eliminating the "compelling need" standard), as well as their authority under § 9902(m)(1) to address the "unique role" of DOD's workforce in supporting national security. *See* Def. Mem. at 34-35.

In response, plaintiffs concede that § 9902(m)(6) permits the Agencies to modify the provisions in Chapter 71 authorizing FLRA review of DOD's regulations. However, they urge that § 9902(m)(6) does not authorize DOD to make "substantive changes to the scope of bargaining" by regulation or issuance. Pl. Opp at 19-20. They also contend that the rule "places no limit on the subjects that . . . may be eliminated from bargaining" and hence is inconsistent with Agencies' obligation under § 9902(b)(4) to "ensure that employees may bargain collectively." Pl. Opp. at 20.

However, federal agencies have retained the unilateral authority to impose restrictions on

collective bargaining by issuing regulations and policies throughout the 42-year history of collective bargaining in the federal sector. *See* Def. Mem. at 31-35. Moreover, there has *never* been any "limit" on the "subjects" of agency regulations and policies that may restrict the scope of bargaining. *Id.*; *see also* E.O. 10988, § 6(b), 27 Fed. Reg. 551 (Jan. 17, 1962); E.O. 11491, § 11(a), 34 Fed. Reg. 17605 (Oct. 29, 1969); E.O. 11838, § 13, 40 Fed. Reg. 7391 (Feb. 6, 1975); 5 U.S.C. § 7117(a). Under plaintiffs' theory, the Agencies would violate § 9902(b)(4) even if no change *at all* were made to Chapter 71 because Chapter 71 allows agencies to limit bargaining by regulation or issuance and thus fails to "ensure that employees may bargain collectively." *See* 5 U.S.C. § 7117(a). Contrary to these claims, nothing in § 9902(b)(4) remotely suggests that Congress intended to place restrictions on DOD's longstanding right to limit the scope of bargaining by regulation or issuance.

Although federal agencies have *always* had the power to limit the "subjects" of collective bargaining by regulation or issuance, the FLRA is authorized under Chapter 71 to review agency rules limiting the duty to bargain to determine whether there is a "compelling need" for them. 5 U.S.C. § 7105(a)(2)(D). And the duty to bargain "extend[s] to matters that are the subject of any agency rule or regulation . . . *only* if the [FLRA] has determined that . . . no compelling need . . . exists for the rule . . . ." *Id.*, § 7117(a)(2); *FLRA v. Aberdeen Proving Ground, Department of the Army*, 485 U.S. 409, 412 (1988) ("where a matter is covered by regulation, no duty to bargain arises until the Authority has determined that no compelling need justifies adherence to the regulation.").

The rule here retains DOD's authority to limit the duty to bargain by regulation or issuance; however, it modifies Chapter 71 by eliminating the FLRA's role in second-guessing DOD's own determination about whether there is any need ("compelling" or otherwise) for a DOD regulation or issuance. *See* 5 U.S.C. § 7117(a)(2). That change falls squarely within the scope of the Agencies' authority to "define what decisions are reviewable by the third party" and "the standard or standards

- 11 -

for that review." 5 U.S.C. § 9902(m)(6).[8]

§ 9901.910 ("Management Rights"): Section 9901.910 of the regulation modified the labor relations scheme created by Chapter 71 by altering the scope of "management rights" created by 5 U.S.C. § 7106, *i.e.*, management actions that are not subject to collective bargaining requirements. Specifically, the regulations include provisions allowing DOD to take actions "necessary to carry out the Department's mission" of defending the Nation's security to prepare for or prevent an "emergency" from arising rather than just "during an emergency," and limiting the scope of negotiations regarding the "procedures" which management officials will observe in exercising management rights and "appropriate arrangements" for employees affected by the exercise of a management right. These changes were carefully tailored to adapt the LR scheme created by Chapter 71 to address the "unique role that DOD's civilian workforce plays in supporting the Department national security mission" by, *inter alia*, affording the flexibility needed to respond to the rapidly evolving threats to national security that are currently prevalent. *See* Def. Mem. at 35-40.

