UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT ) <br> EMPLOYEES, AFL-CIO, *et al*., ) <br> ) <br>      Plaintiffs, ) <br> ) <br>       v. ) <br> ) <br> DONALD H. RUMSFELD, SECRETARY, ) <br> UNITED STATES DEPARTMENT OF ) <br> DEFENSE, *et al*., ) <br> ) <br>      Defendants. ) <br> ) | Civ. A. No. 05-02183 (EGS) |

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEBRUARY 7, 2006, ORDER**

Several parts of the Court's analysis in *Holly Sugar Corp. v. Johanns*, No. 05-5067 (D.C. Cir. February 7, 2006), are applicable. Pertinent here, the Court said that in determining "whether Congress has directly spoken to the precise question at issue"—the first task under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc*, 467 U.S. 837 (1984)—the Court must consider a statute "in context," and "exhaust traditional tools of statutory construction." *Holly Sugar Corp*., *slip. op*. at 5 (internal quotation marks and citations omitted).[1]

The Court's consideration of legislative history—under the first part of the *Chevron* two-part test—also is pertinent. Noting that "analysis, of course, begins with the statute's language," *id*. at 6, the Court went on to consider "the provision's legislative history," observing that even "a statute's unambiguous language might not control" if legislative history reveals "extraordinary circumstances." *Id*. at 7 (internal quotation marks and citations omitted). The

---

[1] In this regard, the Court implicitly acknowledged the rule of construction saying that a statute should not be interpreted in a way that renders a substantive provision meaningless or superfluous. *Id*. at 7. The Court disagreed with the conclusion reached by the district court in applying that rule. *Id*. The Court held that the statute in question did not have to be interpreted to specify a particular interest rate in order for the statute to have meaning and not be superfluous. Rather, an interpretation that gave the agency discretion to set the rate was meaningful, because the rate previously had been specified by law. *Id*. The new statute, on its face, specified no rate. *Id*. at 6.

Court's opinion shows that consideration of legislative history is part of determining "whether Congress has directly spoken to the precise question at issue."

In this regard, the Court noted that some statements have more weight than others and that in examining legislative history the reviewing court's task is to find "the most persuasive evidence of congressional intent." *Id.* at 7 (internal quotation marks and citations omitted). The Court indicated that the intent of the Conference Committee is most important, because it said "the conference report . . . ordinarily" is entitled to the "most weight." *Id.* (citation omitted).[2]

In the instant case, the authoritative and thoroughly explained legislative history explicitly supports, without contradiction, plaintiffs' interpretation of the statute. See our opening brief at 11-16. The Senate Committee bill, S. 1166, listed chapter 71 among provisions that could not be waived; the House bill did not. This was the key conflict, and the Conference Committee resolved it in favor of the Senate. Senators Collins and Levin wrote the relevant provisions in negotiations with House members who represented the Administration's position. The authoritative statements of these Senators are the best evidence of the Conference Committee's intent, and their statements were never disputed by the House members with whom these Senators had written the law.[3]

DoD's interpretation of the statute—which asserts that 5 U.S.C. § 9902(m) grants authority to waive any and all provisions of chapter 71 of title 5, in their entirety—gives the §

---

[2] In *Holly Sugar Corp.* the question was whether Congress intended to specify an interest rate, as the sugar companies argued, or grant agency discretion to determine the rate, where the statute on its face merely exempted sugar from the rate specified by law for other commodities. The sugar companies "emphasize[d] most heavily" a sentence in the Senate report. The Court, however, held that the statute did not specify a rate because, "only the Senate's [report] gives any inkling that Congress may have had a particular interest rate in mind," while the House report said the statute "reduces the rate . . . without specifying how much," and the conference report, "[m]irroring the statute's language," stated "that the Act makes [the rate specified by law for other commodities] inapplicable to sugar." *Id.* at 7 (internal quotation marks and citations omitted).

[3] The statements contrary to those of these Senators were by House members who opposed the Administration and did not participate in the Conference Committee negotiations that produced the law.

9902(d)(2) prohibition against unspecified waiver or modification of chapter 71 no operative

meaning at all during the life of the § 9902(m) labor relations system.[4]  DoD's interpretation is

incompatible with § 9902(b)(3)(D), which states that the § 9902(d)(2) prohibition applies to "*Any*

system established under subsection (a)," not just systems established after the expiration of the

subsection (m) labor relations system.[5]

    DoD's interpretation gives no operative effect, during the life of the subsection (m) labor

relations system, to the § 9902(d)(2) requirement that any waiver or modification of chapter 71

be "specified."  In (m)(5) and (m)(6), subsection (m) specifies two departures from chapter 71;

but according to the agencies, this specificity is entirely unnecessary.  Cross-referenced statutes,

however, must be read together, in context.  One overrides the other only to the extent they

necessarily conflict.  In subsection (m), only (m)(5) and (m)(6) specify terms that necessarily

conflict with chapter 71.  The general (m)(1) authority to "establish . . . a labor relations system"

does not conflict with any provision of chapter 71.[6]

    Respectfully submitted,

    _____

    JOSEPH GOLDBERG, Bar # 291096
    Assistant General Counsel
    AFGE, AFL-CIO
    80 F Street, N.W.
    Washington, DC  20001
    (202) 639-6426

---

[4] The agencies' interpretation says the § 9902(d)(2) prohibition has operative meaning only after the § 9902(m)(9) sunset provision causes the (m) system to expire.

[5] The subsection (m) labor relations system is part of the subsection (a) system, because § 9902(b)(4) states that any system established under subsection (a) must "ensure that employees may organize, bargain collectively as provided for in this chapter, and participate through labor organizations . . . subject to the provisions of this chapter."

[6] Further, after the expiration of the (m) system, the § 9902(d)(2) prohibition is superfluous, because (m)(9) already states that "the provisions of chapter 71 will apply" after the expiration of the (m) system.

SALLY M. TEDROW, Bar #938803
ROBERT MATISOFF, Bar #210294A
KEITH R. BOLEK, Bar #463129
O'DONOGHUE & O'DONOGHUE LLP
4748 Wisconsin Avenue, N.W.
Washington, DC  20016
(202) 362-0041


SUSAN TSUI GRUNDMANN, Bar #433437
General Counsel
NATIONAL FEDERATION OF FEDERAL
EMPLOYEES, FD-1, IAMAW, AFL-CIO
1016 16th Street, N.W.
Washington, DC  20036
(202) 862-4400


DANIEL M. SCHEMBER, Bar #237180
GAFFNEY & SCHEMBER, P.C.
1666 Connecticut Avenue, N.W.
Suite 225
Washington, DC  20009
(202) 328-2244

Attorneys for Plaintiffs

Of Counsel:

JEAN E. ZEILER
Senior Counsel
NATIONAL ASSOCIATION OF
GOVERNMENT EMPLOYEES, SEIU,
AFL-CIO
159 Burgin Parkway
Quincy, MA  02169
(617) 376-0220

JULIA AKINS CLARK, Bar #337493
General Counsel
INTERNATIONAL FEDERATION OF
PROFESSIONAL AND TECHNICAL
ENGINEERS, AFL-CIO
8630 Fenton Street, Suite 400
Silver Spring, MD  20910
(301) 565-9016

PATRICK J. SZYMANSKI, Bar #269654
General Counsel
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS
25 Louisiana Avenue, N.W.
Washington, DC  20001
(202) 624-6945