Plaintiffs do not challenge the Agencies' conclusions regarding the need for flexibility in these areas. Rather they argue that the regulation is invalid because, under § 9902(d)(2), Chapter 71 cannot be waived and, under § 9902(b)(4), the HR system must ensure that employees may "bargain collectively." Pl. Opp. at 21-23. As we explained in Point II.A. above, however, § 9902(m)(1) expressly authorizes the Agencies to establish and adjust a labor relations system for DOD's civilian workforce "notwithstanding section 9902(d)(2)." Consequently, the statute explicitly authorizes the Agencies to depart from Chapter 71 to address the "unique role that DOD's civilian workforce plays

---

[8] DOD's reservation of authority to limit bargaining by regulation or issuance also "provides the Department the necessary flexibility to meet changing national security requirements and to efficiently manage its workforce," 70 Fed. Reg. 66178, and hence falls within the Agencies' authority under § 9902(m)(1) to address the "unique role" of DOD's civilian workforce in "supporting [DOD's] national security mission."

in supporting the Department's national security mission." 5 U.S.C. § 9902(m)(1). Since plaintiffs do not dispute that the Agencies' determination that the "management rights" regulation is tailored to do just that, it is of no consequence that the rule differs in various respects from Chapter 71.

Finally, because § 9902(b)(4) requires only that the HR system ensure that employees may "bargain collectively *as provided in this chapter*, and participate . . . in decisions which affect them, *subject to the provisions of this chapter*," Congress plainly intended that employees' rights under § 9902(b)(4) would be "subject to" the applicable provisions in Chapter 99, including the Agencies' explicit authority to establish and adjust an new LR system conforming to § 9902(m)(1).

**§§ 9901.305 and 9901.903 (Employee Pay):** Section 9901.305 explicitly provides that "Pursuant to 5 U.S.C. 9902(f)(4) and (m)(7), any pay program established under authority of this subpart is not subject to collective bargaining." A companion provision (§ 9901.903) excludes "the pay of any employee or for any position, including any determinations regarding pay or adjustments thereto under subpart C" from the definition of "conditions of employment" that would otherwise be subject to collective bargaining. It is undisputed that the vast majority of DOD employees whose wages are currently provided for by statute are not entitled to engage in collective bargaining regarding employee pay under either Chapter 71 or § 9902. *See* 5 U.S.C. §§ 7103(a)(14)(C) and 9902(m)(7); *see also Fort Stewart Schools v. FLRA*, 495 U.S. 641, 649 (1993). However, plaintiffs argue that these two regulations are invalid as applied to a small group of DOD employees of non-appropriated fund instrumentalities (NAFIs) whose wages were not "provided for by statute" and were therefore negotiable "conditions of employment" under Chapter 71. Pl. Opp. at 23-26.

As we previously explained, these claims are foreclosed by the plain language of § 9902. *See* Def. Mem. at 41-43. Section 9902(a) authorizes the Agencies to establish an HR system for "some or all of the organizational or functional units" of the DOD, 5 U.S.C. § 9902(a), including employees

- 13 -

of NAFIs.  That system must incorporate a "pay-for-performance evaluation system to better link individual pay to performance, and provide an equitable method for appraising and compensating employees."  *Id.*, § 9902(b)(6)(I).  The Agencies are also authorized to establish an LR system to address the unique role of DOD's "civilian workforce" in supporting DOD's national security mission," *id.*, § 9902(m)(1); DOD's "civilian workforce" unquestionably includes NAFI employees.

Of particular importance here, the statute specifies "the *exclusive* procedures for the participation of employee representatives in the planning, development, implementation, or adjustment of the National Security Personnel System."  5 U.S.C. § 9902(f)(4) (emphasis added).  It requires the Agencies to afford an opportunity for employee representatives to make "recommendations" with respect to any proposed system and to meet and confer with the Agencies in an effort to reach an agreement.  5 U.S.C. § 9902(f)(1).  However, it does *not* provide for any form of collective bargaining, and confers discretion on the Agencies to refuse to accept the "recommendations" of employee unions.  *Id.*, § 9902(f)(1).  The statute also provides that "if the Secretary, *in his discretion*, determines that further consultation and mediation is unlikely to produce agreement, the Secretary may implement any or all of such parts . . . ."  *Id.*, § 9902(f)(1)(C).[9]

Plaintiffs argue that § 9902(f) merely prescribes "procedures" for the new HR system and does not limit or otherwise affect plaintiffs' "substantive" right under Chapter 71 to engage in collective bargaining with respect to pay.  Pl. Opp. at 24-25.  However, the "exclusive" procedures mandated by § 9902(f) are incompatible with the collective bargaining procedures mandated by Chapter 71.  In that regard, the FLRA has construed Chapter 71 to require federal agencies to "bargain" with respect to changes in conditions of employment prior to implementation of the

_____

[9]  The Agencies also must "develop a method for the employee representatives to participate in any further planning and development which might become necessary."  *Id.*, § 9902(f)(1)(D).

changes. *Dept. of Health and Human Services, SSA, and AFGE*, 33 FLRA 454, 458 (1988); *Dept. of Health and Human Services, SSA, and AFGE*, 41 FLRA 1309, 1317 (1991). Any impasse is to be resolved by a component of the FLRA known as the Federal Services Impasse Panel (FSIP). 5 U.S.C. § 7119(b) and (c). In contrast, § 9902(f)(1)(C) explicitly confers discretion upon the Secretary to implement a new pay system unilaterally without pre-implementation bargaining; moreover, any impasse with employee representatives is to be resolved *by the Secretary*.

Plaintiffs also contend that the "pay for performance evaluation system" called for by § 9902(b)(6)(I) "refers to the general aspects of a *performance management system*, not to the specific methods of determining compensation." Pl. Opp. at 24. However, § 9902(b)(6)(I), by its terms, requires that the "performance management system" include a "pay-for-performance system to better link individual pay to performance, *and provide an equitable method* for appraising *and compensating employees*." (Emphasis added). Moreover, § 9902(e) imposes "limitations relating to pay" that define parameters that the specific methods of determining compensation established by the Agencies must meet. Given these provisions, plaintiffs' suggestion that the statute does not authorize the Agencies to establish "specific methods of determining compensation" is preposterous.

Finally, plaintiffs argue that the Agencies are not authorized to "waive Chapter 71 as the means for determining NAFI employees' pay." Pl. Opp. at 25. However, Chapter 71 imposes a duty to bargain in good faith only "to the extent not inconsistent with any Federal law." 5 U.S.C. § 7117(a)(1). Consequently, regardless of the scope of the Agencies' "waiver" authority, Chapter 71 plainly affords no basis for imposing a duty to bargain and impasse resolution procedures that differ from the "exclusive procedures" prescribed by 5 U.S.C. § 9902(f).[10]

---

[10] Plaintiffs also argue that the Agencies have no authority to waive statutes governing wages of NAFI employees. Pl. Opp. at 24. Because the regulation does not purport to waive any such statutes, the Court need not resolve this question.

For these reasons, plaintiffs' contention that §§ 9901.305 and 9901.903 impermissibly restrict collective bargaining with respect to NAFI employee pay is groundless.   In any case, as we previously explained, the Agencies' interpretation of §§ 9902(m) and 9902(f) of the statute, which is embodied in 5 C.F.R. §§ 9901.103 and 9901.305, is a "permissible construction" of the Act, and is entitled to deference by the Court.   *Barnhart v. Walton*, 535 U.S. 212, 218 (2002) (quoting *Chevron*, *USA v. National Resources Defense Council*, 467 U.S. 837, 843 (1984)).

**§§ 9901.103, 9901.905, and 9901.916(a)(7) (Enforceability Of Collective Bargaining Agreements That Conflict With The New Labor Relations System)**: Plaintiffs challenge three related regulations that limit the enforceability of collective bargaining agreements ("CBAs") that are inconsistent with either the rule at issue here (*i.e.*, Part 9901) or "implementing issuances" that "carry out a policy or procedure implementing [Part 9901]."   5 C.F.R. § 9901.103 (definition of "implementing issuance"); § 9901.905, and 9901.916(a)(7).   As we explained previously, these regulations fall well within the scope of the Agencies' authority under § 9902 for two reasons.   Def. Mem. at 43-46.   First, § 9902(m)(8) expressly provides that the "labor relations system" established or adjusted under § 9902(m) "*shall be binding* on all bargaining units in the Department of Defense [and] all employee representatives of such units . . . and shall *supersede* all other [CBAs] for bargaining units in the Department of Defense . . . ."   5 U.S.C. § 9902(m)(8).   Second, § 9902(f) prescribes the "exclusive procedures" for employee representatives to participate in the development and implementation of the HR system and authorizes the Secretary of DOD to implement the new system without pre-implementation bargaining under 5 U.S.C. § 7114(a)(4) and without following the procedures prescribed by 5 U.S.C. § 7119(b) and (c) for resolution of negotiation impasses.

Plaintiffs concede that § 9902(m)(8) "overrides § 7116, a Chapter 71 provision that would otherwise prohibit immediate implementation to the extent the regulation conflicts with applicable

pre-existing collective bargaining agreements." Pl. Opp. at 8 n.5. However, they argue that this provision only authorizes immediate enforcement of a "labor system regulation" and not an "implementing issuance." Pl. Opp. at 26. However, § 9902(m)(8) makes no reference to a "labor system *regulation*." Instead it states that the "labor relations system" developed under § 9902(m) shall "supersede all other [CBAs] for bargaining units in the [DOD]." In §§ 9901.103 and 9901.905, the Agencies reasonably construed "labor relations system" to include not only the rules establishing that system (Part 9901) but also "implementing issuances" that "carry out a policy or procedure implementing [Part 9901]." Because the Agencies' interpretation of "labor relations system" is a "permissible construction" of the Act, it is entitled to deference under *Chevron*, 467 U.S. at 843.

Plaintiffs also contend that nothing in § 9902(f) overrides Chapter 71 collective bargaining rights and even suggest that "collective bargaining under Chapter 71" does not "involve participation of employee representatives in the agency's implementation of its previously established legal obligations." Pl. Opp. at 27-28. As we have explained above, however, and as plaintiffs themselves acknowledge (Pl. Opp. at 29 n.26), Chapter 71 generally requires pre-implementation bargaining before a federal agency may change a negotiable "condition of employment" and prescribes specific procedures for resolution of impasses. Section 9902(f) prescribes procedures that are inconsistent with these requirements. As the preamble reflects, "Congress authorized the Department to establish and implement the HR system by providing an alternative to collective bargaining for involving employee representatives in the planning, development and implementation of that system and making this the exclusive process for their involvement (5 U.S.C. § 9902(f))." 70 Fed. Reg. 66176.

**§§ 9901.907 and 9901.908 (National Security Labor Relations Board):** As defendants previously explained (Def. Mem. at 46), the rules establishing the NSLRB implement § 9902(m)(6). That section authorizes the Agencies to establish an LR system that provides for "independent third

party review of decisions," and to "defin[e] what decisions are reviewable by the third party, what third party would conduct the review, and the standard or standards for that review." Plaintiffs' claim that the statute does not provide authority to "appoint the individuals who will constitute the third party" (Pl. Opp. at 29) is flatly inconsistent with the statute's text which explicitly authorizes the Agencies to determine "what third party would conduct the review." Similarly, their contention that the NSLRB lacks the requisite independence to decide labor management disputes ignores the regulatory provisions that ensure the Board's independence and impartiality by, among other things, explicitly limiting the Secretary's authority to remove its members. 5 C.F.R. § 9901.907(b)(2) (NSLRB members may be removed "only for inefficiency, neglect of duty or malfeasance in office"); *see also* Def. Mem. at 47. NSLRB decisions regarding unfair labor practices, arbitral awards, and negotiability disputes are also subject to review by the FLRA. 5 U.S.C. § 9901.909(a)(4).[11] The rules thus fully comply with the statutory requirement for independent third party review.

**§ 9901.807(g) and (h), § 9901.922(c)(4) and (f)(2), and § 923(a) (Grievance and Arbitration Procedures):** Section 9902(m)(6) also authorizes the Agencies to define "what decisions are reviewable" by arbitrators. An arbitrator is unquestionably a "third party" that is empowered to review decisions regarding "grievances" under the LR system established by Chapter 71. *See* 5 U.S.C. §§ 7121 and 7122. Thus, the plain language of § 9902(m)(6) encompasses decisions historically made by arbitrators.[12]

---

[11] Plaintiffs correctly point out that the NSLRB's resolution of "negotiation impasses" under section 9901.908(b)(4) is not subject to review by the FLRA. This limitation is manifestly within the scope of the Agencies' authority to define "what decisions are reviewable by the third party."

[12] As the statute's plain language does not limit § 9902(m)(6) to the creation of the NSLRB, there is no need to resort to legislative history, as plaintiffs suggest (Pl. Opp. at 30). *See AT&T Corp. v. FCC*, 317 F.3d 227, 235 (D.C. Cir. 2003) (legislative history not used "to cloud a statutory text that is clear") (*quoting Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994)). The *absence* of any legislative history plainly cannot provide a basis for ignoring the plain language of the statute.

Yet plaintiffs insist that § 9902(m)(6) does not apply to arbitrators and "does not speak to the grievance/ arbitration procedure." Pl. Opp. at 30. They urge that the negotiated grievance process is governed by a "different portion of the statute" that "authorizes the Agencies to establish a new employee appeals system" but does not afford any independent authority to modify Chapter 71. *Id.* (citing 5 U.S.C. § 9902(h)). However, nothing in either § 9902 or the pre-existing statutory scheme supports the contention that grievance and arbitration procedures are to be included within the MSPB appeals process authorized by § 9902(h) rather than the LR system authorized by § 9902(m). Such procedures have always been addressed as part of the LR system created by Chapter 71. Indeed, by statute, those procedures must be included in CBAs. 5 U.S.C. § 7121(a). Appeals from adverse employment actions is an entirely separate process governed by Chapter 77. 5 U.S.C. §§ 7701-7703.

Congress recognized the same division between these two processes in § 9902, authorizing the Agencies to develop an appeals process to replace Chapter 77, in § 9902(h), and providing, in § 9902(m), for the creation of a new LR system. Negotiated grievance and arbitration procedures logically fall under § 9902(m) because they are part of the LR framework in the pre-existing statutory scheme. Indeed, in the absence of a CBA, no negotiated grievance procedures would exist.

**§ 9901.914 (Representation Rights and Duties):** Plaintiffs also continue to challenge three subsections in the rule prescribing "Representation Rights and Duties," including a provision stating that employee representatives are "subject to the same expectations regarding conduct as any other employee" (§ 9901.914(a)(4)), another that grants an employee representative a right to attend "formal discussions" between employees and DOD management officials in certain circumstances (§ 9901.914(a)(2)), and a third that imposes an obligation on DOD to furnish information that is "normally maintained" and "reasonably available" where an exclusive representative demonstrates a "particularized need" for the information (§ 9901.914(b)(5)).

Plaintiffs' arguments regarding these provisions (Pl. Opp. at 31-36) are fully addressed in defendants' initial memorandum and that discussion need not be repeated here. Def. Mem. at 49-55. We emphasize only that these claims are based largely on speculation that these provisions *might* be applied in a manner that is inconsistent with Chapter 71.[13]  But even if Chapter 71 were controlling (which it is not), a claim that a rule might be applied in a manner alleged to be unlawful fails to afford any basis for *facially* invalidating a rule. As the Supreme Court explained: "To prevail in such a facial challenge, [plaintiffs] 'must establish that no set of circumstances exists under which the [regulation] would be valid.'" *Reno v. Flores*, 507 U.S. 292, 301 (1993) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).  They plainly have not satisfied this standard here.[14]

---

[13] *See*, *e.g.*, Pl. Opp. at 32 (arguing that § 9901.914(a)(4) "forbids employee representatives to engage in conduct that differs *in any way* from that of other employees"); Pl. Opp. at 34 (arguing that Agencies "have not shown that no meeting called by an agency 'supervisor,' can be a 'formal discussion' under 5 U.S.C. § 7114(a)(2)"); *id.* (arguing that a grievance "can exist before the procedural step of filing occurs"); Pl. Opp. at 35 (suggesting that DOD might "eliminate a union's § 7114(b)(4) right to information simply by writing an 'issuance' that eliminates it"); Pl. Opp. at 36 (DOD might determine "unreasonably" that a disclosure would compromise its mission).

[14] Two other points in plaintiffs' discussion of the provision governing "formal discussions" are worthy of note.  First, plaintiffs contend that the Agencies "offer no defense at all of the part of the regulation that "excludes unions from discussions held 'for the purpose of discussing operational matters" where any discussion of personnel policies is "incidental" to the announced purpose of the meeting.  Pl. Opp. at 33-34.  Plaintiffs, of course, cite no authority for the proposition that they have a "right" to attend "formal discussions" regarding "operational matters" in such circumstances, and the FLRA has concluded that no such right exists. *Marine Corps Logistics Base Barstow, California and AFGE*, 45 F.L.R.A. 1332, 1335  (Sept. 30, 1992) (meeting called to "solicit volunteers for overtime and to explain both the need for overtime as well as the procedures by which overtime would be assigned if an insufficient number of employees volunteered" was not a "formal discussion" under 5 U.S.C. § 7114.  Second, citing *AFGE v. FLRA*, 774 F.2d 1181, 1189 n.12 (D.C. Cir. 1985), plaintiffs argue that unions have a statutory right of access to a "formal discussion" regarding a discrimination complaint unless the employee complaining of discrimination can demonstrate a "right (such as a right to remain anonymous at a particular stage of the proceedings)" that "directly conflicts" with the union's right of access.  Pl. Opp. at 35.  However, the D.C. Circuit has explicitly declined to endorse plaintiffs' narrow view of the rights of those who complain of discrimination. *Department of the Air Force v. FLRA*, 316 F.3d 280, 287 (D.C. Cir. 2003) ("We do not foreclose the possibility that an employee's objection to union presence could create a 'direct' conflict that should be resolved in favor of the employee . . . .").

III.    **THE APPEALS PROCESS IS FAIR AND LAWFUL**

A.    **The Appeals Process Protects Employees from Arbitrary Action**

Plaintiffs argue for the first time in their opposition that the appeals process violates 5 U.S.C. § 2301 because it does not protect employees from arbitrary action. Pl. Opp. at 36-39. As explained previously, the appeals process consists of an agency decision followed by independent review by the MSPB and the Federal Circuit. In the agency decision-making process, the administrative judge ("AJ") will sustain the adverse action only if it is supported by a preponderance of the evidence. *See* § 9901.807(e)(1). DOD can alter or remand a decision in three defined circumstances, § 9901.807(g)(2)(A); *see* Def. Mot. at 56; however, it is anticipated that "relatively few cases will be reviewed by the Department under this authority." 70 Fed. Reg. 66174.[15] DOD's final decision is then reviewed by the MSPB under the legal standard in the statute which permits reversal of a decision which is "*arbitrary*, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 9902(h)(5) (emphasis added); 5 C.F.R. § 9901.807(h)(2)(iii). Thus, any DOD decision that is arbitrary (or violates any law) can be set aside by the MSPB.[16] The rule thus provides explicit protection against arbitrary action and independent review to enforce this protection.[17]

Plaintiffs' reliance on *NTEU v. Chertoff*, 385 F. Supp. 2d 1 (D.D.C. 2005), *appeal pending*, Nos. 05-5436, 05-5437 (D.C. Cir.), is misplaced. The regulation enjoined in *Chertoff* set forth a

_____

[15] Plaintiffs' speculation that the AJ or DOD review might be conducted improperly in some future case provides no support for a *facial* challenge to the rule. *Reno v. Flores*, 507 U.S. at 301.

[16] The MSPB's decision is then reviewable by the Federal Circuit under the same procedures and standards that previously applied. 5 U.S.C. § 9902(h)(6); 5 C.F.R. § 9901.807(i).

[17] Indeed, the new appeals process provides for an arbitrariness review *earlier* than the preexisting process. Under the preexisting process, the MSPB reviews adverse actions under an "efficiency of the service" standard. *E.g.*, *Lentine v. Dep't of the Treasury*, 94 M.S.P.R. 676, 682 (2003). It is only at the Federal Circuit review stage that the arbitrary and capricious review standard is employed. *E.g.*, *Morgan v. Dep't of Energy*, 424 F.3d 1271, 1274 (Fed. Cir. 2005).

mitigation standard governing MSPB review, *see Chertoff*, 585 F. Supp. 2d at 32, whereas the regulation here sets forth a mitigation standard for DOD's own internal agency process (the MSPB review standard being set forth in the statute). Moreover, the *Chertoff* court relied on a provision in the Homeland Security Act which limited DHS's authority to depart from Chapter 77. *See Chertoff*, 585 F. Supp. 2d at 32 (citing 5 U.S.C. § 9701(f)(2)(C)). No similar provision exists here. *See, e.g.*, § 9902(h)(3) (appeals procedures displace provisions in Chap. 43, 75, and 77 of Title 5).

### B.    The Appeals Process Furthers The Purposes Of Section 9902

A principal purpose of § 9902 was to improve DOD's ability to protect and advance national security. *See* H. Rpt. No. 108-106, at 13 (May 16, 2003). The appeals process detailed in the regulations furthers this goal by empowering DOD to determine the penalties necessary to promote national security, subject to a deferential review, and by providing DOD with an APA-like agency decision process that allows DOD as an agency (rather than simply an individual supervisor) to apply its national security expertise to the employment decision prior to the MSPB's independent review.

Neither the AJs, the MSPB, nor the Federal Circuit has, or is expected to have, specialized expertise in national security. Thus, while these entities can and should determine whether an offense has been proven, DOD has the expertise to assess what penalty is necessary to promote national security–a point plaintiffs appear to concede. *See* Pl. Opp. at 40 ("enhanc[ing] the Department's ability to make a penalty determination . . . would effectuate [DOD's] stated goals").[18] What plaintiffs miss is that DOD's ability to ensure that a penalty serves national security depends on the standard of review. If an AJ, who is not expert in national security, can second-guess DOD's

---

[18] As plaintiffs do not dispute: "By its very nature, the Department's national security mission requires an exceptionally high level of workplace order and discipline. . . . Because [DOD] retains full accountability for national security, it is in the best position to determine the penalty for poor performance and misconduct." Pl. Opp. at 40 (quoting 70 Fed. Reg. at 66171).

penalty determination and impose a lesser penalty, then DOD's "front end" (Pl. Opp. at 40) disciplinary authority is of little moment. A deferential standard of review thus enhances DOD's ability to ensure that penalty determinations appropriately promote national security.

### C.    The Appeals Process Provides Fair Treatment to Employees

Plaintiffs' claim that the appeals process is "not fair" is groundless. Plaintiffs do not deny that the process allows for the fair and independent adjudication (by the MSPB and Federal Circuit) of DoD's final agency decision. *See* Def. Mot. at 56-57. Instead, they challenge DOD's internal decision-making process – which consists of a review by an impartial Administrative Judge and the possibility of review at the DoD agency level – on the ground that it differs from Chapter 77. *See* Pl. Opp. at 38 n.30. But it is undisputed that § 9902 authorizes the Agencies to set up a process that is different from that set forth in Chapter 77.[19] Congress clearly contemplated that the Agencies would set up a different appeals process–one appropriate to DoD's particular national security needs.

As plaintiffs concede, an agency decision-making process is appropriate for "determinations regarding an agency's area of expertise." Pl. Opp. at 38 n.30. Because the regulations apply DOD's national security expertise to personnel decisions, the agency decision-making process (similar to the process used pursuant to the APA) is an ideal model. Moreover, as plaintiffs do not and cannot contend that the APA process fails to provide litigants with "fair process," it is clear that the nearly identical NSPS appeals process also provides fair process.

Plaintiffs also challenge the shape of the factual record that might be developed, Pl. Opp. at 41, a challenge that is based on rank speculation, as no one knows what factual record will be

---

[19]    *See* 5 U.S.C. § 9902(h)(2) (Secretary "may establish legal standards and procedures for personnel actions, including standards for applicable relief"); § 9902(a) (NSPS may be created "[n]otwithstanding any other provision of this part"); § 9902(h)(3) (appeals provisions prescribed by Secretary displace provisions in Chapters 43, 75, and 77 of Title 5).

developed in some future case. And plaintiffs' challenge is absurd because it contends not that the record might be insufficient, but that the record might contain *too much information*. Plaintiffs complain that "[a]ny record developed through this new system contains facts and evidence supporting DOD's action and choice of penalty." Pl. Opp. at 41. Of course, virtually every appellate record contains facts and evidence supporting the parties' legal positions, and the job of an adjudicator is to determine which facts are relevant and apply the law to them. The inclusion of each party's proffered evidence in an appellate record hardly renders the appeals system unfair.[20]

Finally, among the most disappointing of the Unions' claims is that the DOD should not be allowed to mandate termination of employees for misconduct that has a "direct and substantial adverse impact on the Department's national security mission." Pl Opp. at 43 (quoting § 9901.712(a)). This comes despite plaintiffs' admission that a rule that "enhance[d] the Department's ability to make a penalty determination by, for example, specifying a 'one strike and you're out' rule for certain offenses" could enhance national security. Pl. Opp. at 40. The Agencies have indeed constructed a "one strike and you're out" system for offenses that endanger national security such as aiding terrorism, engaging in sabotage, or soliciting a bribe. These grave offenses are to be categorized as Mandatory Removal Offenses and, if proven, lead to discharge absent mitigation by the Secretary of DOD, the MSPB, or the Federal Circuit. *See* Def. Mot. at 59-60.

Plaintiffs' only attack on mandatory removal for these serious offenses is that it is "not fair." But plaintiffs have never provided *any* support for their assertion that MROs are unfair. As plaintiffs concede, Congress has established a similar MRO regime for the IRS. Pl. Opp. at 44 (citing 26

---

[20] Plaintiffs' complaint that the MSPB "must sift through evidence not relevant or necessary" is similarly frivolous. Pl. Opp. at 41 n.32. Virtually every factual record will contain more than simply the "necessary" facts and evidence. For example, this Court could spend hours poring over the 671 pages of factual submissions attached to Plaintiffs' Summary Judgment Motion looking for some fact or evidence relevant to this case.

U.S.C. § 7804 note); *see also James v. Tablerion*, 363 F.3d 1352, 1359 (Fed. Cir. 2004) ("The Commissioner of the IRS is required to impose the penalty of removal for the specified forms of misbehavior unless the Commissioner in his sole discretion determines that removal is inappropriate."). While this does not demonstrate that Congress intended to establish an MRO system for DOD, it does provide a powerful indication that MRO systems are "fair" as that term is used by Congress, thus negating plaintiffs' only challenge to MROs. Moreover, the fact that Congress provided the IRS with a specific system while delegating the task of creating a personnel system for DOD is quite rational given that DOD's expertise and responsibility in national security peculiarly enable it to construct a system that will advance national security interests.

## **CONCLUSION**

For the foregoing reasons, plaintiffs' motion for summary judgment should be denied, defendants' motion to dismiss should be granted, and this action should be dismissed with prejudice.

Dated: January 5, 2006                     Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

   s/ Joseph W. LoBue
_____
SUSAN K. RUDY, D.C. Bar # 369112
JOSEPH W. LOBUE, D.C. Bar # 293514
JEFFREY M. SMITH, D.C. Bar # 467936
JONATHAN ZIMMERMAN, MA Bar # 654255
Attorneys, U.S. Department of Justice
20 Massachusetts Avenue, N.W., Room 7300
Washington, D.C.  20530
Telephone:  (202) 514-4640
Attorneys for Defendants